IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **Just City, Inc.**, <br><br>                      Plaintiff, <br><br>v. <br><br>Floyd Bonner Jr., <br>    **Shelby County Sheriff**; <br><br>Bill Anderson Jr., <br>    **Presiding Shelby County General** <br>    **Sessions Criminal Court Judge**; and <br><br>John Marshall, Robert Barber, Rhonda Harris, Kevin Reed, Christopher Ingram, Shayla Purifoy, Ross Sampson, Serena Gray, Terita Hewlett, Mischelle Best, Kenya Smith, Zayid Saleem, Kathy Kirk Johnson, Leslie Mozingo, <br>    **Shelby County Judicial** <br>    **Commissioners**, <br><br>in their official capacities, <br><br>                      Defendants. | Case No. 24-cv-2540 |

**COMPLAINT**

1. This action challenges Tennessee's unprecedented new law, HB 1719, which prohibits judges from considering an arrestee's ability to pay when setting bail. This law is contrary to decades of constitutional precedent requiring courts to consider ability to pay as a matter of fundamental fairness. The law mandates arbitrariness by requiring judges to ignore the consequences of their bail orders and disregard whether arrestees will be released or detained.

No other state in the nation prohibits judges from considering ability to pay when setting bail; in fact, the majority of states explicitly *require* their judges to consider ability to pay.

2. The purpose of this law was to target reforms to Shelby County's bail system. In 2023, Shelby County undertook reforms to end the decades-long practice of setting bail without considering ability to pay. This practice had resulted in widespread unnecessary detention of people who could not afford their bail amounts, but who would otherwise return to court and live peacefully in their communities if released.

3. Shelby County's bail reforms were memorialized in a binding agreement between local advocates, including Plaintiff Just City; and Shelby County officials, including Defendants Shelby County Sheriff and the Presiding General Sessions Criminal Court Judge. Among other changes, the agreement requires Judicial Commissioners to use the output of an ability-to-pay calculator to evaluate arrestees' financial information when setting bail. Under the agreement, Judicial Commissioners must set affordable bail if they intend to release an arrestee, or set unaffordable bail if they intend to detain an arrestee. The Judicial Commissioners undertook these new practices beginning February 15, 2023.

4. Fourteen months later, on May 1, 2024, Tennessee enacted a new law prohibiting judges from considering an arrestee's "ability to pay." The legislation was a direct attack on the reforms implemented in Shelby County: the bill's sponsors specifically referenced Shelby County's ability-to-pay calculator in the legislative record. They also made baseless allegations that the reforms were linked to higher crime rates, yet disregarded data showing a lower rate of re-arrests following implementation of the reforms.

5. Because of the new law, Shelby County officials abandoned their constitutional obligations and the terms of the agreement. The Presiding General Sessions Criminal Court

Judge instructed court administrators to stop using the ability-to-pay calculator to evaluate arrestees' financial information and change local bail processes to remove any reference to ability to pay. Judicial Commissioners stopped considering arrestees' ability to pay when setting bail. The Shelby County Sheriff enforces the resulting unconstitutional bail orders and detains arrestees who are unable to pay for their release.

6. Just City brings this action to vindicate Shelby County arrestees' constitutional rights.

## JURISDICTION AND VENUE

7. This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201 et seq., and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

8. Venue in this Court is proper under 28 U.S.C. § 1391 because Defendants are located within the district, and a substantial part of the events giving rise to these claims occurred and will occur in this district.

## PARTIES

9. Plaintiff Just City is a mission-driven nonprofit organization dedicated to fighting discrimination based on race, ethnicity, and income in Shelby County criminal proceedings. Just City operates a charitable bail fund to advance this mission. Just City entered into a Memorandum of Understanding with Shelby County officials on June 9, 2022 (the "Agreement"). The Agreement's purpose is to "ensure that every arrestee who enters the criminal justice system in Shelby County, Tennessee receives adequate constitutional protection."

10. Defendant Shelby County Sheriff operates the Shelby County Jail and enforces bail orders issued by Shelby County Judicial Commissioners. The Sheriff is bound by the Agreement, which prohibits detention under bail orders issued without consideration of ability to pay. The Sheriff is sued for injunctive and declaratory relief.

11. Defendant Presiding Shelby County General Sessions Criminal Court Judge (the "Presiding Judge") directs court administration in Shelby County criminal proceedings and issues binding guidelines on bail setting for the Shelby County Judicial Commissioners. The Presiding Judge is bound by the Agreement to enact policies operationalizing reforms in the Agreement, including consideration of ability to pay. The Presiding Judge also sets bail at hearings held subsequent to the initial bail setting by the Judicial Commissioners. The role of Presiding Judge rotates annually among General Sessions Criminal Court Judges; the current Presiding Judge is Hon. Bill Anderson. The Presiding Judge is sued in his official capacity for declaratory relief.

12. Defendant Shelby County Judicial Commissioners set bail in Shelby County criminal proceedings. They are bound by the Agreement to evaluate ability to pay using the assessment from Shelby County pretrial services, and to order affordable or unaffordable bail for each arrestee based on the commissioner's intention to release or detain. The Judicial Commissioners are sued in their official capacities for declaratory relief.

## FACTUAL ALLEGATIONS

13. HB 1719 took effect on May 1, 2024. The law prohibits consideration of ability to pay when setting bail. The Presiding Judge and Judicial Commissioners have implemented HB 1719 by ending the prior practice of considering and determining ability to pay when setting bail,

4

as required under the Agreement. The Shelby County Sheriff is enforcing bail orders issued under this scheme by detaining people who are unable to pay for their release.

I.      **Shelby County Had a History of Setting Bail Without Considering Ability to Pay**

14.     Shelby County entered into the Agreement due to its history of failing to consider arrestees' ability to pay and thus unnecessarily detaining people who cannot afford to pay for release, but who would otherwise return to court and live peacefully in their communities.

15.     Tennessee statutes require that judges[1] treat secured cash bail[2] as a matter of last resort. Judges can impose bail only after determining that less restrictive conditions will not reasonably ensure the safety of the community and the appearance of the arrestee:

 a.     First, the judge must consider whether to release the arrestee on their personal recognizance or subject to other conditions that do not require a payment in exchange for release.[3]

 b.     Second, if those conditions are insufficient, the judge must set bail as a condition of release.[4] The judge must set the lowest bail amount that will reasonably ensure the safety of the community and the appearance of the arrestee.[5] In so doing, the

---

[1] The complaint uses the term "judge" to refer to any judicial officer who sets bail, including the Shelby County Judicial Commissioners.

[2] The complaint uses the term "bail" to refer to secured bail, which requires a payment in exchange for release. This is in contrast to unsecured bail or unsecured bond, which does not require a payment before release, but obligates the arrestee to pay the bail amount if they fail to appear as required.

[3] Tenn. Code Ann. §§ 40-11-115 (release on recognizance or unsecured bond), 40-11-116 (release subject to additional conditions).

[4] Tenn. Code Ann. § 40-11-117.

[5] Tenn. Code Ann. § 40-11-118(a)(2).

judge must consider statutory factors such as the arrestee's community ties, prior criminal record, alleged offense, and, critically, the arrestee's "financial condition."[6]

16.  Historically, Shelby County set bail through this process without considering arrestees' ability to pay. In April 2021, prior to the Agreement, a court-appointed jail monitor reported: "When bail is considered in Shelby County, the judicial commissioner setting bail does not take into account the economic ability or inability of the detainee to post bond." First Covid-19 Follow Up Inspection of the Shelby County Men's Jail at 30, *Busby v. Bonner*, No. 20-cv-2359 (W.D. Tenn May 19, 2021), ECF No. 216-5. This practice, the monitor noted, resulted in the unnecessary detention of people who "simply cannot afford even a minimal bail." *Id.* Such detention was "not necessary to ensure future court appearances or to protect public safety." *Id.* People unable to afford bail were routinely detained for weeks or longer without receiving a bail hearing with counsel present.

17.  People who could not afford bail were detained in the Shelby County Jail under inhumane conditions. *See, e.g., Busby v. Bonner*, No. 2:20-CV-2359-SHL-ATC, 2021 WL 4127775, at *1 (W.D. Tenn. Jan. 28, 2021) (preliminarily approving settlement requiring monitoring of jail's management of COVID-19 crisis).

## II. The Agreement Requires Shelby County to Consider Ability to Pay

18.  Just City warned Shelby County officials that the County would face a lawsuit if officials did not reform their unconstitutional bail practices. In December 2021, Just City and other advocates sent a demand letter to Shelby County's General Sessions Criminal Court Judges, Chief Judicial Commissioner, and Sheriff, along with the District Attorney, Public Defender, Pretrial Services Office, the Chairman of the Shelby County Board of Commissioners,

---

[6] Tenn. Code Ann. §§ 40-11-118(b)(2).

and County Mayor ("Shelby County stakeholders"). The letter detailed the findings of the advocates' eighteen-month investigation and demanded remedies including, most importantly, consideration of arrestees' ability to pay when setting bail.

19. The advocates and Shelby County stakeholders met several times to negotiate reforms, culminating in the Agreement executed on June 9, 2022. The purpose of the Agreement was to protect the constitutional rights of every arrestee who enters the criminal justice system in Shelby County from arrest through the decision to release or detain pending trial. A critical component of the Agreement was creation of procedures to assess arrestees' ability to pay bail. The goal was to prevent arrestees from being jailed solely because of their poverty.

20. The Agreement required, in relevant part, the following procedures for bail setting and pretrial detention:

    a. Immediately after arrest, pretrial services interviews arrestees about their finances to evaluate their ability to pay bail. Pretrial services provides that evaluation to the judicial commissioner.

    b. After the ability-to-pay evaluation and within 12 hours of arrest, a judicial commissioner conducts an *ex parte* initial screening to determine whether to release or detain the arrestee. The judicial commissioner follows the two-step process under Tennessee law: first, the judicial commissioner considers whether to release the arrestee on their own recognizance or other conditions that do not require a payment in exchange for release. Second, only after determining that other conditions will not reasonably ensure the safety of the community and the appearance of the arrestee, the judicial commissioner may set a bail amount. The bail amount must be affordable, and thus allow for release, if affordable bail would reasonably ensure the safety of the community and

the appearance of the arrestee. The bail amount may be unaffordable, and thus detain the arrestee, only if no other combination of release conditions would not reasonably ensure the safety of the community and the appearance of the arrestee.

    c.    A decision to set unaffordable bail triggers additional procedures to protect the arrestee's liberty interests. Arrestees detained under an unaffordable bail amount receive a subsequent, robust bail hearing with defense counsel present, at which the prosecutor bears the burden of justifying the unaffordable bail order.

21.    The Agreement recognized that an unaffordable bail was a *de facto* detention order. For that reason, it required judges to consider ability to pay before setting bail and provide their reasoning for imposing an unaffordable detention order—lest an arrestee be subject to unnecessary wealth-based detention in violation of the Constitution.

22.    The Presiding Judge, together with other General Sessions Criminal Court Judges, implemented these changes through an administrative Standing Bail Order issued on August 15, 2022. As contemplated by the Agreement, the advocates and Shelby County stakeholders also developed an ability-to-pay calculator and drafted bail forms that required judges to input the amount that an arrestee was able to pay, consider that amount before setting bail, and state whether they intended to release the individual on affordable bail or detain them on unaffordable bail. The ability-to-pay calculator and bail forms were implemented at the direction of the Presiding Judge.

23.    After these changes went into effect in early 2023, the Judicial Commissioners considered arrestees' ability to pay as a standard practice. This practice was subject to immediate political attack. During the 2024 legislative session, Tennessee legislators targeted the ability-to-pay calculator in Shelby County, and the resulting debates revealed a fundamental

misunderstanding of Shelby County practices under the Agreement and Tennessee's pretrial release statutes.

24. For example, one of the bill's sponsors claimed that HB 1719 was intended to address a "revolving door of criminals going in and out of our judicial system," and "focus on the danger that person poses to the community" to prevent "tragic consequences of allowing people into the community based on their ability to pay."

25. These statements directly contradicted data about how the Agreement operated on the ground. Fewer people were rearrested under the Agreement: only 7% of people released pretrial were rearrested, as compared to 11% of people released before the Agreement was implemented. Lead Judicial Commissioner John Marshall stated: "I think the statistics bear out that it is not a revolving door," and that he "did not see a pattern of someone committing a violent crime—like a carjacking—and bonding out and then committing another carjacking."

26. Many Shelby County residents testified about this data during legislative hearings and tried to correct misperceptions about the Agreement. Legislators did not heed their explanations. Instead, multiple legislators persisted in their misunderstanding, or willful misrepresentation, that use of the ability-to-pay calculator prevented judges from giving appropriate weight to other bail-setting factors required under Tennessee law. One representative said: "To say that a person's ability to pay should be the trump card . . . ignores all of the statutes that talks about length of criminal history, seriousness of offense, and length in the community."

27. None of the proponents of the bill explained how judges could consider the arrestee's "financial condition" if they were forbidden from considering the arrestee's "ability to pay."

28. HB 1719 was ultimately enacted on May 1, 2024, as 2024 Tenn. Pub. Acts Ch. 869.

29. The Act amended Tenn. Code Ann. § 40-11-118(a)(2) to preserve the existing mandate that judges consider an arrestee's "financial condition," but add the phrase: "provided, that, the defendant's ability to pay shall not be considered."

### III. Shelby County Stopped Considering Ability to Pay After Passage of HB 1719

30. The impact of HB 1719 has been swift and devastating.

31. After the General Assembly passed HB 1719 and before the Governor signed it into law, Just City urged the Defendants, through the Shelby County Attorney, to continue following constitutional requirements and the Agreement.

32. Instead, days before HB 1719 went into effect, the General Sessions Judges convened an administrative meeting to make decisions about the law's implementation.

33. Shortly after the meeting, pretrial services stopped administering the ability-to-pay calculator. The Judicial Commissioners started using new bail forms that did not reference ability to pay bail, which the County Attorney's Office later reported they had drafted at the General Sessions Judges' direction. The Judicial Commissioners stopped considering ability to pay when setting bail. The Sheriff began enforcing the resulting unconstitutional bail orders to detain arrestees who are unable to pay for their release. This process, which persists today, results in widespread unconstitutional wealth-based detention.

34. Plaintiff Just City has advocated to reform Shelby County's pretrial detention practices for years. In an effort to reduce the harm caused by Shelby County's pretrial detention practices, Just City launched a charitable bail fund in 2017. The purpose of the bail fund is to

post bail for as many people as possible who are referred by the Shelby County Public Defender's Office and who have been determined to be indigent by a Shelby County judge.

35. Just City pays the full cash bail amount to the clerk for indigent arrestees who cannot afford to do so. After an indigent arrestee for whom Just City pays cash bail attends required court appearances and their case concludes, Just City receives a full refund of the bail amount. Just City then recycles this refund to pay bail for other qualifying arrestees. The bail fund has been revolving in this manner for more than seven years, and Just City has paid $3,000,000.00 in cash bail for more than 1,700 people since it launched the bail fund.

36. HB 1719 has inhibited Just City's mission by limiting the number of people Just City can serve. Without consideration of ability to pay, bail amounts for indigent arrestees referred to Just City have increased significantly. These higher bail amounts limit the total number of clients Just City can serve with its limited bail fund.

37. In addition, HB 1719 has inhibited Just City's mission by prohibiting judges from considering the possibility of Just City's contribution to the arrestee's ability to pay. Prior to HB 1719, judges regularly set bail amounts based on the understanding of what the arrestee would be able to pay with assistance from Just City. In some marginal cases, judges have ordered slightly lower bail amounts to ensure that Just City could pay for release. HB 1719 forbids judges from considering the availability of Just City's assistance in these marginal cases, resulting in detention for arrestees whom judges would otherwise release by setting bail amounts that arrestees could afford with Just City's help.

38. As a mission-driven organization with years of experience advocating for arrestees in the Shelby County criminal system, Just City has a close relationship with Shelby County arrestees and can effectively advocate for their rights. Individual arrestees face

numerous obstacles to bringing claims under Section 1983. Arrestees have extremely limited resources, and the vast majority cannot afford to pay even minimal bail amounts, let alone litigate a federal lawsuit. Arrestees are also hindered from vindicating their rights by the high likelihood that their claims will become moot before they are decided, because their criminal cases resolve and their pretrial detention will end.

## CLAIMS FOR RELIEF
### Under 42 U.S.C. § 1983

39. Just City brings each claim against Defendant Shelby County Sheriff for injunctive and declaratory relief, and against Defendant Presiding Shelby County General Sessions Criminal Court Judge and Shelby County Judicial Commissioners for declaratory relief. This case raises an actual and substantial dispute between the parties that warrants declaratory relief under 28 U.S.C. § 2201.

### Count One: Fundamentally Unfair Procedures for a Bail Hearing
### In Violation of the Fourteenth Amendment

40. Just City incorporates the foregoing allegations.

41. HB 1719 prohibits judges from considering an arrestee's ability to pay when issuing bail orders and setting the amount of bail an arrestee must pay to be released.

42. Without considering ability to pay, Judicial Commissioners issue bail orders that require pretrial detention for any arrestee unable to afford their bail amount.

43. Failure to consider ability to pay results in widespread pretrial detention of people who cannot afford their bail amounts, and who do not need to be detained to reasonably ensure the safety of the community and the appearance of the arrestee as required.

44. The government has no legitimate interest in preventing judges from considering ability to pay when setting bail.

12

45. Prohibiting consideration of ability to pay when setting bail is a fundamentally unfair procedure for the deprivation of an arrestee's liberty pending trial.

46. The statutory prohibition on consideration of an arrestee's ability to pay when setting bail violates the Due Process Clause of the Fourteenth Amendment.

## Count Two: Discriminatory Wealth-Based Detention
## In Violation of the Fourteenth Amendment

47. Just City incorporates the foregoing allegations.

48. Pursuant to HB 1719, Judicial Commissioners set bail without inquiring into or determining arrestees' ability to pay their bail amounts. Arrestees who cannot afford their bail amounts are detained under the Judicial Commissioners' orders.

49. Detention under an unaffordable bail order, without any inquiry into or determination of ability to pay or meaningful consideration of alternatives, is discriminatory wealth-based detention in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## RELIEF REQUESTED

Just City requests that this Court issue the following relief:

1. A declaration that HB 1719 violates the Fourteenth Amendment right to due process and right against wealth-based detention;

2. An order permanently enjoining the Shelby County Sheriff from enforcing secured bail orders that are issued without a determination of ability to pay against arrestees who are unable to pay for release;

3. An order granting reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

4.   Any other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Trisha Trigilio

| | |
|---|---|
| Trisha Trigilio | Stella Yarbrough |
|    Tex. Bar No. 24075179 | American Civil Liberties Union |
| Julian Clark | Foundation of Tennessee |
| Ashika Verriest | P.O. Box 120160 |
| Brandon Buskey | Nashville, TN 37212 |
| American Civil Liberties Union Foundation | (615) 320-7142 |
| Criminal Law Reform Project |   syarbrough@aclu-tn.org |
| 125 Broad Street, 17th Floor | |
| New York, NY 10004 | |
| (347) 302-2797 | |
| trishat@aclu.org | |

Craig S. Waldman
David Elbaum
Jared Quigley
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
cwaldman@stblaw.com
david.elbaum@stblaw.com
jared.quigley@stblaw.com

*Attorneys for Plaintiff*
*Pro hac vice* motions forthcoming