# Exhibit 3





| | |
|---|---|
| Judge Bill Anderson, Jr. | The Hon. Phyllis Aluko |
| Judge Tim J. Dwyer | **Shelby County Public Defender's Office** |
| Judge Gerald Skahan | 201 Poplar Ave, Suite 2-01 |
| Judge William C. Turner | Memphis, TN 38103 |
| Judge Karen Massey | |
| Judge Ronald S. Lucchesi | Ms. Llana L. Greer |
| Judge Louis J. Montesi, Jr. | **Shelby County Pretrial Services Office** |
| Judge Patrick Dandridge | 201 Poplar Ave, Suite 8-01 |
| Judge L. Lambert Ryan | Memphis, TN 38103 |

**Shelby County General Sessions
Criminal Court**
201 Poplar Ave, Suite LL-81
Memphis, TN 38103

The Hon. Willie F. Brooks
**Chairman, Shelby County Board of
Commissioners**
160 N. Main Street, Suite 600
Memphis, TN 38103

The Hon. Floyd Bonner, Jr.
**Shelby County Sheriff's Office**
201 Poplar Ave, 9th Floor
Memphis, TN 38103

The Hon. Lee Harris
**Shelby County Mayor**
160 N. Main St
Memphis, TN 38103

The Hon. Amy Weirich
**Shelby County District Attorney's Office**
201 Poplar Ave, 11th Floor
Memphis, TN 38103

The Hon. Lee Wilson
**Chief Judicial Commissioner**
201 Poplar Ave, Suite LL-81
Memphis, TN 38103

**<u>VIA U.S. MAIL and Electronic Mail</u>**

*Re:* *POSSIBLE CLASS ACTION COMPLAINT FOR*
*DECLARATORY AND INJUNCTIVE RELIEF*

December 1, 2021

**To all of whom it may concern:**

Over the past three to four years, many cities, judicial systems, and legislative bodies across the country have made fundamental changes to their bail systems and procedures to ensure a fairer and constitutionally sound process for the pretrial release of persons accused of crimes. These changes have brought about numerous benefits not only to accused people and their families, but also to the government and judicial system by

reducing costs and improving outcomes. As you likely know, the bail setting practices currently in use in Shelby County perpetuate a system of discriminatory detention practices that disproportionately affect poor, Black, and disabled pretrial detainees. An accused person's right to obtain pretrial release from custody is fundamental under both the Tennessee and United States constitutions. Under the law, absent extreme circumstances, virtually all criminal suspects upon initiation of criminal process have the right to obtain conditional release pending further process.[1]

Under Shelby County's current pretrial bail system, however, hundreds of people remain needlessly detained on any given day because they are financially incapable of posting bail. But a person's financial inability to post bail is not a valid justification for their continued detention, especially where that person poses no risk of harm to the community or of willful flight.

The Wharton Firm, the ACLU of Tennessee, National ACLU, and Just City have been investigating Shelby County's deficient practices around bail and pretrial detention for the past 18 months. We have interviewed knowledgeable witnesses (both persons who work in the Shelby County post-arrest systems, and people who have been detained through local bail practices), observed court appearances, collected data, and reviewed closely the reports of a federal court monitor in litigation involving the Sheriff's response to the COVID-19 crisis. Unfortunately, we conclude that Shelby County's bail practices violate state and federal law.

The ACLU has filed many lawsuits in state and federal courts across the country challenging the use of secured money bail to detain those unable to afford the amount.[2] The majority of those lawsuits have resulted in settlements or court-ordered injunctions ending the illegal use of money to keep people in jail without the robust procedures that must accompany any order of pretrial detention. The fees incurred by jurisdictions both in

---

[1] *See, e.g., Nashville Comm. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1118 (M.D. Tenn. 2020) ("Although this right may be forfeited by a defendant's conduct, every non-capital defendant that enters the Tennessee criminal justice system at least begins with a right to establish some conditions pursuant to which he can obtain his freedom until he is, if ever, convicted."); *State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015); *Swain v. State*, 527 S.W.2d 119, 120 (Tenn. 1975); *Goins v. State*, 237 S.W.2d 8 (1950); *Butt v. State*, 175 S.W. 529 (1914).

[2] *See, e.g., Schultz v. State*, 330 F. Supp. 3d 1344 (N.D. Ala. 2018); *Daves v. Dallas Cty.*, 341 F. Supp. 3d 688, 694 (N.D. Tex. 2018); *Booth v. Galveston Cnty, Tex.*, 352 F. Supp. 3d 718 (S.D. Tex. 2019); *Edwards v. Cofield*, No. 3:17-CV-321, 2017 WL 2255775, at *1 (M.D. Ala. May 18, 2017); *Mock v. Glynn*, No. 2:18-cv-25, 2019 WL 2847122 (S.D. Ga. 2019); *Allison v. Allen*, No. 19-cv-1126 (M.D. N.C.), *White v. Hesse*, No. 5:19-cv-1145 (W.D. Okla.); *Ross v. Blount*, No. 2:19-cv-11076 (E.D. Mich.); *Philadelphia Comm. Bail Fund v. Arraignment Court Magistrate Francis Bernard, et al.*, 21 E.M. 2019 (Pa. 2019); *Knight v. Florida*, No. 4:17-cv-464 (N.D. Fla. 2017); *Still v. El Paso Cnty, Colo.*, 1:17-cv-2656 (D. Colo. 2017); *Whitfield v. Hoffman*, Filing No. 138481950 (Fla. Ct. App.); *Burks v. Scott Cnty, Miss.*, 3:14-cv-0745 (S.D. Miss. 2017).

resisting such lawsuits, as well as through fee awards to the ACLU, are typically hundreds of thousands of dollars.

In an effort to avoid litigation, which is costly and can delay efforts to address the problem, the undersigned hereby demand the incorporation of corrective pretrial release procedures. This letter summarizes a recent court ordered injunction against Hamblen County, and why, following our investigation, we believe Shelby County's bail practices are also unconstitutional. We then overview a proposal for reforms the County can implement in order to change its practices, improve system outcomes, and avoid litigation. Upon your review, we would like to discuss these proposed reforms with stakeholders who are prepared to implement change. We prefer to work with you to resolve our concerns but stand ready to explore other options if the County does not take immediate steps to end the routine violation of people's constitutional and statutory rights.

## I.     Injunction Against Hamblen County

One year ago, the United States District Court for the Eastern District of Tennessee preliminarily enjoined Hamblen County's practice of detaining defendants before trial, without first affording them individualized bail hearings. *See Torres v. Collins*, No. 2:20-CV-00026-DCLC, 2020 WL 7706883 (E.D. Tenn. Nov. 30, 2020). Judge Clifton L. Corker's decision highlights why Shelby County's bail practices similarly violate the Constitution.

Judge Corker's decision recognizes that the right "to be free from detention prior to trial" is a fundamental liberty interest. *Id.* at *11 (citation omitted). As the court explained, arrestees "are deprived of that fundamental right to liberty when they are confined to jail prior to their criminal trial without a hearing that takes into account their individualized circumstances." *Id.*

Accordingly, Judge Corker held that the Sixth and Fourteenth Amendments require courts to provide rigorous procedural protections and make appropriate factual findings before any person can be detained pretrial. These procedures include:

- A robust bail hearing held "within a reasonable period of time of arrest[,]" which is presumptively "within 48 hours[,]" *id.* at *12;

- Notice of the matters to be addressed at the hearing and "the need for information that would be pertinent to" the issue of bail, *id.* at *10;

- Representation by defense counsel, *see id.* at *13 ("Simply put, an arrestee has a right to representation at a bail hearing or at an initial appearance hearing that also constitutes a bail hearing.");

- An opportunity to present evidence and cross-examine the government's witnesses, *see id.* at *11;

- An inquiry into, and factual findings that address, the arrestee's ability to pay, *see id.* at *12;

- Meaningful consideration of "alternative conditions of release[,]" *id.*; and

- Findings made in writing or, "at a minimum," verbally on the record regarding the adequacy of such alternative conditions, *id.*

Judge Corker's decision is consistent with rulings from across the country, which have additionally required courts to satisfy the "clear and convincing" evidentiary standard before entering an order of pretrial detention. *See, e.g., Valdez-Jimenez v. Eighth Jud. Dist. Ct.*, 460 P.3d 976, 987 (Nev. 2020); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1372 (N.D. Ala. 2018); *In re Kenneth Humphrey*, 482 P.3d 1008 (Cal. 2021); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 313 (E.D. La. 2018); *Kleinbart v. United States*, 604 A.2d 861, 872 (D.C. 1992).

Shelby County's bail practices do not satisfy the minimal constitutional requirements identified in Judge Corker's or related court rulings. Rather, after arrest, people unable to afford their bail are routinely held for weeks or longer without receiving a bail hearing with counsel, and such a hearing is not provided as a matter of course but depends on whether a person's lawyer brings a motion. The large majority of arrested persons are subjected to a secured money bail order in Shelby County. Though a number of interventions occur rapidly after arrest—such as an interview with pretrial services, a bail setting by an on-call judge or judicial commissioner,[3] and an arraignment—none of these interventions incorporate the kinds of procedural safeguards or exacting standards for detention required by law. As a result, the current process does not protect the constitutional and statutory rights of people arrested in Shelby County. Notably, none of the system actors who interface with people in custody conduct a detailed evaluation of what bail amount (if any) each person can afford to pay without being forced to borrow money. The absence of such findings results in wealth-based detention for thousands of people a year.[4] As we discuss below, however, the County has sufficient resources and systems in place to make sensible adjustments and remedy these problems.

Tennessee law[5] requires that judges treat money bail as a matter of last resort, and only impose secured, upfront, bail requirements if other less restrictive conditions are deemed insufficient in a person's case. "Pretrial release determinations are intended to be a multi-step process, with each determination flowing from the previous determination,

---

[3] We refer in this letter to "judicial commissioners" as the officers who conduct initial bail-setting at the jail. We recognize that there has been a move to rename the positions to "magistrate," but use "commissioner" in this letter for current clarity and consistency.

[4] By Sheriff Bonner's estimate, 56,000 people are arrested in Shelby County each year. https://www.shelby-sheriff.org/jail-inmate-information#:~:text=Yearly%20bookings%20average%2056%2C000.,Memphis%20at%20201%20Poplar%20Avenue.

[5] Tenn. Code Ann. §§ 40-11-115-117.

4

until the least restrictive necessary terms of release are finally set." *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d at 1118 (M.D. Tenn.). Yet, in Shelby County, bail is imposed routinely by judicial commissioners, without public hearings or the opportunity for arrested persons or their counsel to provide information, address questions, or advocate for less-restrictive interventions.

A federal court monitor noted this year that "[w]hen bail is considered in Shelby County, the judicial commissioner setting bail does not take into account the economic ability or inability of the detainee to post bond;" that this practice "discriminates against [medically vulnerable and disabled detainees] who may not be a current threat to public safety, but who are people of color and who simply cannot afford even a minimal bond;" and that such a system is "not necessary to ensure future court appearances or to protect public safety.[6]

## II.      Detention on Unaffordable Bail Does Not Advance the County's Interests

Shelby County's bail practices are not only unconstitutional but also poor public policy.

The widespread imposition of bail does not promote court appearance. To the contrary, research suggests that secured money bail has either a negligible effect or *increases* future FTA.[7] For those who are detained pursuant to a money bail requirement, even for a short period of time, that detention is associated with a higher likelihood of a failure to appear in court later on.[8] In fact, even those detained in jail for their *entire* pretrial period are likely to miss in-person court appearances, due to jail lockdowns, quarantines, or the Sheriff's Office lacking the staff to bring them to court.

There is also no correlation whatsoever between a secured bail requirement and a reduction in violent pretrial conduct. Instead of ensuring public safety, research shows that even a few days spent in pretrial detention—a natural result of a bail requirement for those unable to pay—*increases* the likelihood of rearrest for new crimes.[9] Research also

---

[6] *Busby v. Bonner*, 20-cv-2359 (W.D. Tenn.) (Doc. No. 216-5) (First Follow-up Report of Independent Inspector Michael K. Brady, April 11, 2021).

[7] Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 21 (2016), http://www.columbia.edu/~cjh2182/GuptaHansmanFrenchman.pdf, ("Our results suggest that money bail has a negligible effect or, if anything, increases failures to appear.").

[8] Christopher T. Lowenkamp, et al., *The Hidden Costs of Pretrial Detention*, 10 (2013), https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/LJAF_Report_hidden-costs_FNL.pdf.

[9] Monaghan, *Get Jailed, Jump Bail? The Impacts of Cash Bail on Failure to Appear and re-Arrest in Orleans Parish*, Am. J. Crim. Just. (Nov. 2020) (finding that the likelihood of failing to appear and committing new offenses increases the longer an

demonstrates that unsecured bail is more effective than secured bail at achieving the government's three goals of (1) promoting future court appearance, (2) assuring public safety, and (3) facilitating release and conserving resources.[10]

The undersigned recognize that, in serious, rare cases, a significant risk of flight or danger to others may justify pretrial detention including on unaffordable bail. However, instances of pretrial flight or violence are exceedingly rare: even among pretrial releasees accused of felonies, fewer than 2 percent are rearrested for allegedly committing a violent felony,[11] and only 3 percent enter and remain in fugitive status while on release.[12] And a range of interventions short of pretrial incarceration are available to address what risks of flight or danger a person may pose, from cheap and effective court date reminders, assistance with court transportation or childcare, supports such as housing or treatment, and—in the face of more significant risks—restrictive options like location monitoring, no contact orders, and drug testing. Based on our investigation, we believe the overwhelming majority of people in Shelby County's jail system present very little risk of flight, failure to appear, danger, or rearrest,[13] and that local data from the Public Safety Assessment ("PSA") will affirm this understanding.

Meanwhile, Shelby County's widespread reliance on bail and pretrial detention is expensive, costing between $90-$138 million per year.[14] Incarceration is the County's

---

individual sits in pretrial detention); Aurelie Ouss & Megan Stevenson, *Bail, Jail, and Pretrial Misconduct: The Influence of Prosecutors* (June 2020) (finding no evidence that financial collateral, i.e. bail, deters failures to appear or future crime); Lowenkamp *Hidden Costs* at 4.

[10] Michael R. Jones, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option*, 10 (2013), http://www.pretrial.org/download/researcli/Unsecured+Bonds,+The+As+Effective+and+Most+Efficient+Pretrial+Release+Option+-+Jones+2013.pdf; Monaghan, *Get Jailed, Jump Bail?, supra* (release on unsecured bonds without bond conditions, such as drug testing, *lowers* the odds of rearrest for new crimes pretrial and *increases* the likelihood of appearance).

[11] Shima Baradaran Baughman, *Predicting Violence*, 497 Tex. L.R. at 527 (analyzing over two decades' worth of data from the 75 largest counties in the United States, and noting that of felony arrestees released "16% are rearrested for any reason, 11% are rearrested for a felony, and only 1.9% are rearrested for a violent felony).

[12] Lauryn P. Gouldin, *Defining Flight Risk*, 677 U. Chicago L.R. 689 (defining "fugitive" as failing to appear in court and not appearing within one year).

[13] Flight and failure to appear are distinct concepts, with the former being much rarer than the latter. The PSA only predicts likelihood of failure to appear, but risks of failure to appear should be treated as a basis for supportive conditions of release such as court reminders, not a basis to detain.

[14] Vera Institute of Justice, *What Jails Cost Statewide, "Shelby County, TN,"* https://www.vera.org/publications/what-jails-cost-statewide/tennessee/shelby-county (noting $138 million in total jail spending; $90 million is a conservative estimate accounting only for the share of spending associated with the "local jail" population.).

second-highest expense each year. The funding that is spent on pretrial detention could be used constructively to invest in housing, treatment, child care, and other supports that foster community safety.

The harms the status quo causes to the person detained are evident. Beyond the jail time itself, a person who is detained for even a few days will often face serious collateral consequences that can devastate that person's life for years or decades to come.[15] Detainees lose income from missed work, or risk losing their employment altogether. The risk of losing one's job only increases with each passing day of confinement. People in detention may also miss rent payments and/or be evicted from housing.[16] Those with medical needs miss appointments, those pursuing an education miss classes. People with children may not be able to arrange for childcare and may even have their custodial rights jeopardized while in custody. Unsurprisingly, the cascading effects of pretrial detention can last long after the period of detention itself.[17]

### III. Proposed Reforms to Avoid Litigation

We urge Shelby County stakeholders to adopt improved procedures to bring local practice into compliance with state and federal law. These practices will also lead to better outcomes for individuals and the community. At minimum, local officials should ensure (1) that people who are arrested receive individualized bail hearings held by a judicial officer no later than 24 hours after a person's arrest, where the person being

---

This figure may not account for additional expenses associated with pretrial detention, including health care, food, and mental health care.

[15] *See Barker v. Wingo*, 407 U.S. 514, 532-33 (1972) ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.").

[16] Erika Kates, *Moving Beyond Incarceration for Women in Massachusetts: The Necessity of Bail/Pretrial Reform*, Wellesley Centers for Women, 2, 4-5 (March 2015) (survey of women in pretrial detention demonstrated that almost half were at risk of losing their home).

[17] Will Dobbie, Jacob Goldin, & Crystal S. Yang, *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 Am. Econ. Rev. 201, 235 (2018) ("We find suggestive evidence that in the first two years after the bail hearing, pre-trial release increases the joint probability of not being arrested and of being employed . . . . Similarly, we find an increase in the joint probability of not being rearrested and being employed in the third to fourth years after the bail hearing. These results indicate that decreases in future crime may be driven by the same defendants who are employed, suggesting that pre-trial release may decrease future crime through the channel of increased labor market attachment."), *available at* https://pubs.aeaweb.org/doi/pdfplus/10.1257/aer.20161503.

detained and appointed counsel are present, and which are open to the public; (2) that prior to any bail hearing, Pretrial Services or a judicial officer inquire into the person's financial circumstances, including income, expenses, and debts; and (3) that unaffordable financial conditions, which operate as detention orders, may only be imposed as a matter of last resort, if a judicial officer finds by clear and convincing evidence that no less restrictive alternative will address an established risk of flight or danger to others posed by the person.

We suggest the following guidelines for judicial officers setting bail to meet these minimum standards:

- Convert initial bail-setting determinations, which currently occur 24/7 without counsel for the State or arrested person present, into meaningful initial bail hearings where the State bears the burden of justifying restraints on pretrial liberty based on the criteria below, and defense counsel is available to represent arrested persons. Rather than occurring at all hours, we recommend scheduling these hearings to occur during normal business hours every day.[18]
- Prohibit the imposition of any secured money bail *unless* and *until* there has been a finding on the record—based upon all factors articulated in Tenn. Code. Ann. § 40-11-115(b)—that in a given individual's case, release on recognizance or unsecured bond, with or without conditions, will not reasonably assure their future court appearance. This must be accomplished through a public hearing where the accused person is present and has a right to counsel;
- Prior to any imposition of secured money bail, either a judicial officer or representative from Pretrial Services should evaluate the person's ability to pay, considering all income, assets, expenses, debts, any dependents, disabilities, or other circumstances. A useful tool is available to conduct this inquiry from the Vera Institute;[19]
- Prohibit the imposition of any secured money bail *unless* it has been explicitly determined to be affordable to the person, meaning it is an amount they can pay within 24 hours without borrowing money, accounting for all income and expenses;
- If and only if, by clear and convincing evidence, the judicial officer determines that no less restrictive condition or combination of conditions will work to mitigate an identifiable risk of flight or danger, the officer may impose an unaffordable secured money bail. Clear and convincing evidence must be found based on the individual evidence and circumstances, and not merely the nature of the pending charge or a person's PSA score.

---

[18] We take no position on whether Shelby County should continue to utilize on-call judicial commissioners overnight for other purposes, such as issuing warrants or restraining orders, though converting bail-setting into true hearings need not disrupt any other functions.

[19] https://www.vera.org/projects/bail-assessment-pilot/atp-calculator.

Tennessee law already requires that judicial officers setting conditions of pretrial release first consider whether to release a non-capital arrestee on their own recognizance or an unsecured bond. This proposal merely seeks to prompt Judicial Commissioners and other entities involved in the pretrial release process to comply with the extant law.[20] A shift in practice would comply with both Tennessee and federal law, which hold that secured money bail shall not be imposed as a matter of course and shall not effectuate wealth-based pretrial detention.[21]

Judicial Commissioners should utilize the available resources of Shelby County Pretrial Services in considering each person's respective ability to post secured money bail, and ability to be successful on community release.

Respectfully, the information generated by the PSA does not provide information requisite to make a proper determination that a person should be detained pretrial. This is because the PSA provides an actuarial forecast of failure to appear (as distinct from flight) and of arrest (as distinct from commission of violent conduct).[22] As discussed, the decision to jail someone pretrial must be based on findings that their release poses an otherwise unmitigable risk of flight or danger. However, the scores generated by the PSA may be useful to identify persons to prioritize for optional supports such as transportation assistance or childcare on the days of court hearings.

The final considerations of the proposed guidelines would ensure that Judicial Commissioners take care to avoid imposing secured money bail on people who (1) are financially incapable of posting bail, (2) pose little to no risk of flight, and (3) pose little to no risk of committing a subsequent violent crime. Due to the deficiencies of the current system, the latter two categories are insufficiently or inaccurately considered, while the former category is not considered at all. In light of these deficiencies and in absence of any advocacy on behalf of the person being detained, Shelby County and its

---

[20] Tenn. Code Ann. § 40-11-115(b); Graham v. Gen. Sessions Court, 157 S.W.3d 790, 793 (Tenn. Ct. App. 2004).

[21] In fact, Judicial Commissioners are required to consider whether release on recognition is available to individual detainees, in that their subsequent court appearance, after consideration of the factors listed in Tenn. Code Ann. 40-11-1115, can be reasonably assured in lieu of secured money bail. *Gentry*, 496 F. Supp. 3d at 1119 (*"Only* if the court determines that 'conditions on a release on recognizance' have not been shown to reasonably ensure the defendant's appearance, may the court, 'in lieu of conditions of release set out in § 40-11-115 or § 40-11-116, require bail to be given.'") (citing *Graham*, 157 S.W.3d at 793).

[22] It is also true that, as designed, the PSA will manifest the racial disparities contained in underlying arrest and criminal history data. Specifically, unless arrest rates are the same between people of color and white people in Shelby County, the tool will suffer from the same racially-biased error rate problem identified in the Compass risk assessment: https://www.propublica.org/article/machine-bias-risk-assessments-in-criminal-sentencing.

General Sessions Courts perpetuate a system that imposes unjustified restraints on individual liberty.

It is within the power of the General Sessions Courts, the Shelby County Board of Commissioners, the Shelby County DA, the Shelby County Public Defender, and the Office of the Shelby County Mayor to establish the aforementioned guidelines and invest resources in supporting our community members instead of incarcerating them. It is unacceptable that our current system leads to the routine, widespread detention on secured money bail while infrequently allowing for recognizance release.

To ensure the implementation of these suggested changes, we suggest the Shelby County Board of Commissioners monitor the bail setting activity of Judicial Commissioners by obtaining a semi-annual report from the General Sessions Criminal Court or the Judicial Commissions' program. The report would provide the statistical evidence needed to capture the extent to which bail setting practices can successfully reform to meet the goals of Tenn. Code Ann. §§ 40-1-111(a), 40-11-115–118, as well as both the Tennessee and the United States Constitution.

Our County cannot afford additional litigation to address problems that are both easily identified and corrected. We have a sincere interest in having facilitated discussions among all integral parties in hopes of reaching a unified solution to this issue. We suggest a mediated discussion with all relevant stakeholders including the Courts, County Commission, County Mayor's Office, Public Defender, and Sheriff's Office, and propose that the Justice Management Institute facilitate such a discussion. This request is aligned with Sheriff Bonner's recent suggestion that Shelby County should engage "some very serious conversations about bail reform."[23] Given the urgency of these issues, it is our position that any such meeting must occur prior to the end of January 2022.

If we cannot come to an agreement about these proposed changes to bring Shelby County's release and bail practices into compliance with federal and state law, or if we do not hear from you regarding our meeting request by December 31, 2021, we have no choice but to initiate litigation. We cannot, and will not, sit idly by and let this easily corrected problem persist.

It is our hope that you will strongly consider the demands listed above and the proposed changes to the system. We believe that these are proven ways the current system can be modified to achieve better results for the citizens of Shelby County.

---

[23] Micaela A. Watts, The Commercial Appeal, *After Pandemic, Protests, and Defunding Effort, Sheriff Floyd Bonner Says He's Ready for Challenges of Second Term,* (Sept. 22, 2021), https://www.commercialappeal.com/story/news/2021/09/22/sheriff-floyd-bonner-running-reelection-unopposed/5796652001/.

Respectfully,

/s/ *Alexander C. Wharton*
The Wharton Law Firm
*On behalf of all counsel listed below*

Alexander C. Wharton
The Wharton Law Firm
1575 Madison Ave
The Wharton Building
Memphis, TN 38104
Telephone: (901) 726-6884

Andrea Woods
Yazmine Nichols
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
awoods@aclu.org
ynichols@aclu.org

Thomas H. Castelli (Bar No. 24849)
Stella Yarbrough (Bar No. 33637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Telephone: (615) 320-7142
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

Josh Spickler (Bar No. 021019)
Just City
P.O. Box 41852
Memphis, TN 38174
Telephone: (901) 216-2024
josh@justcity.org