# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

**Just City, Inc.,**

                    Plaintiff.

v.

Floyd Bonner Jr.,
      **Shelby County Sheriff;**

Lee Wilson,
      **Presiding Shelby County General
      Sessions Criminal Court Judge;** and

John Marshall, Robert Barber, Rhonda Harris,
Kevin Reed, Christopher Ingram, Shayla
Purifoy, Ross Sampson, Serena Gray, Terita
Hewlett, Mischelle Best, Kenya Smith, Zayid
Saleem, Kathy Kirk Johnson, Leslie Mozingo,

      **Shelby County Judicial
      Commissioners,**

in their official capacities,

      **Defendants.**

Case No. 24-cv-2540

# JUST CITY'S OPPOSITION TO THE
# STATE'S MOTION TO DISMISS

## Table of Contents

**Page**

I.    Just City Has Standing .................................................................................. 1

II.   *Younger* Abstention is Impermissible ........................................................ 5

III.  Just City Has Stated Two Claims for Relief ................................................ 8

    A.    There is No Saving Construction of HB 1719: The Law Unambiguously
Prohibits Consideration of Ability to Pay ............................................. 8

    B.    Claim One: HB 1719 Violates Procedural Due Process on its Face.................... 11

    C.    Claim Two: HB 1719 Imposes Discriminatory Wealth-Based Detention as
Applied to Arrestees Who Cannot Afford their Bail ........................................... 13

This action seeks to vindicate two well-established rights: the right to procedural fairness in pretrial detention proceedings, and the right against wealth-based detention. Far from breaking new ground, these claims seek to enforce existing rulings by the Supreme Court and federal courts of appeal. *E.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), to pretrial detention proceedings); *Walker v. City of Calhoun*, 901 F.3d 1245, 1259–60 (11th Cir. 2018) (applying *Bearden v. Georgia*, 461 U.S. 660 (1983), to bail determinations).

HB 1719 unambiguously prohibits consideration of ability to pay when setting bail. There is no saving construction of the statute allowing the Court to conclude otherwise. The State's arguments invite the Court to ignore the injuries that enforcement of this law is causing to both Just City and Shelby County arrestees. Because the Complaint pleads detailed allegations supporting standing, violation of due process, and discriminatory wealth-based detention, the Court should deny the State's Motion to Dismiss, ECF No. 52-1 [hereinafter "AG"].

## I.    Just City Has Standing

HB 1719 was passed to target Just City's agreement with Shelby County officials and the arrestees that agreement protects. Compl. ¶¶ 2–4, 23–26, ECF No. 1. Judges have stopped considering ability to pay, bail amounts have risen, and arrestees are unconstitutionally detained as a direct result of HB 1719's enforcement. Compl. ¶¶ 5, 30–33, 36–37. Injury and causation are straightforward.

### A.    Just City Has Article III Standing

Just City alleges two distinct injuries sufficient for Article III standing. First, Just City has standing because enforcement of HB 1719 impairs its mission to post bail for as many qualified arrestees as possible. Compl. ¶¶ 34, 36–37. Enforcement of HB 1719 has resulted in higher bail amounts, which limits the number of clients Just City can serve with its limited funds. *Id*. This is

an Article III injury because the challenged action "perceptibly impair[s] [its] ability to provide
. . . services." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 395 (2024) [hereinafter "*FDA*"];
*Tennessee Conf. of the NAACP v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024) (confirming, post-*FDA*,
that plaintiffs "can rely on a *Havens*-like standing theory" where the challenged action interferes
with core activities such as client services); *see also Republican Nat'l Comm. v. N.C. State Bd. of
Elections*, No. 24-2044, 2024 WL 4597030, at *2–3 (4th Cir. Oct. 29, 2024) (finding plaintiff
organizations had standing where defendants' actions allegedly impaired their mission to counsel
voters); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (affirming
standing where a new voter ID law increased the resources plaintiff organization needed to serve
the same number of homeless voters).

Contrary to the State's argument, AG at 5, Just City did not voluntarily "spend its way into
standing," like the *FDA* plaintiffs who manufactured an artificial injury to bring litigation. *FDA*,
602 U.S. at 370. Instead, this new law interferes with Just City's longstanding core activity of
bailing as many qualified arrestees out of jail as possible. Compl. ¶¶ 34–37. For that reason, Just
City experiences a direct injury to its ability to serve its clients. The State further argues that Just
City's "burden to show an injury is 'substantially more difficult' than for the typical plaintiff
because it challenges government conduct that regulates '*someone else*.'" AG at 4 (quoting *FDA*,
602 U.S. at 382). This reliance on *FDA* is misplaced. The *FDA* plaintiffs' injuries hinged on
speculation that third-party patients might seek treatment from the plaintiff doctors for
complications resulting from a challenged drug, which the Supreme Court rejected as speculative
and attenuated. *FDA*, 602 U.S. at 386. Here, Just City challenges government conduct that directly
and concretely inhibits its mission of paying bail for qualified arrestees. The impairment of Just
City's ability to pay bail does not hinge on the "choices made by arrestees not before the court,"

AG at 4, and Just City does not need to speculate about whether enforcement of HB 1719 will impair its mission: the impairment is happening. Compl. ¶¶ 36–37. Thus, its injury is "fully realized and inflicted directly by the defendant[s]." *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1127 (M.D. Tenn. 2020) [hereinafter "*NCBF*"].

Second, enforcement of HB 1719 injures Just City through violation of the Shelby County Bail Agreement [hereinafter "Agreement"]. Violation of contractual rights is an Article III injury. *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018). The Second, Fifth, Ninth, and Eleventh Circuits agree: "It is axiomatic that a party to an agreement has standing to sue a counter-party who breaches that agreement even where some or all of the benefits of that contract accrue to a third party." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 475 (2d Cir. 2013) (citation omitted); *Springer*, 900 F.3d at 287 (collecting cases). *Accord Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 815–16 (6th Cir. 2006) (holding breach of labor contract is an Article III injury to unions that are party to the agreement, even if the agreement is for the benefit third-party employees). Here, the Defendants' refusal to abide by the Agreement injures Just City, and the requested relief would redress that injury.

### B.    Just City Has Third-Party Standing to Assert the Rights of Arrestees

Just City has third-party standing to assert the constitutional rights of the arrestees it serves under *NCBF*, which held that a bail fund had standing to assert similar claims on behalf of arrestees because (1) it has a "close relationship" with them, and (2) there is a "hindrance" to arrestees' ability to protect their own interests. *NCBF*, 496 F. Supp. 3d at 1129–30. The State does not attempt to address *NCBF*. Instead, the State cites *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004), a case that *NCBF* analyzes and distinguishes to reach its conclusion.

3

Contrary to the State's argument, alleging a "close relationship" does not require naming impacted third parties in the complaint. *See* AG at 7. To support this false premise, the State cites two cases rejecting third-party standing because the plaintiff did not show a "close relationship" with future, *hypothetical* individuals who were not in fact the plaintiff's clients. *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014) (rejecting third-party standing where plaintiff sought to assert the rights of future, "not even presently identifiable" third parties); *Kowalski*, 543 U.S. at 131 ("[An] *existing* attorney-client relationship is, of course, quite distinct from the *hypothetical* attorney-client relationship posited here.").[1] Here, Just City's allegations show a "close relationship" that is actual, not hypothetical, with Shelby County arrestees who are jailed under HB 1719. Compl. ¶¶ 35–36. The State fails to apply the correct "close relationship" test: Just City's mission to fight discriminatory wealth-based detention makes it "at least as effective a proponent" for arrestees' rights as the arrestees themselves. *NCBF*, 496 F. Supp. 3d at 1130; Compl. ¶¶ 9, 34–35.

The State's second contention, that arrestees "need not" bring a federal lawsuit, AG at 8, applies the wrong standard—the standard is whether arrestees are hindered in asserting their interests. A "hindrance is not required to be an absolute bar to seeking relief in order to be sufficient." *NCBF*, 496 F. Supp. 3d at 1130. Here, as in *NCBF*, arrestees face obstacles including lack of resources and imminent mootness that hinder them from litigating their own constitutional claims. *Id.*; Compl. ¶ 38. Contrary to the State's argument, arrestees cannot seek prompt relief through Shelby County criminal proceedings. Arrestees must sit in pretrial detention for days before the opportunity to argue that HB 1719 is unconstitutional—even then, imminent mootness

---

[1] The State cites an additional case where third-party standing is not at issue. AG at 7 (citing *Parsons v. U.S. Dept. of Justice*, 801 F.3d 701 (6th Cir. 2015)).

and the lack of resources to mount a sophisticated constitutional challenge remain hindrances to asserting their rights. *NCBF*, 496 F. Supp. 3d at 1130–31. *See also infra* Section II.B.

In sum, Just City has met both prongs required for third-party standing, and the State's arguments to the contrary fail.

## II.  *Younger* **Abstention is Impermissible**

There are no "exceptional circumstances" here that would justify a departure from this Court's "virtually unflagging" obligation to resolve this federal dispute. *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 73, 77 (2013); *see also, e.g., FBI v. Fikre*, 601 U.S. 234, 240 (2024); Just City's Opposition to Defendants' Motion to Dismiss, ECF No. 51 [hereinafter "Opp."] at 5–10. The State's arguments retread the same ground and are unavailing.

### A.  **Just City Is Not Seeking To Enjoin Any Ongoing State Court Prosecutions**

The State's abstention arguments fail at the outset because Just City is not seeking to enjoin any ongoing state court prosecutions. *See* Opp. at 6–8. Just City is challenging collateral pretrial detention proceedings that are independent of the underlying state court prosecutions. The State cannot escape the Supreme Court's decision in *Gerstein v. Pugh*, 420 U.S. 103 (1975), which five Courts of Appeals have interpreted to prohibit abstention from constitutional challenges to pretrial detention procedures. *See Walker v. City of Calhoun*, 901 F.3d at 1254–55; *Arevalo v. Hennessy*, 882 F.3d 763, 766–67 (9th Cir. 2018); *Stewart v. Abraham*, 275 F.3d 220, 225–26 (3d Cir. 2001); *Fernandez v. Trias Monge*, 586 F.2d 848, 850–54 (1st Cir. 1978); *Campbell v. McGruder*, 580 F.2d 521, 525–26 (D.C. Cir. 1978). As in *Gerstein*, Just City's proposed injunction "could not prejudice the conduct of the trial on the merits" with respect to Shelby County arrestees. 420 U.S. at 108 n.9 ("The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct

of the trial on the merits."). The State's argument that "Tennessee arrestees can bring their constitutional challenge in defense of the criminal prosecution" parrots *Gerstein* but makes no sense. AG at 11. The consideration of ability to pay in setting a bail amount does not bear on the determination of guilt or innocence: "the threat to the plaintiff's federally protected rights . . . cannot be eliminated by his defense against a single criminal prosecution." *Younger v. Harris*, 401 U.S. 37, 46 (1971); *see Gerstein*, 420 U.S. at 108 n.9.

Neither case cited by the State supports a different result. In *O'Shea v. Littleton*, the plaintiffs "[did] not seek to strike down a single state statute," but rather sought an injunction that amounted to "an ongoing federal audit of state criminal proceedings. . . ." 414. U.S. 488, 500 (1974); Opp. at 7 n.3. Similarly, even aside from the errors of legal reasoning in the deeply divided *en banc* opinion in *Daves v. Dallas County,* the plaintiffs there requested a specific "periodic reporting scheme" that the court held ran afoul of *O'Shea*. 64 F.4th 616, 630 (5th Cir. 2023); Opp. at 7–8. Just City does not seek any similar form of intrusive federal court oversight of Tennessee courts. Instead, Just City seeks to "strike down a single state statue," which the *O'Shea* court contrasted as an unintrusive and permissible federal challenge. *O'Shea*, 414 U.S. at 500.

The State argues that "[a]n injunction requiring the release of arrestees detained under prior bail orders would be an extraordinary and potentially dangerous act of federal interference." AG at 9. Just City is not seeking such an injunction, and there is nothing "extraordinary" about the injunction Just City seeks. In fact, the Sixth Circuit has noted that "[t]here are plenty of cases allowing injunction actions" against the Sheriff to establish the constitutional preconditions for pretrial detention. *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019), *aff'g* 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019). Nor does the relief sought require indiscriminate release of arrestees. To the contrary, Just City seeks to *end* the indiscriminate release and detention

6

of arrestees that is mandated by a prohibition on considering ability to pay. Any argument motivated by public safety is an argument to *restore* judges' authority to consider ability to pay, as Just City seeks to do. Because this relief does not "attack[] the validity of the fact or length of [] confinement," *Preiser v. Rodriquez*, 411 U.S. 475, 490 (1973), this lawsuit, like *Gerstein*, does "not come within the class of cases for which habeas corpus is the exclusive remedy." *Gerstein*, 420 U.S. at 107 n.6 (citing *Preiser*).

**B.  Shelby County Criminal Proceedings Do Not Provide an Adequate Forum to Raise A Constitutional Challenge to HB 1719**

Even if the State could get past the first requirement for *Younger* abstention, it can't get past the second: Shelby County criminal proceedings do not provide an adequate forum to "raise and have timely decided" the federal claims asserted here. Opp. at 8–9. Arrestees face a "great and immediate" irreparable injury of unconstitutional detention that requires federal intervention. *Id.* at 9–10; Compl. ¶ 20 (describing *ex parte* initial bail setting).

The State argues that the timeliness of the state court remedy is irrelevant to the adequacy of the state court proceeding, relying on *Younger*'s observation that the "inconvenience of having to defend against a single criminal prosecution" is not an irreparable injury. 401 U.S. at 46. Unconstitutional pretrial detention is different. The State is simply wrong to suggest, relying on *Daves,* 64 F.4th at 633, "that each moment in erroneous pretrial detention is [not] a constitutional violation"—when such erroneous pretrial detention occurs *as a result of an unconstitutional bail order*. Neither the State nor the Fifth Circuit in *Daves* explains how this constitutional violation does not constitute irreparable harm. *See also Miller v. Stovall,* 64 F. Supp. 2d 657, 669 (E.D. Mich. 2009) ("Sixth Circuit courts hold that continued imprisonment in violation of the United States Constitution constitutes irreparable harm."). Even mere reputational harm is sufficient to constitute "irreparable damage" that renders a state court proceeding inadequate. *Gibson v.*

*Berryhill*, 411 U.S. 564, 577 n.16, 580 (1973) (noting that while the outcome of an appeal "might have obviated the need for an injunction . . . the Board was pressing its charges against appellees without awaiting that outcome"). Put simply, the adequacy of a state court proceeding cannot be divorced from its timeliness. *See id*. at 577 (*Younger* abstention "naturally presupposes the opportunity to raise and have *timely decided* by a competent state tribunal the federal issues involved" (emphasis added)); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015) ("proceedings . . . to address constitutional harms . . . must be available *before* the harm is inflicted.").

## III.    Just City Has Stated Two Claims for Relief

Just City has stated a claim for denial of procedural due process and imposition of discriminatory wealth-based detention. "Viewing the allegations in the light most favorable to" Just City, and "drawing all reasonable inferences from those facts in favor of" Just City, the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable" for setting bail through a fundamentally unfair process and detaining arrestees under unaffordable bail orders without inquiring into ability to pay. *Peatross v. City of Memphis*, 818 F.3d 233, 240, 245 (6th Cir. 2016) (citation omitted).

### A.    There is No Saving Construction of HB 1719: The Law Unambiguously Prohibits Consideration of Ability to Pay

HB 1719 unambiguously prohibits consideration of ability to pay. When the plain language of a statute is unambiguous, the "inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (citation omitted).

Here, HB 1719 added a proviso to the requirement that judges consider the defendant's "financial condition" when setting bail: "provided, that, the defendant's ability to pay shall not be considered." Such provisos are "not ambiguous." *Concorde Inv. Servs., LLC v. Certain*

*Underwriters at Lloyd's, London*, No. 19-13256, 2020 WL 13881227, at *5 (E.D. Mich. Oct. 8, 2020) (citing *Proviso Canon,* Black's Law Dictionary (11th ed. 2019), and *United States v. Morrow*, 266 U.S. 531, 534–35 (1925)). A proviso is an exception to the principal clause to which it is attached. *Abbott v. United States*, 562 U.S. 8, 26 (2010) (citing *Morrow*, 266 U.S. at 534–35). In this case, HB 1719 excepts consideration of "ability to pay" bail from the principal clause mandating consideration of the arrestee's "financial condition." As this Court observed, and the State concedes, HB 1719 allows for consideration of financial condition as it bears on ties to the community, stability, or other indicators of flight risk or danger, Hr'g Tr. at 71:7–15, ECF No. 61; AG at 16 n.4, while prohibiting consideration of an arrestee's ability to pay bail. Because examination of the statutory text "yields a clear answer," the Court "must stop" further analysis. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).

On this basis alone, the Court should reject arguments that HB 1719 *permits* consideration of ability to pay. The State and the Defendants argue that HB 1719 is harmless because judges can consider ability to pay through back-door considerations such as "whether the bail amount is a barrier to release," AG at 2, or by measuring ability to pay "in centimeters and not inches" through "a holistic consideration of the financial condition" including "debts, obligations, or resources they may have, . . . do[ing] the math and determin[ing] what your financial condition shows your bail should be set at." Hr'g Tr. at 25:25–26:24, 79:10–11. These constructions violate the first principle of statutory interpretation. HB 1719 does not permit what its plain text unambiguously prohibits.

Moreover, these readings would render HB 1719 superfluous. If judges could achieve an end run around the ability-to-pay prohibition through consideration of an arrestee's financial condition, then HB 1719 in its entirety would be "meaningless." *Pulsifer v. United States*, 601 U.S. 124, 143 (2024). "[T]he canon against surplusage applies with special force" when a provision "is

so evidently designed to serve a concrete function." *Id. See also City of Chicago v. Fulton*, 592 U.S. 154, 160–62 (2021) (rejecting construction of statutory amendment that would result in "conflicting commands"); *Nat'l Ass'n of Mfrs.*, 583 U.S. at 126 ("Courts are required to give effect to Congress' express inclusions and exclusions, not disregard them."). The Tennessee Supreme Court applies this canon of construction when interpreting state statutes. *See, e.g., Hammond v. Harvey*, 410 S.W.3d 306, 310 (Tenn. 2013) ("When we construe statutory provisions, we do so in a manner that will not render them meaningless or useless."); *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) ("Every word in a statute is presumed to have meaning and purpose."). The Tennessee General Assembly passed a bill containing nothing but a prohibition on considering ability to pay—the Court cannot read Tennessee law to render the prohibition meaningless.

Even if the Court were to hold that HB 1719 is ambiguous, the legislative history indicates that the Court should look to *Bearden v. Georgia* to clarify the statute's meaning. The legislative record shows that HB 1719 was targeted to undermine the Shelby County Bail Agreement, which protected arrestees' rights under *Bearden*. Compl. ¶¶ 19, 23–26. HB 1719 borrowed the term "ability to pay" from the Agreement and *Bearden*. When a legislature borrows a legal term of art, it "presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *United States v. Hansen*, 599 U.S. 762, 774 (2023) (quoting *Morisette v. United States*, 342 U.S. 246, 263 (1952)); *see also id.* at 778–79 (holding that when the legislature "transplants a common-law term, the old soil comes with it." (cleaned up)). HB 1719 thus prohibits precisely what *Bearden v. Georgia* requires: considering whether an arrestee "has the means to pay," can "borrow" or acquire the money to pay, or whether the arrestee "cannot do so through no fault of his own." 461 U.S. at 668.

**B.      Claim One: HB 1719 Violates Procedural Due Process on its Face**

The Supreme Court has required that pretrial detention procedures comply with procedural due process for decades. *Salerno*, 481 U.S. (applying *Mathews,* 424 U.S. 319, to pretrial detention proceedings); *Schall v. Martin*, 467 U.S. 253 (1984) (pretrial detention in juvenile proceedings). There is nothing new about this claim: it is a core requirement of due process to provide a "meaningful" opportunity to be heard. *Mathews*, 424 U.S. at 333. *Accord Salerno*, 481 U.S. at 750 (approving of pretrial detention following a "full-blown adversary hearing"). HB 1719 prevents arrestees from receiving a meaningful opportunity to be heard by prohibiting judges from considering their ability to pay.

The Sixth Circuit determines the procedural safeguards required for deprivation of a liberty by balancing the *Mathews* factors: "the private individual's interests," "the value of the suggested procedural requirements," "the risk of erroneous deprivation of the individual's rights that is inherent in current procedures," and "the government's interests, including the fiscal and administrative burdens at stake." *United States v. Brandon*, 158 F.3d 947, 953 (6th Cir. 1998) (citing *Mathews*, 424 U.S. at 335) (imposing stronger procedural protections for forcibly medicating pretrial detainee). Here, all four factors weigh heavily against HB 1719. As Just City argued in its Memorandum in Support of the Motion for Preliminary Injunction, ECF No. 2-1 at 7–12, HB 1719 imposes an unjustifiable risk of erroneous deprivation of fundamental rights: the right to pretrial liberty, the right against wealth-based detention[2], the right against excessive bail, and the right to bail under the Tennessee Constitution and state law. Restoring judges' authority to consider ability to pay would significantly lower the risk of erroneous deprivation while

---

[2] Just City addresses the application of *Bearden v. Georgia* to bail determinations *infra* Section III.C.1. Even disregarding the risk of a *Bearden* violation, a prohibition on considering ability to pay poses an extraordinarily high risk of erroneous deprivation of other fundamental rights.

imposing *no* fiscal or administrative burden. Every other state in the nation has reached the same conclusion: no other state prohibits judges from considering ability to pay bail. Forty-one states explicitly require it.[3]

The State argues that the *Mathews* test does not apply, because *Mathews* applies only "to state *civil* statutes." AG at 18. But pretrial detention *is* civil. It is regulatory, not punitive. *Salerno*, 481 U.S. at 747–48. The Supreme Court itself has applied the *Mathews* test to procedures for pretrial detention. *Id.* at 746. The State incorrectly invokes *Medina v. California*, 505 U.S. 437 (1992), which concerns only procedures for determining guilt or innocence, like "allocation of burdens of proof and the type of evidence qualifying as admissible." *Nelson v. Colorado*, 581 U.S. 128, 134–35 & n.7 (2017). *Mathews* is the correct standard.

Second, the State argues that arrestees do not have a fundamental right to affordable bail. Just City makes no such contention. Arrestees have a host of other fundamental rights at issue in Tennessee bail determinations: the right to pretrial liberty, the right against wealth-based detention, the right against excessive bail, and the right to bail under the Tennessee Constitution. The State

---

[3] *See* ALASKA STAT. ANN. § 12.30.011(c), (8) (West 2019); ARIZ. REV. STAT. ANN. § 13-3967(B)(7) (2022); Ark. R. Crim. P. 9.2(c)(ii); In re Humphrey, 11 Cal. 5th at 143; COLO. REV. STAT. ANN. § 16-4- 103(3)(a) (West 2023); CONN. GEN. STAT. § 54-63(b)(6) (West 2022); FLA. STAT. § 903.046(2)(c) (West 2023); GA. CODE ANN. § 17-6-1(d)(2)(A)-(C) (West 2022); HAW. REV. STAT. § 804-9 (West 2023); 725 ILL. COMP. STAT. ANN. 5/110-5(a)(3)(A) (West 2023); IND. CODE ANN. § 35-33-8-4(b)(2) (West 2017); IOWA CODE § 811.2(2) (20232); KAN. STAT. ANN. § 22-2802(8) (West 2018); KY. REV. STAT. ANN. § 431.525(1)(e) (West 2011); LA. CODE CRIM. PROC. ANN. art. 316(4) (West 2017); ME. REV. STAT. ANN. tit. 15, § 1026(4)(C)(4) (2023); Md. R. 4-216.1(b)(2); MASS. GEN. LAWS ANN. ch. 276, § 57 (West 2018); Mich. Ct. R. 6.106(F)(1)(f); Minn. R. Crim. P. 6.02(1)(2)(e) ; Miss. R. Crim. P. 8.2(a); Mo. R. Crim. P. 33.01(e); MONT. CODE ANN. § 46-9-301(6) (West 2023); NEB. REV. STAT. ANN. § 29-901(3) (West 2022); NEV. REV. STAT. ANN. § 178.498(2) (West 2021); N.M. R. Crim. P. Dist. Ct. 5-401(C); N.Y. Crim. P. L. § 510.10(1)(f); N.C. GEN. STAT. ANN. § 15A-534(c) (West 2023); N.D. R. Crim. P. 46(3)(C); OHIO REV. CODE ANN. § 2937.011(E)(4) (West 2023); Brill v. Gurich, 965 P.2d 404, 406 (Okla. Crim. App. 1998); 234 PA. CODE § 523(A)(2) (2016); R.I. Super. Ct. R. Crim. P. 46(c); S.D. CODIFIED LAWS § 23A-43-4 (2017); TEX. CODE CRIM. PROC. ANN. art. 17.15(a)(4) (West 2021); UTAH CODE ANN. § 77-20-205(7)(a) (West 2024; VT. STAT. ANN. tit. 13, § 7554(b)(1) (West 2024); VA. CODE ANN. § 19.2-121(A) (West 2022); WASH. REV. CODE ANN. § 10.21.050(3)(a) (West 2023); W. VA. CODE ANN. § 62-1C-1a(a)(3)(A) (West 2021); Wyo. R. Crim. P. 46.1(d)(3)(A).

has not undermined Just City's argument that the private interest factor weighs heavily in arrestees' favor.

Finally, the State summarily asserts that HB 1719 "does not increase the risk of an erroneous deprivation of liberty" because "appeal from a bail amount prevents that." AG at 20. Even setting aside the irreparable harm of erroneous pretrial detention pending appeal, HB 1719 continues to operate on appeal. The law imposes a blanket prohibition on considering ability to pay for any pretrial bail determination, whether in trial or appellate courts.

Each of the *Mathews* factors—the private interests at stake, the risk of erroneous deprivation, the value of considering ability to pay, and the administrative and fiscal burden of improved procedures—weighs in the arrestees' favor.

### C. Claim Two: HB 1719 Imposes Discriminatory Wealth-Based Detention as Applied to Arrestees Who Cannot Afford their Bail

#### 1. *Bearden's* Prohibition on Discriminatory Wealth-Based Detention Applies to Pretrial Detention

Due process governs "the fairness of relations between the criminal defendant and the State," and prohibits criminal proceedings that are "fundamentally unfair or arbitrary." *Bearden*, 461 U.S. at 665–66. Because the ability to pay "bears no rational relationship to a defendant's guilt or innocence," *Griffin v. Illinois*, 351 U.S. 12, 17–18 (1956), due process entails a "right not to lose [one's] liberty due to indigency." *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003). To prevent violation of this right, courts must be "sensitive to the treatment of indigents in our criminal justice system" with respect to both "procedural and substantive fairness." *Bearden*, 461 U.S. at 664, 666 n.7.

*Bearden* and its animating principles have been applied in the context of pretrial detention by courts across the nation and codified in the overwhelming majority of state laws regulating bail.

*Bearden* relied on at least one decision that struck down pretrial procedures that discriminated based on wealth. *Bearden*, 461 U.S. at 664 (citing *Roberts v. LaVallee,* 389 U.S. 40 (1967) (per curiam) (describing wealth-based discrimination in procedures for liberty deprivation as "repugnant to the constitution" and requiring free transcripts for indigent defendants pretrial)). This precedent and *Bearden*'s holding applies with even greater force to bail orders that effectively jail pretrial detainees, who have a "strong interest in liberty," *Salerno*, 481 U.S. at 750, because they are presumed innocent. *Cf. Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc) ("We view such deprivation of liberty of one who is accused but not convicted of crime as presenting a question *having broader effects and constitutional implications* than would appear from a rule stated solely for the protection of indigents.") (emphasis added); *In re Humphrey*, 19 Cal. App. 5th 1006, 1028 (2018), *approved in part,* 472 P.3d 435 (Cal. 2020), and *aff'd*, 482 P.3d 1008 (2021) ("The liberty interest of the [pretrial] defendant, who is presumed innocent, is even greater . . . .").

Federal courts across the nation have applied *Bearden* to cash-bail systems. The Second, Fifth, Ninth, and Eleventh Circuit Courts of Appeal have each applied some version of *Bearden*'s prohibition against wealth-based detention in evaluating the fairness of pretrial (or pre-adjudication) detention. *See Black v. Decker*, 103 F.4th 133, 158–59 (2d Cir. 2024) (upholding injunction requiring the immigration judge "conducting Black's bond hearing to consider his ability to pay"); *ODonnell v. Harris Cty.*, 892 F.3d 147, 153–59 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) *and Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (holding bail procedures "inadequate" because they did not require consideration of "ability to pay"); *Hernandez v. Sessions*, 872 F.3d 976, 982, 991 (9th Cir. 2017) (upholding injunction requiring immigration judges to "consider [] financial ability to obtain

bond"); *Walker v. City of Calhoun*, 901 F.3d at 1259–60 (holding that bail setting "falls within the Bearden . . . framework"). District courts in several jurisdictions have done the same. *See, e.g.*, *Buffin v. City and Cnty. of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362, at *8–10 (N.D. Cal. Jan. 16, 2018) (applying *Bearden* to evaluate pretrial detention system); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 312 (E.D. La. 2018) ("To satisfy the Due Process principles articulated by Supreme Court precedent, [a judge] must conduct an inquiry into criminal defendants' ability to pay prior to pretrial detention."); *Knight v. Sheriff of Leon Cnty.*, 369 F. Supp. 3d 1214, 1219 (N.D. Fla. 2019) ("A system that unnecessarily detains defendants pending trial based on inability to make bail—that detains defendants on this basis without regard to the state's compelling interests in detention—is unconstitutional at several levels.").

District courts in Tennessee, specifically, have applied *Bearden* to bail determinations, holding that pretrial detention under unaffordable bail orders is fundamentally unfair where ability to pay is not considered. *Torres v. Collins*, No. 2:20-CV-00026-DCLC-CRW, 2023 WL 6166523, at *9 (E.D. Tenn. Sept. 21, 2023) (finding due process requires a hearing in which arrestee can argue bail is unaffordable); *McNeil v. Cmty. Probation Servs.*, *LLC*, No. 1:18-CV-00033, 2019 WL 633012, *7–15 (M.D. Tenn. Feb. 14, 2019) (holding "setting secured bail" requires "findings regarding the arrestee's ability to pay"); *Weatherspoon v. Oldham*, No. 17-CV-2535-SHM-CGC, 2018 WL 1053548, at *4–7 (W.D. Tenn. Feb. 26, 2018) (holding bail process "inadequate" where judge "failed to consider defendant's ability to pay the bail amount" or alternatives).

Several state courts, including the Supreme Courts of California, Massachusetts, and Nevada, have similarly ruled that, under the Fourteenth Amendment, an arrestee's ability to pay must be considered when setting cash bail. *See Brangan v. Commonwealth*, 80 N.E.3d 949, 960 (2017) (requiring courts to "take a defendant's financial resources into account in setting bail" as

one of several factors); *Valdez-Jimenez v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 460 P.3d 976, 986 (2020) (requiring courts to "consider[] the defendant's financial resources"). Recently, the Supreme Court of California authoritatively interpreted *Bearden* in the pretrial context, holding that imposing bail without considering ability to pay "accords insufficient respect to the arrestee's crucial state and federal equal protection rights against wealth-based detention as well as the arrestee's state and federal substantive due process rights to pretrial liberty." *In re Humphrey*, 11 Cal. 5th 135, 151 (2021).

By contrast, no court has held that *Bearden* does *not* apply to pretrial detention. *Cf. Buffin v. City & Cnty. of San Francisco*, 2018 WL 424362, at *9 (specifically rejecting government's argument that *Bearden* and related cases do not apply pretrial). Even those courts that have rejected constitutional challenges to a bail-setting system have done so under the *Bearden* framework. *See, e.g., Schultz v. Alabama*, 42 F.4th 1298, 1330 (11th Cir. 2022), *cert. denied sub nom. Hester v. Gentry*, 143 S. Ct. 2610 (2023).

In final testament to *Bearden*'s applicability to pretrial detention, forty-one states currently *require* consideration of ability to pay when setting cash bail.[4] Another six explicitly allow it.[5] Tennessee alone forbids consideration of ability to pay—in conflict with nearly every other state's law and legal precedent across the county.

---

[4] *Supra* n.3.

[5] *See* Ala. R. Crim. P. 7.2(a)(3)(xiii); Idaho Crim. R. 46(c)(1); N.H. REV. STAT. ANN. § 597:2(III)(b)(3), (b)(4) (West 2020); N.J. STAT. ANN. § 2A:162-20(c)(1) (West 2022); S.C. CODE ANN. § 17-15-30(A)(3) (2023); WIS. STAT. ANN. § 969.01(4) (West 2023).

### 2. HB 1719 Causes Absolute Deprivations of Liberty, Triggering Bearden's Heightened Scrutiny

Heightened scrutiny is required because HB 1719 causes "an absolute deprivation of" pretrial liberty due to an arrestee's "inability to pay for it." *Torres v. Collins*, 2023 WL 6166523, at *6. *Johnson v. Bredesen*, 624 F.3d 742, 761–62 (6th Cir. 2010) (holding that *Bearden* required a "heightened standard of review" for wealth-based discrimination that "implicated physical liberty"). The State's argument that "Just City's complaint reveals only a diminishment, rather than a total deprivation of the liberty interests at stake in pretrial bail determinations," AG at 13, misrepresents the authority it relies on. Each of the cases the State cites concerned the narrow question of wealth-based detention *pending* an ability to pay hearing, which the court held to be a deprivation of liberty that was not absolute. *Schultz v. Alabama*, 42 F.4th 1298, 1324–30 (11th Cir. 2022); *Walker v. City of Calhoun,* 901 F.3d 1245, 1261–62 (11th Cir. 2018); *Torres*, 2023 WL 6166523, at *6–7. Here, HB 1719 prevents consideration of ability to pay bail *at any point* during pretrial proceedings. There is no pending ability to pay hearing for any arrestee in Shelby County; the wealth-based liberty deprivations at issue are absolute. Compl. ¶¶ 24–38. *See McNeil v. Cmty. Prob. Servs. LLC*, 2019 WL 633012, at *13 ("The Court is persuaded heightened scrutiny is the appropriate standard to apply because Plaintiffs have demonstrated an inability to afford bail and an absence of meaningful consideration of other possible alternatives to secured bail.").

The Court must accept Just City's well-pled allegations and apply heightened scrutiny. *See Torres,* 2023 WL 6166523, at *18 (looking to complaint's allegations to determine what level of scrutiny to apply). Unaffordable bail orders issued under HB 1719 cannot satisfy *Bearden*'s heightened scrutiny because the first step toward evaluation of alternatives—an inquiry into ability to pay—is flatly prohibited. Unaffordable bail orders are issued without any regard to whether they will release or detain the arrestee. These orders do not reflect a judge's reasoned determination

that "alternatives to imprisonment are not adequate" and the State's interests require detention. *Bearden*, 461 U.S. at 672. To satisfy this heightened scrutiny, a court must consider the arrestee's ability to pay, and consider alternatives to detention for those who cannot. *Id.* at 672–73.

### 3.   Just City Has Stated an As-Applied Claim on Behalf of Detained Arrestees

Just City has standing to assert an as-applied challenge on behalf of Shelby County arrestees because (1) it has a close relationship with arrestees, and (2) there is a hindrance to the arrestees' ability to protect their own interests. Reply in Support of Plaintiff's Motion for Preliminary Injunction, ECF No. 45, at 1; *NCBF*, 496 F. Supp. 3d at 1131. The State rehashes its argument that as-applied challenges are impermissible in third-party standing cases. This argument is incorrect; as-applied challenges in third-party standing cases are ordinary and permissible. *See, e.g.*, *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720–21 (1990); *Caplin & Drysdale, Chartered v. United States*,491 U.S. 617, 623 n.3, 625 (1989); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir.1998). The State's misleading quotation to *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), has nothing to do with third-party standing.AG at 14.

### CONCLUSION

For the foregoing reasons, Just City respectfully requests that the Court deny the State's Motion to Dismiss, ECF No. 52, in its entirety.

Respectfully submitted,

/s/ Trisha Trigilio
Trisha Trigilio
Tex. Bar No. 24075179
Julian Clark
Ashika Verriest
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 17th Floor
New York, NY 10004
(347) 302-2797
trishat@aclu.org

Stella Yarbrough
American Civil Liberties Union
Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org

Craig S. Waldman
David Elbaum
Jared Quigley
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
cwaldman@stblaw.com
david.elbaum@stblaw.com
jared.quigley@stblaw.com

*Attorneys for Plaintiff Just City, Inc.*