### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF TENNESSEE
### MEMPHIS DIVISION

| | | |
|---|---|---|
| **JUST CITY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 2:24-cv-02540** |
| **FLOYD BONNER, JR., Shelby County Sheriff;** | ) | |
| | ) | **Judge Parker** |
| | ) | **Magistrate Judge Pham** |
| **LEE WILSON, Presiding Shelby County General Sessions Criminal Court Judge; and** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **JOHN MARSHALL, ROBERT BARBER, RHONDA HARRIS, KEVIN REED, CHRISTOPHER INGRAM, SHAYLA PURIFOY, ROSS SAMPSON, SERENA GRAY, TERITA HEWLETT, MISCHELLE BEST, KENYA SMITH, ZAYID SALEEM, KATHY KIRK JOHNSON, LESLIE MOZINGO, Shelby County Judicial Commissioners, in their official capacities.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

---

### REPLY IN SUPPORT OF
### STATE OF TENNESSEE'S MOTION TO DISMISS

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... III

INTRODUCTION ........................................................................................................... 1

ANALYSIS ...................................................................................................................... 1

    I.    Just City Lacks Standing. ................................................................................ 1

        A.    Just City lacks organizational standing. .............................................. 1

        B.    Just City lacks third-party standing ..................................................... 3

    II.    Younger Abstention Requires Dismissal. ....................................................... 4

    III.    Just City's Claims Fail on the Merits. ............................................................ 6

        A.    Just City's as-applied claims seek relief the Court cannot give ......... 6

        B.    The equal-protection claim fails under rational-basis scrutiny. ......... 8

        C.    The procedural-due-process claim also fails. ....................................... 9

    CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bearden v. Georgia*,
  461 U.S. 660 (1983)..................................................................................................9

*California v. Texas*,
  593 U.S. 659 (2021)..................................................................................................7

*Carman v. Yellen*,
  112 F.4th 386 (6th Cir. 2024) ..................................................................................1

*City Line Joint Venture v. United States*,
  48 Fed. Cl. 837 (2001)..............................................................................................3

*Daves v. Dallas Cnty., Texas*,
  64 F.4th 616 (5th Cir. 2023) ....................................................................................5

*Doe v. Univ. of Kentucky*,
  860 F.3d 365 (6th Cir. 2017) ....................................................................................5

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975)..............................................................................................4, 7

*E.E.O.C. v. FPM Grp., Ltd.*,
  657 F. Supp. 2d 957 (E.D. Tenn. 2009)....................................................................7

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*,
  485 U.S. 568 (1988)................................................................................................10

*Food and Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)..................................................................................................1

*Frazier v. Prince George's County, Maryland*,
  No. CV 22-1768 PJM, 2023 WL 375177 (D. Md. Jan. 24, 2023)............................6

*Gerstein v. Pugh*,
  420 U.S. 103 (1975)..................................................................................................6

*Gibson v. Berryhill*,
  411 U.S. 564 (1973)..................................................................................................5

*Gill v. Whitford*,
  585 U.S. 48 (2018)....................................................................................................7

*Haaland v. Brackeen*,
   599 U.S. 255 (2023).................................................................................7

*Harris v. State*,
   875 S.W.2d 662 (Tenn. 1994).................................................................7

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982).................................................................................1

*In re Auto. Parts Antitrust Litig.*,
   997 F.3d 677 (6th Cir. 2021) ..................................................................2

*Johnson v. Bredesen*,
   624 F.3d 742 (6th Cir. 2010) ..............................................................8, 9

*L. W. by & through Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) ...................................................................7

*Medina v. California*,
   505 U.S. 437 (1992).............................................................................9, 10

*Miller v. Stovall*,
   641 F. Supp. 2d 657 (E.D. Mich. 2009)................................................6

*Nashville Cmty. Bail Fund v. Gentry*,
   496 F. Supp. 3d 1112 (M.D. Tenn. 2020). ....................................2, 3, 4

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).................................................................................5

*Opera Co. of Bos. v. Wolf Trap Found. for Performing Arts*,
   817 F.2d 1094 (4th Cir. 1987) ............................................................2, 3

*Parker v. Turner*,
   626 F.2d 1 (6th Cir. 1980) ......................................................................6

*Perez v. Ledesma*,
   401 U.S. 82 (1971) ..................................................................................7

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*,
   --- F.4th ----, 2024 WL 4597030 (4th Cir. Oct. 29, 2024)....................1

*Rodriguez v. Providence Community. Corrections, Inc.*,
   155 F. Supp. 3d 758 (M.D. Tenn. 2015)................................................6

*S. Memphis Land Co. v. McLean Hardwood Lumber Co.*,
   179 F. 417 (6th Cir. 1910) ......................................................................3

*Torres v. Collins*,
No. 2:20-cv-00026-DCLC-CRW, 2023 WL 6166523 (E.D. Tenn. Sept. 21,
2023) ..................................................................................................................8, 9

*United States v. Mendoza*,
464 U.S. 154 (1984) ............................................................................................8

*United States v. Texas*,
599 U.S. 670 (2023) ............................................................................................8

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ..........................................................................................10

*Walker v. City of Calhoun, GA*,
901 F.3d 1245 (11th Cir. 2018) ..........................................................................8

*Wallace v. Kern*,
520 F.2d 400 (2d Cir. 1975) ............................................................................4, 5

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ..............................................................................................7

*Younger v. Harris*,
401 U.S. 37 (1971) ......................................................................................4, 5, 6

**Statutes**

Tenn. Code Ann. § 40-11-102 .................................................................................9

Tenn. Code Ann. § 40-11-115 .................................................................................8

Tenn. Code Ann. § 40-11-118 ........................................................................2, 9, 10

**Rules and Regulations**

Tenn. R. Crim. P. 4 ................................................................................................9

Tenn. R. Crim. P. 9 ................................................................................................9

**Other Authorities**

William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L.
Rev. 153, 188 (2023) ........................................................................................7, 8

## INTRODUCTION

To ensure that, when setting bail, courts consider and give proper weight to key factors like risk of flight and danger to the public, the General Assembly amended Tennessee's bail statutes to prohibit courts from considering an individual arrestee's ability to pay bail. Just City's challenge to this amendment must be dismissed because the organization lacks standing, the challenge invites improper federal interference in state proceedings, and the amendment does not violate procedural due-process protections or the Equal Protection Clause.

## ANALYSIS

### I.    Just City Lacks Standing.

Just City lacks organizational and third-party standing because it is not directly regulated or affected by the amendment. (Doc. 52-1, at 4-8.)

### A.    Just City lacks organizational standing.

Just City argues (at 1-3) the amendment injures it by directly "impar[ing] its mission to post bail" and causing a "violation of the Shelby County Bail Agreement." Both positions fail.

Indirect Injury. To have standing, Just City must prove that the amendment "directly affected and interfered with [its] core business activities." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Indirect interference with "core business activities" isn't enough—the interference must be direct. *Id.* Direct injury might come in the form of direct regulation. *See, e.g.*, *Carman v. Yellen*, 112 F.4th 386, 407-08 (6th Cir. 2024) (finding standing where a statute required certain actions from an organization). Or it might come in the form of a governmental action that directly targets the organization's rights. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74, 378-79 (1982) (finding standing where a governmental actor gave false information to an organization); *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, --- F.4th ----, 2024 WL 4597030, at *3 (4th Cir. Oct. 29, 2024) (finding standing where

1

a state board provided defective voter rolls to an organization); *Nashville Cmty. Bail Fund*
("*NCBF*") *v. Gentry*, 496 F. Supp. 3d 1112, 1127 (M.D. Tenn. 2020) (finding standing where "the
government itself [was] routinely and intentionally keeping money that [the organization]
claim[ed] it has a right to").

Neither form of direct injury is present here.  First, the amendment does not directly
regulate Just City.  Tenn. Code Ann. § 40-11-118(b)(2).  It does not even directly regulate Just
City's clients.  Rather, it regulates courts setting arrestees' bond amounts.  *Id*.  And second, Just
City does not allege that the amendment directly targets its organizational rights.  (Doc. 1 ¶¶ 32-
33.)  To be sure, Just City (at 2) uses the magic words "directly and concretely."  But saying the
amendment directly affects Just City does not make it so.  An effect is "indirect" if there is an
"'intervening step' or a 'middleman,'" between the acting party and the person claiming to be
affected by the action.  *In re Auto. Parts Antitrust Litig*., 997 F.3d 677, 682 (6th Cir. 2021).  Here,
the middleman is the arrestee.  Courts set bail amounts that an arrestee must pay to be released.
(Doc. 1 ¶ 15.)  The arrestee *only then* goes to Just City for help.  (Doc. 1 ¶ 35.)  By definition, the
bail amounts set under the amendment only *indirectly* affect Just City.  *Auto. Parts Antitrust Litig*.,
997 F.3d at 682. This indirect impact does not confer standing on Just City.

Voided Agreement.  Just City's alleged breach-of-agreement injury also cannot be a basis
for standing.  It would be illogical for Just City to have standing to bring a civil rights claim based
on a breach of an agreement it had with Defendants when it does not even allege a breach-of-
contract claim.   Indeed, Just City likely could not pursue a breach-of-contract claim at all because
of the doctrine of "impossibility or impracticability of performance."  *Opera Co. of Bos. v. Wolf
Trap Found. for Performing Arts*, 817 F.2d 1094, 1100 (4th Cir. 1987).  Under that doctrine, when
an unexpected event occurs that makes performance of a contract impracticable,  then the contract

(or the relevant part) is voided and cannot be enforced. *Id.* at 1100-1101. A change in the law on which the contract is based generally qualifies as such an unexpected event. *City Line Joint Venture v. United States*, 48 Fed. Cl. 837, 840 (2001); *S. Memphis Land Co. v. McLean Hardwood Lumber Co.*, 179 F. 417, 421 (6th Cir. 1910).

Before the amendment, Defendants agreed, among other things, to conduct a written assessment of an arrestee's financial condition and use that information to evaluate an arrestee's ability to pay bail. (Doc. 2-6 ¶ 13(a).) But the amendment barred consideration of an individual's ability to pay in bail determinations, which renders Defendant's performance of that small portion of the agreement impracticable. *City Line Joint Venture*, 48 Fed. Cl. at 840. Thus, Defendants' inability to legally comply with that part of the agreement does not give Just City standing.

> ### B.    Just City lacks third-party standing.

Just City claims (at 3-5) third-party standing because it has a close relationship with arrestees who are hindered from suing to protect their own interests. Neither point is correct.

Hypothetical Relationship. Just City claims (at 4) that it has a close relationship with "actual, not hypothetical" arrestees. But the cited paragraphs of the complaint say only that Just City pays bail amounts for arrestees. (Doc. 1 ¶¶ 35-36.) They do not identify a single arrestee who is currently unable to pay bail and whom Just City is unable to assist.

Arrestees' Incentives to Sue. Just City (at 4-5) relies heavily on a Middle District case, *NCBF v. Gentry*, to argue that Shelby County arrestees are hindered from bringing this suit. But *NCBF* is easily distinguishable. In *NCBF* the bail-assistance organization, not the arrestees, suffered direct injury. 496 F. Supp. 3d at 1127. The organization would pay bail for arrestees, but even if the arrestees appeared in court, the criminal court clerk would allegedly withhold return of the organization's funds to use for payment of fines, fees, court costs, taxes, and restitution. *Id.* at 1121-23, 1127. In those circumstances, it was "not clear" why an arrestee would even bring the

3

lawsuit because it was the organization, not the arrestees, who was "deprived of refunded money." *Id.* at 1131. Here, the opposite is occurring. Just City claims standing to sue based on payments it is *not* making for arrestees who are still incarcerated and have good reason to seek relief for themselves. Just City's lack of standing requires dismissal.

## II.    *Younger* Abstention Requires Dismissal.

Because Just City wants to directly interfere with pending state criminal proceedings through both declaratory and injunctive relief, *Younger* abstention also calls for dismissal. (Doc. 52-1, at 8-13.) Of the three *Younger* criteria, Just City has no response to the State's position on the second—that bail proceedings involve an important state interest. Instead, it focuses (at 5-8) on the first criteria, whether a federal ruling would interfere with pending state proceedings, and the third criteria, whether the state proceedings give federal plaintiffs adequate opportunity to raise constitutional claims. On both, its arguments are unavailing.

<u>Ongoing State Proceedings</u>. Just City says (at 5-7) that *Younger* abstention should not apply because a ruling here would not interfere with the prosecution itself—how state courts rule on the guilt or innocence of arrestees. But Just City's "proposition that the principles underlying *Younger* are applicable only where the federal court is seeking to enjoin a pending state criminal prosecution is not supportable." *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975). Rather, the "principle underlying *Younger* . . . is that . . . a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal *proceeding*." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975) (emphasis added). *Younger* does not defer only state determinations of guilt or innocence. Rather, it "permit[s] state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971).

*Younger* abstention is not even limited to the criminal context. It applies to civil enforcement proceedings, and to "civil proceedings involving certain orders that are uniquely in

furtherance of the state courts' ability to perform their judicial functions." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

For these reasons, the Second Circuit long ago held that *Younger* abstention bars district courts from "mandating" that state courts implement "new bail procedures." *Wallace*, 520 F.2d at 400. And the Fifth Circuit recently agreed. *Daves v. Dallas Cnty., Texas*, 64 F.4th 616, 628 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548 (2024). So too should this Court.

Just City also argues (at 6-7) that *Younger* does not apply because it seeks state-court interference to a lesser extent than plaintiffs sought in other cases that applied *Younger*. Just City claims (at 6) it only seeks to strike down a single statute. But its filings say otherwise. It seeks an injunction that prevents Defendants from "detaining arrestees" who had their bail set without a determination of their ability to pay. (Doc. 2-12, at 1-2.) It also wants the sheriff to act as a mouthpiece for the judicial Defendants by filing a compliance plan within 48 hours of any preliminary injunction. (*Id.* at 2.) And it wants the opportunity to "request . . . monitoring" of all Defendants' compliance with any injunction. (*Id.*) This last request is particularly odious under *Younger* because it amounts to "nothing less than an ongoing federal audit of state criminal proceedings." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974).

<u>Adequacy of State Forum</u>. Just City also says (at 7-8) the state-court procedures for arrestees to raise wealth-based detention claims are inadequate because they apply only after arrestees' detention. But Just City does not cite a single case holding that state forums are inadequate under *Younger* simply because arrestees may seek relief in state court only after a bail order. It cites *Gibson v. Berryhill*, but there the federal court did not abstain under *Younger* because of concerns about state *bias*, not the timing of state remedies. 411 U.S. 564, 577 (1973). And it

5

cites *Miller v. Stovall*, which does not even reference *Younger*.  641 F. Supp. 2d 657 (E.D. Mich. 2009).

The only potentially relevant cases Just City cites are *Rodriguez v. Providence Community. Corrections, Inc*., 155 F. Supp. 3d 758 (M.D. Tenn. 2015), and *Frazier v. Prince George's County, Maryland*, No. CV 22-1768 PJM, 2023 WL 375177, at \*7 (D. Md. Jan. 24, 2023).  But neither case involves bail.  And both rely on an unsound interpretation of the much-debated footnote in *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975), discussing *Younger*'s inapplicability to a suit challenging state pretrial criminal procedures.  But the Sixth Circuit clarified long ago that *Gerstein* only avoided *Younger* abstention because the "existence of a hearing right was at issue" and that issue "could not be raised in any pending state proceeding."  *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980).  The Sixth Circuit held that *Younger does apply* to challenges concerning the "manner in which" state proceedings are conducted, challenges that can be "raised" in the state proceedings, and challenges that can be "dealt with by Tennessee's appellate courts."  *Id.*  Thus, the Sixth Circuit has recognized that *Younger* applies if there are available state court *appellate* remedies, which eviscerates Just City's argument that Tennessee's well-established post-detention remedies are inadequate.

Because this case meets all three *Younger* criteria, it should be dismissed.

## III.    Just City's Claims Fail on the Merits.

Just City also fails to state a claim because it seeks relief beyond the bounds of available remedies, the amendment complies with the Equal Protection Clause, and the amendment does not deprive arrestees of adequate procedural due process.  (Doc. 52-1, at 13-20.)

### A.    Just City's as-applied claims seek relief the Court cannot give.

Just City argues (at 18) that it can obtain as-applied relief for every Shelby County arrestee because it has third-party standing.  But setting aside Just City's *lack* of standing, this misconstrues

6

the State's argument. Rule 12(b)(6) dismissal is appropriate when the alleged facts do not entitle a plaintiff to a remedy. *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 964 (E.D. Tenn. 2009).

A valid remedy "ordinarily 'operate[s] with respect to specific parties,'" not on "legal rules in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 489 (2018) (Thomas, J., concurring). And any remedy "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *L. W. by & through Wi`lliams v. Skrmetti*, 83 F.4th 460, 490 (6th Cir. 2023), *cert. dismissed in part sub nom. Doe v. Kentucky*, 144 S. Ct. 389 (2023), and *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024). This "general rule that remedies should be tailored to the injury suffered from" applies even when the alleged injury results from a "constitutional violation." *Harris v. State*, 875 S.W.2d 662, 666 (Tenn. 1994).

This general rule is equally applicable to declaratory judgments and injunctions. "[N]o court may 'lawfully enjoin the world at large,' or purport to enjoin challenged 'laws themselves.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (citation omitted). So no declaration on behalf of the world at large could be a "milder alternative" to an injunction. *Perez v. Ledesma*, 401 U.S. 82, 111 (1971) (Brennan, J., concurring in part and dissenting in part); *see also Doran*, 422 U.S. at 931 ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes . . . except with respect to the particular federal plaintiffs[;] the State is free to prosecute others . . . ."). "Nonparties" to a declaratory judgment simply are "not . . . bound by the judgment." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023).

The general rule embodies "a judicial kind of fortitude." William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 188 (2023). There is "judicial virtue" in the "unwillingness" to issue an overly broad remedy, "no matter how attractive in achieving

7

justice or preventing injustice." *Id*. This restrained approach to relief also preserves the separation of powers. *See United States v. Texas*, 599 U.S. 670, 703 (2023) (Gorsuch, J., concurring in judgment) ("[U]niversal relief . . . exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide."). And it harmonizes with other protections of the government's discretion to enforce challenged laws against non-parties. *See United States v. Mendoza*, 464 U.S. 154, 158-63 (1984) (holding that "nonmutual offensive collateral estoppel simply does not apply against the government"). For these reasons, Just City's relief must be limited to Just City alone. Because Just City is not and could never be subject to the amendment, an order about the amendment would exceed the relief available to a party-plaintiff. Therefore, Just City has not stated a claim for relief.

**B.    The equal-protection claim fails under rational-basis scrutiny.**

<u>Level of Scrutiny</u>. Just City argues (at 17) that heightened scrutiny applies because arrestees experience an absolute deprivation of pretrial liberty due to their inability to pay. But Just City omits a key requirement for heightened scrutiny. "Only someone who can show that the indigent are being treated systematically worse '*solely* because of [their] lack of financial resources[]'—and not for some legitimate State interest—will be able to make out such a claim." *Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1260 (11th Cir. 2018) (emphasis added) (citation omitted). Just City cannot show that arrestees are detained solely for their inability to pay because, by law, Courts can only set bail if an arrestee is a flight risk or a danger to the public. Tenn. Code Ann. § 40-11-115. It is for these reasons that arrestees are detained, not solely their inability to pay. So rational-basis scrutiny applies. *Walker*, 901 F.3d at 1260.

Just City does itself no favors (at 17) by relying on *Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010), and *Torres v. Collins*, No. 2:20-cv-00026-DCLC-CRW, 2023 WL 6166523 (E.D. Tenn. Sept. 21, 2023). In *Johnson*, the Sixth Circuit only noted in passing that the Supreme Court

8

has applied heightened scrutiny to a deprivation of liberty based *solely* on inability to pay. 624 F.3d at 748. But such a deprivation is not present here. And in *Torres*, the court applied rational basis scrutiny because, as here, arrestees were not singled out due to their inability to pay bail but rather, due to their inability to guarantee they will appear for trial. 2023 WL 6166523, at *6.

Rationality of Amendment. Under its heightened scrutiny standard, Just City claims (at 17) the amendment requires courts to issue bail orders without any regard to whether the orders will release or detain arrestees. That is incorrect because state law requires that bail be set at the lowest amount necessary. Tenn. Code Ann. § 40-11-118(a)(2). But more importantly, this is a due process argument about what a court must consider. It is not an equal protection argument about whether the State has improperly denied a benefit to one class of criminal defendants that would be available to another. *Bearden v. Georgia*, 461 U.S. 660, 665 (1983). Just City has no response to the State's equal-protection argument that it is rational to treat non-bond-paying arrestees differently from arrestees who have paid because only those who have paid have provided the necessary assurance that they will reappear in court. (Doc. 52-1, at 17.)

### C.    The procedural-due-process claim also fails.

Proper Test. Between the *Mathews* test, which governs challenges to state civil procedures, and the *Medina* test, which governs challenges to state criminal procedures, Just City (at 12) wants *Mathews* because "pretrial detention is civil" and *Medina* "concerns only procedures for determining guilt or innocence." It is incorrect on both points.

First, bail is no less a part of criminal proceedings than a fingernail is part of a hand. The bail statutes are in Title 40 of the Tennessee Code Annotated, which is titled "Criminal Procedure." Bail is part of the criminal process before trial. Tenn. Code Ann. § 40-11-102. And bail is regulated by rules of *criminal* procedure. *See* Tenn. R. Crim. P. 4, 9. The Supreme Court

distinguishes civil from criminal actions due, in part, to the fact that in civil suits defendants will *not* be required to post bail. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 526 (1988).

Second, the Supreme Court could not have limited *Medina* to procedures for determining guilt and innocence because *Medina itself* was not about such a procedure. *Medina* evaluated whether the burden of proof in a state's competency proceedings satisfied procedural due process, and the Court found that competency proceedings are not even analogous to a procedure for determining guilt—the guilty plea. *Medina v. California*, 505 U.S. 437, 448 (1992). *Medina* applies in this case. But even under *Mathews*, the amendment is constitutional.

*Mathews* Test. Just City believes (at 8-13) that prohibiting a judge from considering arrestees' ability to pay bail deprives them of a meaningful opportunity to be heard. But this can only be true if one agrees with Just City's interpretation of the amendment. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the [legislative] intent . . . ." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). Just City says (at 10) the amendment prevents courts from considering arrestees' means or whether they can borrow or acquire money to pay bail. But by still permitting review of an arrestee's "financial condition," the amendment allows consideration of both these concepts. Tenn. Code Ann. § 40-11-118(b)(2); *see also* Doc. 2-6 ¶ 13(a) (treating financial condition as separate from the ability to pay). And this interpretation respects the legislative intent. *See* Tennessee General Assembly, Criminal Justice Subcommittee, capitol.tn.gov, at 56:33-58:16 (Feb. 13, 2024), https://bit.ly/3AE2WO1. Thus, the amendment still allows an arrestee a meaningful opportunity to be heard.

## CONCLUSION

For these reasons, Just City's complaint should be dismissed.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

s/ *Miranda Jones*
MIRANDA JONES (BPR 036070)
Senior Assistant Attorney General

BRIAN ENRIGHT (BPR 041742)
Assistant Attorney General

Law Enforcement and
Special Prosecutions Division
Office of the Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 521-0417
Fax: (615) 532-4892
Miranda.Jones@ag.tn.gov
Brian.Enright@ag.tn.gov
*Counsel for Intervenor - Tennessee*

### CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was filed and served by the Court's

ECF/PACER system on this the 15th day of November 2024, upon:

Trisha Trigilio
Julian Clark
Ashika Verriest
Brandon Buskey
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 17th Floor
New York, NY 10004
(347) 302-2797
trishat@aclu.org

Craig S. Waldman
David Elbaum
Jared Quigley
Simpson Thacher & Bartlett LLP
425 Lexington Avenue

New York, NY 10017
(212) 455-2000
cwaldman@stblaw.com
david.elbaum@stblaw.com
jared.quigley@stblaw.com
Stella Yarbrough
American Civil Liberties Union
Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
*Counsel for Plaintiffs*

and

11

Jasen M. Durrence                       (901) 222-2100
Julia Marie Hale                        jasen.durrence@shelbycountytn.gov
Shelby County Attorney's Office         julia.hale@shelbycountytn.gov
160 North Main, Suite 950               *Counsel for Defendants*
Memphis, Tennessee 38103


                                        s/ *Miranda Jones*
                                        MIRANDA JONES
                                        Senior Assistant Attorney General