**Appendix: Exhibits**

1. Trigilio Declaration, March 5, 2025

2. Waldman Declaration, March 5, 2025

3. Spickler Declaration, March 5, 2025

4. Declaration of Deangelo Towns, March 4, 2025

5. Bail Screening Form of Deangelo Towns, October 9, 2024

6. Bond Setting Information for Deangelo Towns

7. Declaration of Marshawn Barnes, March 5, 2025

8. Bond Setting Information for Marshawn Barnes

9. December 2024 Tennessee Jail Summary Report (PDF of Webpage)

10. Order Granting Motion for Class Certification, *Torres v. Collins, et al.*, 2:20-cv-00026-DCLC

# Exhibit 1: Trigilio Declaration

## Declaration of Trisha Trigilio

I, Trisha Trigilio, hereby declare as follows:

1. I am a member in good standing of the State Bars of Texas and New York, and I am lead counsel for the named Plaintiffs and putative class members in this case. I submit this declaration in support of the Plaintiffs' motion for class certification.

2. I am a Senior Staff Attorney at the American Civil Liberties Union Criminal Law Reform Project, where I lead the ACLU's litigation on the right to pretrial liberty. My primary area of practice for the past eleven years has been federal litigation challenging unconstitutional criminal court practices. I have served as class counsel in cases raising constitutional challenges to pretrial detention procedures, including *Guill v. Allen*, No. 19-cv-1126 (M.D.N.C.); *Booth v. Galveston County*, No. 18-cv-0104 (S.D. Tex.); and *Daves v. Dallas County*, No. 18-cv-0154 (N.D. Tex.). Prior to joining the ACLU Criminal Law Reform Project, I worked as an instructor and litigator for the University of Texas Civil Rights Clinic and a Senior Staff Attorney for the ACLU of Texas. I also taught a course on civil rights litigation as an adjunct professor for the University of Houston and worked briefly as a criminal legal system consultant for Harris County, Texas. I served as a law clerk to the Honorable J. Paul Oetken, and as a law clerk in the Office of Pro Se Litigation, both in the Southern District of New York. I am a 2010 graduate of New York University School of Law.

3. My ACLU co-counsel are Ashika Verriest and Stella Yarbrough. Ms. Verriest is a Senior Staff Attorney for the ACLU Foundation Criminal Law Reform Project. For the past two and half years, her primary area of practice has been litigation challenging systemic civil rights violations in the criminal justice context. In her previous work, Ms. Verriest challenged unconstitutional conditions of confinement and systemic constitutional violations within criminal

cases. Ms. Yarbrough is the Legal Director of the ACLU Foundation of Tennessee, where she supervises the office's litigation challenging systemic constitutional violations throughout the state.

4.      Ms. Verriest and Ms. Yarbrough, along with other ACLU staff, have invested significant time and resources to implement the Shelby County Bail Reform Agreement and understand the effect HB 1719 has had on Shelby County bail determinations. This work has involved reviewing and evaluating written bail determinations, attending county-led training sessions for judges and judicial commissioners on bail-setting, attending meetings with the county to understand local practices and implement reforms to bail-setting, interviewing people detained in Shelby County Jail under orders issued without ability to pay determinations, interviewing local attorneys and officials who are experienced with Shelby County bail determinations, and researching state and federal law bearing on the Shelby County bail determinations. The ACLU Foundation Criminal Law Reform Project and ACLU Foundation of Tennessee will continue to dedicate resources to litigating this action zealously on behalf of the putative class.

5.      Exhibit 5 to the class certification motion is Deangelo Towns' Bail Screening Form, dated October 9, 2024. My Simpson Thacher co-counsel, Nathan May, downloaded this document from the Shelby County Criminal Justice System Portal on March 5, 2025.

6.      Exhibit 6 to the class certification motion is a webpage case summary for Deangelo Towns which includes his bond setting information. Nathan May accessed this webpage from the Shelby County Criminal Justice System Portal on March 5, 2025.

7.      Exhibit 8 to the class certification motion is a webpage case summary for Marshawn Barnes which includes his bond setting information. Nathan May accessed this webpage from the Shelby County Criminal Justice System Portal on March 5, 2025.

8.      Exhibit 9 to the class certification motion is a PDF version of the December 2024 Tennessee Jail Summary Report, which is cited as a website in the Motion for Class Certification. It is included here as an exhibit pursuant to Local Rule 7.2(i). Nathan May accessed the webpage on March 5, 2025.

9.      Exhibit 10 is a PDF version of the court's Order Granting Motion for Class Certification in *Torres v. Collins, et al.*, 2:20-cv-00026-DCLC, 2295-2297 (E.D. Tenn. May 5, 2021).

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 5th day of March 2025 in Oklahoma City, Oklahoma.

/s/ Trisha Trigilio
Trisha Trigilio

# Exhibit 2: Waldman Declaration

# Declaration of Craig S. Waldman

I, Craig S. Waldman, declare:

1.      I am a partner with the law firm Simpson Thacher & Bartlett LLP ("Simpson Thacher"). Together with the American Civil Liberties Union Criminal Reform Project and the American Civil Liberties Union of Tennessee, Simpson Thacher co-represents the named plaintiffs pro bono in the above-captioned action. Plaintiffs' counsel have agreed to act jointly as class counsel, if the Court so designates them.

2.      The Simpson Thacher attorneys representing the named plaintiffs include myself, senior counsel David Elbaum, and associates Jared Quigley and Nathan May.

3.      Founded in 1884, Simpson Thacher has approximately 1,500 lawyers spread among its 12 global offices, and consistently ranks among the world's leading law firms in a wide variety of publications. Additionally, Simpson Thacher's Litigation Department is regularly recognized as among the nation's best, including in the field of class actions.

4.      Simpson Thacher has long had a strong commitment to public service and pro bono cases. Each year, the Firm's attorneys devote tens of thousands of hours to pro bono projects and advocate on behalf of low-income clients and the non-profit organizations that serve them, including in civil rights actions. Simpson Thacher has been honored with numerous awards and recognitions for its pro bono work, including a recent profile in *The American Lawyer's* 2023 Pro Bono Report titled, "The Work That Matters: Highlights From the Year in Big Law Pro Bono."

5.      Simpson Thacher has vigorously and competently represented plaintiffs in other pro bono civil rights litigation, including class actions. To offer just a few examples, we have successfully represented the plaintiffs in a lawsuit challenging unconstitutional policing practices

in Madison County, Mississippi that culminated in a landmark consent decree, *Brown v. Madison County*, No. 3:17-cv-347-WHB-LRA, (S.D. Miss.); a lawsuit against a California school district for violating state education law, *American Academy of Pediatrics, et al. v. Clovis Unified School District,* No. 12CECG02608 DSB (Cal. Super. Ct. 2015); a lawsuit brought to expand the rights of elderly adults with mental health disabilities to access state licensed housing, *California Association of Mental Health Patients' Rights Advocates v. Allenby et al.,* No. 106-CV061397 (Cal. Super. Ct. 2008); and a lawsuit seeking reforms to New York's education financing system, *see Campaign for Fiscal Equity, Inc. v. State,* 801 N.E.2d 326 (N.Y. 2003). Other recent and/or ongoing pro bono litigation matters include a lawsuit challenging a law mandating the display of the Ten Commandments in Louisiana public schools, *Roake v. Brumley*, No. 24-517-JWD-SDJ, (M.D. La. 2024); a lawsuit that challenged Mississippi's lifetime felony disenfranchisement provision, *Hopkins v. Hosemann*, No. 3:18-cv-188-DPJ-FKB, (S.D. Miss. 2019); a lawsuit challenging restrictions on mailing and prefilling mail ballot applications, *VoteAmerica v. Schwab*, 576 F.Supp.3d 862 (D. Kan. 2021); a lawsuit challenging a law that criminalized voting while on probation, parole or post-release supervision, even if the individual had a good-faith belief they were eligible to vote, *North Carolina A. Philip Randolph Institute v. N.C. State Board of Elections*, No. 1:20-cv-876, (M.D.N.C. 2022); and litigation on behalf of a class of U.S. military veterans seeking to remedy the Department of Veterans' Affairs' longstanding delays in resolving claims for disability benefits, *see Monk v. Shulkin,* No. 15-1280 (Vet. App.).

6. As co-lead counsel in this action, Simpson Thacher is committed to the vigorous, effective, and efficient representation of the interests of Plaintiffs and the proposed class. Simpson Thacher has devoted, and will continue to devote, substantial resources to the prosecution of this matter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 5, 2025
New York, New York

       /s/ Craig S. Waldman
       CRAIG S. WALDMAN

# Exhibit 3: Spickler Declaration

**DECLARATION OF JOSH SPICKLER IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Josh Spickler, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am preparing this Declaration in support of Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts set forth in this Declaration and could testify competently to those facts and exhibits if called as a witness.

2. I live in Memphis, Tennessee and am a licensed attorney in the State of Tennessee.

3. I am the founder and executive director of Just City, Inc., a mission-driven nonprofit organization dedicated to fighting discrimination based on race, ethnicity, and income in Shelby County criminal proceedings.

4. Just City is headquartered in Memphis, Tennessee, and has advocated to reform Shelby County's pretrial detention practices for years.

5. Just City launched a charitable bail fund in 2017. In my role as executive director, I oversee the operation of Just City's charitable bail fund.

6. The purpose of the bail fund is to post bail for as many people as possible who are referred by the Shelby County Public Defender's Office and who have been determined to be indigent by a Shelby County judge. Just City pays the full cash bail amount to the clerk, and after the arrestee attends required court appearances and their case concludes, Just City receives a full refund of the bail amount. Just City then recycles this refund to pay bail for other qualifying arrestees.

7. The bail fund has been posting bail for those who cannot afford it for more than seven years. In that time, Just City has paid more than $3,000,000.00 in cash bail for more than 1,700 people.

8. Just City collects data from the Shelby County Criminal Justice System Portal and the Shelby County Jail Offender Management System related to Shelby County bail practices as part of its advocacy to reform pretrial detention practices. This data normally includes completed initial bail screening forms. This data does not normally include bail orders documenting bail hearing outcomes.

9. Just City's data shows that, each week, new people are booked into the jail while other people leave the jail either because they post bail or their cases resolve.

10. Based on my experience overseeing Just City's bail fund, reviewing its data, attending bail hearings, and advocating for pretrial detention reform, Shelby County's typical bail-setting practices since HB 1719 are as follows:

   a. When an arrestee is booked into the jail, they receive an initial bail screening. Neither the arrestee nor a defense attorney is present at this screening. Judges document their bail-setting decision in an initial bail screening form.

   b. In my experience reviewing publicly available initial bail screening forms, since HB 1719 went into effect, judges no longer consider ability to pay when they set bail at the initial bail screening. Neither do judges indicate the amount of bail that a person can pay anywhere on the initial bail screening form.

   c. Previously, before HB 1719 went into effect, the Agreement required judges to consider arrestees' ability to pay, as indicated by the ability to pay calculator, when setting bail. After HB 1719 went into effect, Shelby County stopped using the ability to pay calculator. As a result, judges conducting the

initial bail screening do not have any information about the arrestee's ability to pay bail.

    d.   Arrestees who are detained subject to the initial bail screening receive a bail hearing a few days later. The arrestee, their defense attorney, and the District Attorney are present at the bail hearing. Judges do not ask about the arrestee's ability to pay bail at the bail hearing, nor do they say anything or enter any findings suggesting that they consider arrestees' ability to pay when they set bail at these bail hearings.

11. I have reviewed the court records and declarations of Deangelo Towns and Marashawn Barnes attached to this motion. Based on my experience with Shelby County criminal courts, the manner in which bail was set for Mr. Towns and Mr. Barnes appears to be typical of the manner in which Shelby County criminal courts have set bail following the passage of HB 1719.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 5, 2025.

Josh Spickler

# Exhibit 4: Declaration of Deangelo Towns, March 4, 2025

**DECLARATION OF** _Deangelo Towns_

I, _Deangelo Towns_ certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

1. I am over the age of 18 and am competent to make this declaration.

2. I am currently detained in the Shelby County jail.

3. I cannot afford to pay the amount of bail that has been ordered for me to pay.

4. On _Oct 8, 2024_, I was arrested and booked into the Shelby County Jail.

5. I was told by _Intake Officer_ that the amount of bail I would need to pay is _$10,000_.

6. I did not see a judge before this bail amount was set.

7. No one at the jail asked me what I was able to pay before this bail amount was set.

8. On about _Oct. 10, 2024_, I went to court and appeared before a judge.

9. The judge did not ask me whether I could afford to pay my bail amount.

10. The judge set my bail at _$25,000_.

11. I still cannot afford that bail amount.

12. If I could pay, I would pay the bail and be released from custody.

13. I met with _Ashika Verriest and Nathan May_, who explained this case and the responsibilities of a class representative. They answered all my questions.

14. I will fulfill the responsibilities of a class representative in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability. Executed this _____4_____ day of March, 2025 in Memphis, Tennessee.

# Exhibit 5: Bail Screening Form of Deangelo Towns, October 9, 2024

# IN THE GENERAL SESSIONS CRIMINAL COURT OF SHELBY COUNTY

STATE OF TENNESSEE

**Division 7**

ODY Case No.: **24018011**

vs

RNI / SO #: **247056**

**Deangelo Towns**
DEFENDANT

## ** BAIL SCREENING FORM **

**I, Judicial Commissioner/Judge, Reed, Kevin , hereby find:**
In accordance with the powers vested in me by Tennessee law and the United States and State of Tennessee Constitutions; have reviewed the Shelby County Pretrial worksheet attached hereto and the Standing Bail Order (SBO) of the Shelby County General Sessions Courts and have considered the factors under United States and Tennessee law. Tennessee and federal law require the presumption of release of a defendant prior to trial and the imposition of the least restrictive conditions of release that will reasonably ensure the appearance of the person as required and the safety of the community. In light of the above and all relevant factors, I hereby impose the following conditions for the release of Defendant **Deangelo Towns:**

Considering the above and all relevant factors, **the Court hereby finds and orders** the following:

---

# PART I

- [ ] **1. Release on Recognizance or Unsecured Bail** (T.C.A. § 40-11-115)

  - [ ] ROR release ordered
  - [ ] Unsecured bail set at $_____

GENERAL SESSIONS CRIMI
OCT 9 AM 2:48

*AFTER ORDERING ROR OR UNSECURED RELEASE UNDER PART I, PROCEED TO PART V.*

---

# PART II

- [ ] **2. Release on Conditions or Release to Pretrial Services for Conditions Evaluation**

  - [ ] Pursuant to T.C.A. § 40-11-116, if the defendant does not qualify for release under T.C.A. § 40-11-115, the Court shall impose the least onerous conditions reasonably likely to assure the defendant's appearance in court. The Court finds that the costs of the required conditions are believed to be affordable or required by law.

**IT IS ORDERED** that the defendant's release is subject to the following conditions:

- [ ] Statutorily Mandated Condition(s), to be imposed if the defendant is charged with DUI, Vehicular Assault, Aggravated Vehicular Assault, Vehicular Homicide, Aggravated Vehicular Homicide:

  - [ ] Interlock Device
  - [ ] Transdermal Monitoring Device
  - [ ] Random Alcohol or Drug Screens
  - [ ] Pre-trial residency in an in-patient alcohol or drug rehabilitation center

---

☐ Release to Pretrial Services for further supervision at the following level:

☐ PSA 1   ☐ PSA 2   ☐ PSA 3   ☐ PSA 4   ☐ PSA 5

☐ Other conditions imposed, if any:

☐ AA/NA Meetings            ☐ Alcohol Monitoring Device

☐ Individual Counseling       ☐ Interlock Device

☐ Random Drug Screens      ☐ Transdermal Monitoring Device

☐ Stay away from Victim/location   ☐ Other (see below):

Other conditions imposed: _____

AFTER ORDERING RELEASE ON CONDITIONS UNDER PART II, PROCEED TO PART V.

# PART III

☐ **3. Release Subject to Payment of Bail Under T.C.A. § 40-11-148**

☐ Defendant is being charged for commission of crime while released on bail for a previous offense. Bail must be set according to T.C.A. § 40-11-148.

☐ **Bail Amount Ordered**

a. Bail Amount Set:          $ _____

b. Information on Pending Case:

GENERAL SESSIONS CRIM
OCT 9 AM 2:49

# PART IV – RELEASE ON BAIL

Pursuant to T.C.A. § 40-11-118 and T.C.A. § 40-11-150, bail shall be set as low as the court determines is necessary to reasonably assure the defendant's appearance in court and the safety of the public and/or community.

☒ **4. Risk of Nonappearance by the Defendant and/or Safety of the Public**

**4A. Threat to Public Safety**

☒ Presuming the individual's innocence, based on the totality of circumstances and after careful examination of each of the factors outlined in Part IV that would reasonably assure public safety, the Court finds that the individual poses a threat to the safety of the public that cannot be managed with less-restrictive conditions. The Court has considered the conditions short of detention available to the individual, as outlined in Part II, and found them insufficient.

**4B. Risk of Nonappearance**

☒ Presuming the individual's innocence, based on the totality of circumstances and after careful examination of all of the factors outlined in Part IV and the alternative conditions outlined in Part II that would reasonably assure the individual's future court appearance, the Court finds that the State has proven by clear and convincing evidence, that bail is warranted because the individual poses a risk of nonappearance that cannot be managed with less-restrictive conditions. The Court has considered the conditions short of detention available to the individual, as outlined in Part II, and found them insufficient.

☒ The Court finds that a Risk of Nonappearance and/or the Safety of the Public as the basis for not ordering Release on Recognizance without supervision based on the following factors:

**Safety of the Public** (required, if applicable):

☐ Length of residence in the community, family ties and relationships

☐ Defendant's employment status and history and financial condition

☐ Defendant's reputation, character, and mental condition

☐ Defendant is the subject of a protective order

☐ Used or displayed a deadly weapon

☐ Nature of offense, probability of conviction and the likely sentence as it relates to the safety of the community

☒ Defendant's prior criminal record, record of appearance at court proceedings, record of flight to avoid prosecution or failure to appear at court proceedings; likelihood that defendant's prior criminal record will pose a risk of danger to the community

☐ Criminal history involving domestic violence convictions and/or violations of protective orders

☐ Threat to alleged victim

☐ Pretrial, probation, parole, or supervised release status and compliance

☒ Any other factors bearing on the defendant's risk to public safety:

  5 felonies; 12 misdemeanors; 11 FTAs

**Risk of Nonappearance** (required, if applicable):

☐ Length of residence in the community

☐ Defendant's employment status

☐ Family ties and/or relationships

☐ Defendant's prior criminal record including prior releases on recognizance or bail

☐ Apparent probability of conviction and likely sentence

☐ Whether at time of being charged with offense, the defendant was on release pending trial, sentencing or appeal in connection with another offense

☐ Nature of offense, probability of conviction and likely sentence as it relates to risk of nonappearance

☐ Substance use or mental health issues that would be better addressed in a community-based treatment program

☐ Any other factors indicating defendant's ties to community or bearing on defendant's risk of willful failure to appear:

GENERAL SESSIONS CRIM
OCT 9 ... 2:49

**4C. Bail Required**

☒     I, Judicial Commissioner/Judge _Reed, Kevin_ , considered all the factors found in T.C.A. § 40-11-118 and T.C.A. § 40-11-150 and reviewed the list of conditions short of detention available to the individual. After my review, I **find** that no combination of available conditions will serve to reasonably assure this individual's future court appearance and the safety of the public.

**4D. Bail Ordered**

       **I hereby find the following:**

☒     **Further Bail Hearing Required Pursuant to Standing Bail Order:**

      Bail Amount Set:               $     10,000

---

# PART V

**The Court hereby ORDERS:**

**Bail Amount Set: $**    10,000

*Kevin E. Reed*

Judicial Commissioner / Judge Signature

10/9/24

Date

GENERAL SESSIONS CRIMI
OCT 9 2024

# Exhibit 6: Bond Setting Information for Deangelo Towns

# Case Information

24018011 | The State of Tennessee vs TOWNS, DEANGELO

| Case Number | Court | Judicial Officer |
| --- | --- | --- |
| 24018011 | Division 11 | Massey, Karen |
| File Date | Case Type | Case Status |
| 10/08/2024 | Felony Arrest | Held to State |

# Party

| Defendant | Active Attorneys ▾ |
| --- | --- |
| TOWNS, DEANGELO | Lead Attorney |
| DOB | Israel, Ben |
| 12/02/1977 | Retained |
| Race | |
| Black | |

# Charge

Charges
TOWNS, DEANGELO

| | Description | Statute | Level | Date |
| --- | --- | --- | --- | --- |
| 1 | THEFT OF PROPERTY $2500-$10000 | 39-14-103 | Felony D | 10/08/2024 |

# Bond Settings

| Setting Date |
| --- |
| 10/10/2024 |
| Judge/Judicial Approved - Courtroom |

$25,000.00
Any except

## Disposition Events

10/24/2024 Disposition ▾

Judicial Officer
Massey, Karen

| 1 | THEFT OF PROPERTY $2500-$10000 | Held to State(Probable Cause Found) |

## Events and Hearings

| 10/08/2024 Booking Occurred |
|---|
| 10/08/2024 Probable Cause |
| 10/08/2024 Verified RNI |
| 10/08/2024 Arrest Ticket |
| 10/08/2024 Affidavit ▾ |
| Affidavit |
| 10/08/2024 Division Assignment Completed By 24 Hr Clerk |
| 10/08/2024 Custody Released From The Case |

10/09/2024 Video Arraignment ▾

Judicial Officer
Anderson, William Bill

Hearing Time
9:00 AM

Cancel Reason
Transfer

10/09/2024 Video Arraignment ▾

Judicial Officer
Massey, Karen

Hearing Time
9:00 AM

Result
Continued

10/09/2024 Active Bond Set

10/09/2024 Bail Screening/Setting-24HCO

10/09/2024 Bail Screening Form-24HCO ▾

Bail Screening Form-24HCO

Bail Screening Form-24HCO

Bail Screening Form-24HCO

Bail Screening Form-24HCO

10/09/2024 Bail Review Required-24HCO

10/09/2024 Court Appointed Attorney

10/10/2024 Bail Review Hearing Arraignment ▾

Judicial Officer
Judge/Judical, Court

Hearing Time
9:00 AM

Cancel Reason
Advanced

10/10/2024 Bond Hearing ▾

Judicial Officer
Massey, Karen

Hearing Time
9:00 AM

Result
Continued

10/10/2024 Active Bond Set

10/10/2024 Amended Bail Review Conditions-Courtroom

10/14/2024 Subpoena▾

Unserved

Anticipated Server
Sherriff's Subpoena Server

Anticipated Method
Personal

---

10/14/2024 Subpoena ▾

Unserved

Anticipated Server
Sherriff's Subpoena Server

Anticipated Method
Personal

---

10/15/2024 Subpoena ▾

Unserved

Anticipated Server
Sherriff's Subpoena Server

Anticipated Method
Personal

---

10/24/2024 Preliminary Hearing ▾

Judicial Officer
Massey, Karen

Hearing Time
9:00 AM

Result
Held To State

---

10/24/2024 Held To State Case Created

---

# Financial

TOWNS, DEANGELO

| | | |
|---|---|---|
| Total Financial Assessment | | $144.00 |
| Total Payments and Credits | | $0.00 |

| | | |
|---|---|---|
| 10/21/2024 | Transaction Assessment | $48.00 |
| 10/21/2024 | Transaction Assessment | $48.00 |
| 10/23/2024 | Transaction Assessment | $48.00 |

## Documents

Affidavit

Bail Screening Form-24HCO

Bail Screening Form-24HCO

Bail Screening Form-24HCO

Bail Screening Form-24HCO

# Exhibit 7: Declaration of Marshawn Barnes, March 5, 2025

**DECLARATION OF** _Marshawn Barnes_

I, _Marshawn Barnes_, certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

1. I am over the age of 18 and am competent to make this declaration.

2. I am currently detained in the Shelby County jail.

3. I cannot afford to pay the amount of bail that has been ordered for me to pay.

4. On _Aug 14, 2024_, I was arrested and booked into the Shelby County Jail.

5. I was told by _Public Defender_ that the amount of bail I would need to pay is _15,000_.

6. I did not see a judge before this bail amount was set.

7. No one at the jail asked me what I was able to pay before this bail amount was set.

8. On about _Aug. 15, 2024_, I went to court and appeared before a judge.

9. The judge did not ask me whether I could afford to pay my bail amount.

10. The judge set my bail at _15,000_.

11. I still cannot afford that bail amount.

12. If I could pay, I would pay the bail and be released from custody.

13. I met with _Ashika Verrest_, who explained this case and the responsibilities of a class representative. They answered all my questions.

14. I will fulfill the responsibilities of a class representative in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my ability. Executed this _____5_____ day of March, 2025 in Memphis, Tennessee.

Marshawn Barnes

# Exhibit 8: Bond Setting Information for Marshawn Barnes

# Case Information

C2500598 | The State of Tennessee Vs MARSHAWN BARNES

Case Number
C2500598
File Date
02/04/2025

Court
Division X
Case Type
Indicted General Sessions HTS

Judicial Officer
Mitchell, Jennifer
Case Status
Active or Open

# Party

Defendant
BARNES, MARSHAWN D
DOB
02/02/2002
Race
Black

Address
4304 Egyptian CV
Memphis TN 38128

Active Attorneys ▾
Lead Attorney
BALESTRINI, JASON SILVIO
Court Appointed

# Charge

Charges
BARNES, MARSHAWN D

| | Description | Statute | Level | Date |
|---|---|---|---|---|
| 1 | CRIM ATT AGGRAVATED BURGLARY | 39-13-1003 | Felony D | 08/14/2024 |

# Bond Settings

Setting Date

8/15/2024

Judge/Judicial Approved - PTS
$15,000.00
Any except

# Events and Hearings

02/04/2025 Indicted - Grand Jury

02/04/2025 Indicted Charges Case Created

02/07/2025 Jail Arraignment ▾

Judicial Officer
Mitchell, Jennifer

Hearing Time
9:00 AM

Result
Arraigned

02/07/2025 *Order Appointing Private Counsel - Defendant

02/07/2025 Consent Order Limiting Dissemination of Confidential Info

02/07/2025 *Uniform Affidavit of Indigency

02/07/2025 Finance Department - Waiver of Administrative Fee

03/19/2025 Report Date ▾

Judicial Officer
Mitchell, Jennifer

Hearing Time
9:00 AM

**Exhibit 9:**
**December 2024 Tennessee Jail Summary Report**
**(PDF of Webpage)**

# Tennessee Jail Summary Report

## December 2024

*Prepared By:*

*Tennessee Department of Correction*
*Decision Support: Research & Planning*

**JAIL SUMMARY as of December 31, 2024 - one day snapshot**

| FACILITY | TDOC Backup | Local Felons | Other Conv. Felons*** | Federal & Others | Conv. Misd. | Pre-trial Felony | Pre-trial Misd. | Total Jail Pop. | Total Beds** | Vacant Beds | Percent Capacity | % TDOC Felony | % Local Felons | % Conv. Misd. | % Pre-trial Felony | % Pre-trial Misd. | % Total Pre-trial Detain. | Cert.* | COMMENTS (Updated Quarterly) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anderson | 92 | 49 | 18 | 1 | 18 | 139 | 38 | 355 | 499 | 144 | 71.1% | 25.9% | 13.8% | 5.1% | 39.2% | 10.7% | 49.9% | C | Inspected 8/24/22 |
| Bedford | 60 | 1 | 13 | 42 | 69 | 14 | 83 | 282 | 399 | 117 | 70.7% | 21.3% | 0.4% | 24.5% | 5.0% | 29.4% | 34.4% | C | Inspected1/26/23; reinspected 3/7/2023 |
| Bedford Workhouse (closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Closed 1/16/20 |
| Benton | 18 | 1 | 4 | 0 | 12 | 21 | 9 | 65 | 140 | 75 | 46.4% | 27.7% | 1.5% | 18.5% | 32.3% | 13.8% | 46.2% | C | Inspected 1/17/2023; reinspected 3/17/2023 |
| Bledsoe | 72 | 0 | 1 | 0 | 5 | 14 | 2 | 94 | 152 | 58 | 61.8% | 76.6% | 0.0% | 5.3% | 14.9% | 2.1% | 17.0% | C | Inspected 3/10/2022; Male capacity unchanged 152 |
| Blount | 57 | 7 | 0 | 49 | 14 | 140 | 77 | 344 | 350 | 6 | 98.3% | 16.6% | 2.0% | 4.1% | 40.7% | 22.4% | 63.1% | C | Inspected 8/2/22; Re-inspection 9/30/22 |
| Bradley | 102 | 24 | 52 | 17 | 78 | 145 | 52 | 470 | 510 | 40 | 92.2% | 21.7% | 5.1% | 16.6% | 30.9% | 11.1% | 41.9% | C | Inspected 2/15/22 |
| Campbell | 80 | 14 | 13 | 0 | 20 | 0 | 116 | 243 | 322 | 79 | 75.5% | 32.9% | 5.8% | 8.2% | 0.0% | 47.7% | 47.7% | C | Inspected 7/20/22; Re-inspected 9/2/22 |
| Cannon | 2 | 2 | 0 | 0 | 12 | 9 | 18 | 43 | 46 | 3 | 93.5% | 4.7% | 4.7% | 27.9% | 20.9% | 41.9% | 62.8% | N | Inspected 3/31/22; Re-inspected 5/20/22 |
| Carroll | 4 | 0 | 0 | 19 | 4 | 27 | 68 | 122 | 170 | 48 | 71.8% | 3.3% | 0.0% | 3.3% | 22.1% | 55.7% | 77.9% | C | Inspected 1/30/2023; reinspection 3/31/2023 |
| Carter | 35 | 4 | 40 | 35 | 41 | 45 | 27 | 227 | 296 | 69 | 76.7% | 15.4% | 1.8% | 18.1% | 19.8% | 11.9% | 31.7% | C | Inspected 7/13/22; Re-inspected 9/9/22 |
| Cheatham | 8 | 1 | 0 | 0 | 19 | 40 | 17 | 85 | 116 | 31 | 73.3% | 9.4% | 1.2% | 22.4% | 47.1% | 20.0% | 67.1% | C | Inspected 5/19/22 |
| Chester | 18 | 2 | 0 | 0 | 10 | 20 | 12 | 62 | 81 | 19 | 76.5% | 29.0% | 3.2% | 16.1% | 32.3% | 19.4% | 51.6% | C | Inspected 5/17/22 |
| Claiborne | 35 | 18 | 0 | 0 | 15 | 51 | 31 | 150 | 210 | 60 | 71.4% | 23.3% | 12.0% | 10.0% | 34.0% | 20.7% | 54.7% | C | Inspected 7/27/22; Re-inspection 9/23/22 |
| Clay | 3 | 0 | 0 | 0 | 0 | 2 | 0 | 5 | 14 | 9 | 35.7% | 60.0% | 0.0% | 0.0% | 40.0% | 0.0% | 40.0% | C | Inspected 4/5/22; re-inspected 6/3/22 |
| Cocke Jail | 0 | 13 | 1 | 4 | 10 | 9 | 5 | 42 | 32 | -10 | 131.3% | 0.0% | 31.0% | 23.8% | 21.4% | 11.9% | 33.3% | N | Inspected 5/5/22; Re-inspected 7/1/22 |
| Cocke Annex | 0 | 6 | 3 | 6 | 11 | 43 | 18 | 87 | 88 | 1 | 98.9% | 0.0% | 6.9% | 12.6% | 49.4% | 20.7% | 70.1% | N | Inspected 5/5/22; Re-inspected 7/1/22 |
| Coffee Annex (not in use) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Annex has been temporarily closed on 10/9/18; Inspected 2/2/18 |
| Coffee | 69 | 14 | 0 | 0 | 53 | 60 | 162 | 358 | 400 | 42 | 89.5% | 19.3% | 3.9% | 14.8% | 16.8% | 45.3% | 62.0% | C | Inspected 3/9/22 |
| Crockett | 0 | 0 | 4 | 21 | 2 | 16 | 1 | 44 | 64 | 20 | 68.8% | 0.0% | 0.0% | 4.5% | 36.4% | 2.3% | 38.6% | C | Inspected 8/18/22; Re-inspection 10/17/22 |
| Cumberland | 27 | 6 | 0 | 1 | 34 | 43 | 15 | 126 | 212 | 86 | 59.4% | 21.4% | 4.8% | 27.0% | 34.1% | 11.9% | 46.0% | C | Inspected 4/24/19 |
| Davidson CJC (demolished) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | | 12/2016: Bldg. Demolished |
| Davidson DDC | 14 | 164 | 53 | 19 | 33 | 414 | 69 | 766 | 762 | -4 | 100.5% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | N? | opened 4/20/2020: inspected 4/28/22 |
| Davidson HDC (closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 6/11/19 |
| Davidson CDM | 11 | 153 | 81 | 34 | 80 | 391 | 61 | 811 | 904 | 93 | 89.7% | 1.4% | 18.9% | 9.9% | 48.2% | 7.5% | 55.7% | C | Inspected 4/27/22; was CDC; split by sex (male) was 768 |
| Davidson CDF | 1 | 42 | 17 | 4 | 23 | 128 | 39 | 254 | 454 | 200 | 55.9% | 0.1% | 5.2% | 2.8% | 15.8% | 4.8% | 20.6% | C | Inspected 4/27/22 was CDC; split by sex (female); was 508 |
| Davidson MCC | 15 | 90 | 41 | 29 | 16 | 302 | 17 | 510 | 508 | -2 | 100.4% | 2.9% | 17.6% | 3.1% | 59.2% | 3.3% | 62.5% | C | Inspected 4/28/22; capacity was 1368 |
| Davidson ORC (closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 6/11/19; April 2019: Facility Closed |
| Davidson CCA (MDF) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 3/12/19; Re-inspected 5/8/19 |
| Decatur | 20 | 8 | 0 | 0 | 5 | 12 | 4 | 49 | 60 | 11 | 81.7% | 40.8% | 16.3% | 10.2% | 24.5% | 8.2% | 32.7% | C | Inspected 6/10/22; Re-inspected 8/3/22; cap was 59 |
| DeKalb | 0 | 6 | 4 | 0 | 6 | 16 | 5 | 37 | 102 | 65 | 36.3% | 0.0% | 16.2% | 16.2% | 43.2% | 13.5% | 56.8% | C | Inspected 6/22/22; Re-inspected 8/15/22 |
| Dickson | 57 | 4 | 0 | 0 | 42 | 90 | 16 | 209 | 399 | 190 | 52.4% | 27.3% | 1.9% | 20.1% | 43.1% | 7.7% | 50.7% | C | Inspected 3/30/22; Re-inspecyed 5/2/22 |
| Dyer | 26 | 4 | 0 | 9 | 44 | 87 | 14 | 184 | 184 | 0 | 100.0% | 14.1% | 2.2% | 23.9% | 47.3% | 7.6% | 54.9% | C | Inspected 1/11/22 |
| Dyer Annex | 28 | 1 | 0 | 0 | 7 | 0 | 0 | 36 | 52 | 16 | 69.2% | 77.8% | 2.8% | 19.4% | 0.0% | 0.0% | 0.0% | C | Inspected 1/11/22 |
| Fayette | 25 | 0 | 0 | 4 | 4 | 12 | 21 | 66 | 189 | 123 | 34.9% | 37.9% | 0.0% | 6.1% | 18.2% | 31.8% | 50.0% | C | Inspected 5/31/22 |
| Fentress | 43 | 0 | 0 | 0 | 19 | 26 | 30 | 118 | 166 | 48 | 71.1% | 36.4% | 0.0% | 16.1% | 22.0% | 25.4% | 47.5% | C | Inspected 8/20/19; Re-inspected 10/15/19 |
| Franklin | 15 | 20 | 0 | 0 | 29 | 65 | 24 | 153 | 262 | 109 | 58.4% | 9.8% | 13.1% | 19.0% | 42.5% | 15.7% | 58.2% | C | Inspected 8/25/22 |
| Gibson | 39 | 1 | 0 | 0 | 11 | 88 | 106 | 245 | 329 | 84 | 74.5% | 15.9% | 0.4% | 4.5% | 35.9% | 43.3% | 79.2% | C | Inspected 6/22/22; cap was 332 |
| Giles | 17 | 26 | 0 | 0 | 8 | 58 | 12 | 121 | 126 | 5 | 96.0% | 14.0% | 21.5% | 6.6% | 47.9% | 9.9% | 57.9% | C | Inspected 5/4/22; Re-inspected 6/6/22 |
| Grainger Co. Det. Center | 6 | 12 | 8 | 9 | 16 | 18 | 6 | 75 | 100 | 25 | 75.0% | 8.0% | 16.0% | 21.3% | 24.0% | 8.0% | 32.0% | C | Inspected 3/1/2023; reinspection 4/28/2023 |
| Greene Det. Center | 8 | 0 | 0 | 4 | 23 | 71 | 34 | 140 | 167 | 27 | 83.8% | 5.7% | 0.0% | 16.4% | 50.7% | 24.3% | 75.0% | C | Inspected 8/26/22 |
| Greene WH | 17 | 4 | 0 | 0 | 67 | 47 | 49 | 184 | 272 | 88 | 67.6% | 9.2% | 2.2% | 36.4% | 25.5% | 26.6% | 52.2% | C | Inspected 8/26/22 |
| Grundy | 23 | 27 | 1 | 3 | 1 | 18 | 13 | 86 | 114 | 28 | 75.4% | 26.7% | 31.4% | 1.2% | 20.9% | 15.1% | 36.0% | C | Inspected 6/9/22; re-inspected 7/26/22 |
| Hamblen | 72 | 5 | 0 | 0 | 95 | 102 | 88 | 362 | 255 | -107 | 142.0% | 19.9% | 1.4% | 26.2% | 28.2% | 24.3% | 52.5% | N | Inspected 5/4/22; Re-inspected 6/23/22 |
| Hamilton Jail (closed 6/1/21) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Hamilton Downtown closed 6/1/2021 (TCI jail pop rpt) |
| Hamilton County Jail & Det. Ctr. | 1 | 0 | 85 | 81 | 24 | 540 | 308 | 1039 | 1084 | 45 | 95.8% | 0.1% | 0.0% | 2.3% | 52.0% | 29.6% | 81.6% | C | Inspected 3/8/22; Re-inspected 5/6/22 |
| Hancock | 0 | 69 | 0 | 1 | 17 | 12 | 12 | 111 | 90 | -21 | 123.3% | 0.0% | 6.6% | 1.6% | 1.2% | 1.2% | 2.3% | C | Re-inspected 8/3/22; re-inspection 9/30/22 |
| Hardeman | 18 | 9 | 2 | 0 | 4 | 45 | 11 | 89 | 179 | 87 | 49.7% | 20.2% | 10.1% | 4.5% | 50.6% | 12.4% | 62.9% | C | inspected 6/24/22 |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator/s designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction

| FACILITY | TDOC Backup | Local Felons | Other Conv. Felons*** | Federal & Others | Conv. Misd. | Pre-trial Felony | Pre-trial Misd. | Total Jail Pop. | Total Beds** | Vacant Beds | Percent Capacity | % TDOC Felons | % Local Felons | % Conv. Misd. | % Pre-trial Felony | % Pre-trial Misd. | % Total Pre-trial Detain. | Cert.* | COMMENTS (Updated Quarterly) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hardin | 55 | 10 | 0 | 3 | 13 | 39 | 18 | 138 | 156 | 18 | 88.5% | 39.9% | 7.2% | 9.4% | 28.3% | 13.0% | 41.3% | C | Inspected 5/10/22 |
| Hawkins | 57 | 14 | 0 | 0 | 54 | 102 | 41 | 268 | 266 | -2 | 100.8% | 21.3% | 5.2% | 20.1% | 38.1% | 15.3% | 53.4% | C | Inspected 8/25/22; respection 10/18/22 |
| Haywood | 0 | 14 | 0 | 2 | 15 | 48 | 21 | 100 | 194 | 94 | 51.5% | 0.0% | 14.0% | 15.0% | 48.0% | 21.0% | 69.0% | C | Inspected 1/12/2023 |
| Henderson | 56 | 9 | 13 | 1 | 43 | 59 | 14 | 195 | 216 | 21 | 90.3% | 28.7% | 4.6% | 22.1% | 30.3% | 7.2% | 37.4% | C | Inspected 8/16/22 |
| Henry | 52 | 0 | 0 | 0 | 10 | 60 | 17 | 139 | 204 | 65 | 68.1% | 37.4% | 0.0% | 7.2% | 43.2% | 12.2% | 55.4% | C | Inspected 1/9/2023; reinspected 3/10/2023 |
| Hickman | 11 | 0 | 0 | 1 | 6 | 89 | 22 | 129 | 110 | -19 | 117.3% | 8.5% | 0.0% | 4.7% | 69.0% | 17.1% | 86.0% | C | Inspected 4/19/22; Re-inspected 6/10/22 |
| Houston | 10 | 0 | 1 | 5 | 3 | 11 | 6 | 36 | 35 | -1 | 102.9% | 27.8% | 0.0% | 8.3% | 30.6% | 16.7% | 47.2% | C | Inspected 8/25/22; Re-inspection 10/21/22 |
| Humphreys | 23 | 7 | 0 | 0 | 14 | 42 | 25 | 111 | 68 | -43 | 163.2% | 20.7% | 6.3% | 12.6% | 37.8% | 22.5% | 60.4% | C | Inspected 5/18/22; Re-inspected 7/15/22 |
| Jackson | 38 | 2 | 3 | 14 | 11 | 17 | 26 | 111 | 112 | 1 | 99.1% | 34.2% | 1.8% | 9.9% | 15.3% | 23.4% | 38.7% | C | Inspected 6/29/2022; re-inspected 8/22/22 |
| Jefferson | 16 | 19 | 0 | 6 | 10 | 37 | 54 | 142 | 188 | 46 | 75.5% | 11.3% | 13.4% | 7.0% | 26.1% | 38.0% | 64.1% | C | Inspected 7/19/22; Re-inspected 9/9/22 |
| Jefferson WH (temp. closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 49 | 49 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 7/19/22 |
| Johnson | 29 | 8 | 3 | 0 | 2 | 35 | 21 | 98 | 114 | 16 | 86.0% | 29.6% | 8.2% | 2.0% | 35.7% | 21.4% | 57.1% | C | Inspected 6/21/22; Re-inspected 8/19/22 |
| Johnson City (F) (closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 88 | 88 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 8/9/22; re-inspected 10/7/22 |
| Knox - KCJ | 43 | 3 | 3 | 8 | 2 | 125 | 16 | 200 | 215 | 15 | 93.0% | 21.5% | 1.5% | 1.0% | 62.5% | 8.0% | 70.5% | C | Inspected 7/8/22; capacity was 210 |
| Knox - RDWDF | 211 | 33 | 11 | 55 | 9 | 666 | 187 | 1172 | 1036 | -136 | 113.1% | 18.0% | 2.8% | 0.8% | 56.8% | 16.0% | 72.8% | C | Inspected 7/7/22 |
| Knox - KCWRC | 32 | 10 | 0 | 0 | 2 | 49 | 17 | 110 | 120 | 10 | 91.7% | 29.1% | 9.1% | 1.8% | 44.5% | 15.5% | 60.0% | C | Inspected 7/7/22; re-inspected 7/22/22 |
| Lake | 4 | 0 | 0 | 0 | 4 | 13 | 10 | 31 | 40 | 9 | 77.5% | 12.9% | 0.0% | 12.9% | 41.9% | 32.3% | 74.2% | C | Inspected 6/14/22; Re-inspected 8/12/22 |
| Lauderdale | 11 | 17 | 0 | 0 | 4 | 0 | 55 | 87 | 144 | 57 | 60.4% | 12.6% | 19.5% | 4.6% | 0.0% | 63.2% | 63.2% | C | Inspected 1/26/2023 |
| Lawrence | 18 | 0 | 6 | 94 | 12 | 0 | 31 | 161 | 261 | 100 | 61.7% | 11.2% | 0.0% | 7.5% | 0.0% | 19.3% | 19.3% | C | Inspected 8/22/22 |
| Lewis | 1 | 0 | 41 | 3 | 1 | 30 | 13 | 89 | 47 | -42 | 189.4% | 1.1% | 0.0% | 1.1% | 33.7% | 14.6% | 48.3% | C | Inspected 5/6/22; Re-inspected 6/6/22 |
| Lincoln | 24 | 13 | 8 | 0 | 23 | 43 | 16 | 127 | 276 | 149 | 46.0% | 18.9% | 10.2% | 18.1% | 33.9% | 12.6% | 46.5% | C | Inspected 7/6/22; Re-inspected 9/6/22 |
| Loudon | 5 | 0 | 8 | 0 | 11 | 74 | 28 | 126 | 271 | 145 | 46.5% | 4.0% | 0.0% | 8.7% | 58.7% | 22.2% | 81.0% | C | Inspected 5/17/22; Re-inspected 7/11/22;dist est oct |
| Macon | 47 | 0 | 0 | 0 | 30 | 41 | 57 | 175 | 125 | -50 | 140.0% | 26.9% | 0.0% | 17.1% | 23.4% | 32.6% | 56.0% | C | Inspected 2/27/19; Re-inspected 4/29/19 |
| Madison Annex (closed 10/22) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 64 | 64 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 3/2/22 |
| Madison CJC | 145 | 21 | 0 | 5 | 43 | 245 | 197 | 656 | 304 | -352 | 215.8% | 22.1% | 3.2% | 6.6% | 37.3% | 30.0% | 67.4% | C | Inspected 3/2/22 |
| Madison PF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 80 | 80 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 3/2/22; cap was 86 |
| Marion | 1 | 13 | 0 | 0 | 10 | 56 | 27 | 107 | 118 | 11 | 90.7% | 0.9% | 12.1% | 9.3% | 52.3% | 25.2% | 77.6% | C | Inspected 6/28/22; Re-inspected 8/23/22 |
| Marshall | 28 | 3 | 0 | 0 | 31 | 25 | 9 | 96 | 283 | 187 | 33.9% | 29.2% | 3.1% | 32.3% | 26.0% | 9.4% | 35.4% | C | Inspected 6/10/22; Re-inspected 8/12/22 |
| Maury | 35 | 33 | 0 | 0 | 61 | 75 | 27 | 231 | 386 | 155 | 59.8% | 15.2% | 14.3% | 26.4% | 32.5% | 11.7% | 44.2% | C | Inspected 5/5/22; cap was 458 |
| McMinn | 34 | 0 | 13 | 0 | 76 | 113 | 38 | 274 | 348 | 74 | 78.7% | 12.4% | 0.0% | 27.7% | 41.2% | 13.9% | 55.1% | C | Inspected 3/2/2023 reinspection 5/1/2023 |
| McNairy | 23 | 0 | 0 | 1 | 10 | 23 | 29 | 86 | 94 | 8 | 91.5% | 26.7% | 0.0% | 11.6% | 26.7% | 33.7% | 60.5% | C | Inspected 7/12/22 |
| Meigs | 5 | 12 | 0 | 0 | 7 | 19 | 17 | 60 | 56 | -4 | 107.1% | 8.3% | 20.0% | 11.7% | 31.7% | 28.3% | 60.0% | C | Inspected 5/19/22; Re-inspected 7/15/22 |
| Monroe | 96 | 7 | 3 | 35 | 27 | 60 | 40 | 268 | 364 | 96 | 73.6% | 35.8% | 2.6% | 10.1% | 22.4% | 14.9% | 37.3% | C | Inspected 7/26/22; Re-inspected 9/19/22; was 366 |
| Montgomery Jail | 47 | 7 | 0 | 5 | 44 | 277 | 33 | 413 | 736 | 323 | 56.1% | 11.4% | 1.7% | 10.7% | 67.1% | 8.0% | 75.1% | C | Inspected 5/17/22 |
| Montgomery Workhouse | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 144 | 144 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | C | Inspected 5/17/22 |
| Moore | 0 | 4 | 0 | 0 | 3 | 7 | 2 | 16 | 29 | 13 | 55.2% | 0.0% | 25.0% | 18.8% | 43.8% | 12.5% | 56.3% | C | Inspected 3/17/22 |
| Morgan | 22 | 6 | 0 | 3 | 9 | 21 | 24 | 85 | 46 | -39 | 184.8% | 25.9% | 7.1% | 10.6% | 24.7% | 28.2% | 52.9% | C | Inspected 9/6/19; Re-inspected 10/25/19 |
| Obion | 21 | 5 | 17 | 61 | 8 | 12 | 25 | 149 | 159 | 10 | 93.7% | 14.1% | 3.4% | 5.4% | 8.1% | 16.8% | 24.8% | C | Inspected 4/28/22 |
| Overton | 45 | 3 | 0 | 0 | 20 | 13 | 21 | 102 | 143 | 41 | 71.3% | 44.1% | 2.9% | 19.6% | 12.7% | 20.6% | 33.3% | C | Inspected 3/2/2023 reinspection 5/1/2023 |
| Perry | 19 | 0 | 1 | 0 | 4 | 19 | 3 | 46 | 59 | 13 | 78.0% | 41.3% | 0.0% | 8.7% | 41.3% | 6.5% | 47.8% | C | Inspected 7/27/22; Re-inspected 9/30/22 |
| Pickett (closed) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 6 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | N | Inspected 1/24/2023; reinspection 3/17/2023 |
| Polk | 82 | 0 | 0 | 0 | 2 | 34 | 15 | 133 | 174 | 41 | 76.4% | 61.7% | 0.0% | 1.5% | 25.6% | 11.3% | 36.8% | C | Inspected 2/23/2023; reinspection 4/24/2023 |
| Putnam | 99 | 20 | 11 | 1 | 84 | 2 | 4 | 221 | 252 | 31 | 87.7% | 44.8% | 9.0% | 38.0% | 0.9% | 1.8% | 2.7% | C | Inspected 8/24/22; Re-inspection 10/14/22 |
| Rhea | 117 | 8 | 0 | 3 | 18 | 97 | 34 | 277 | 342 | 65 | 81.0% | 42.2% | 2.9% | 6.5% | 35.0% | 12.3% | 47.3% | C | Inspected 6/14/22; Re-inspected 8/4/22 |
| Roane | 30 | 19 | 23 | 1 | 30 | 63 | 40 | 206 | 170 | -36 | 121.2% | 14.6% | 9.2% | 14.6% | 30.6% | 19.4% | 50.0% | C | Inspected 7/6/19; Re-inspected 8/16/19 |
| Robertson | 187 | 8 | 0 | 0 | 69 | 109 | 49 | 422 | 584 | 162 | 72.3% | 44.3% | 1.9% | 16.4% | 25.8% | 11.6% | 37.4% | C | Inspected 8/23/22; re-inspection 10/21/22 |
| Rutherford | 223 | 29 | 0 | 0 | 52 | 609 | 49 | 962 | 960 | -2 | 100.2% | 23.2% | 3.0% | 5.4% | 63.3% | 5.1% | 68.4% | C | Inspected 6/1/22 |
| Rutherford Work Center | 0 | 60 | 0 | 0 | 36 | 0 | 0 | 96 | 312 | 216 | 30.8% | 0.0% | 62.5% | 37.5% | 0.0% | 0.0% | 0.0% | C | Inspected 7/8/22; Capacity decreased 320 to 312 |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator's designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction

**JAIL SUMMARY as of December 31, 2024 - one day snapshot**

| FACILITY | TDOC Backup | Local Felons | Other Conv. Felons*** | Federal & Others | Conv. Misd. | Pre-trial Felony | Pre-trial Misd. | Total Jail Pop. | Total Beds** | Vacant Beds | Percent Capacity | % TDOC Felons | % Local Felons | % Conv. Misd. | % Pre-trial Felony | % Pre-trial Misd. | % Total Pre-trial Detain. | Cert.* | COMMENTS (Updated Quarterly) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Scott | 42 | 0 | 0 | 0 | 12 | 42 | 38 | 134 | 140 | 6 | 95.7% | 31.3% | 0.0% | 9.0% | 31.3% | 28.4% | 59.7% | C | Inspected 7/12/22 |
| Sequatchie | 34 | 11 | 0 | 0 | 3 | 32 | 14 | 94 | 96 | 2 | 97.9% | 36.2% | 11.7% | 3.2% | 34.0% | 14.9% | 48.9% | C | Inspected 3/29/22 |
| Sevier Jail | 17 | 8 | 0 | 0 | 11 | 70 | 32 | 138 | 272 | 134 | 50.7% | 12.3% | 5.8% | 8.0% | 50.7% | 23.2% | 73.9% | C | Inspected 8/26/19; Re-inspected 10/23/19 |
| Sevier Annex | 28 | 15 | 0 | 0 | 19 | 77 | 39 | 178 | 356 | 178 | 50.0% | 15.7% | 8.4% | 10.7% | 43.3% | 21.9% | 65.2% | C | Inspected 8/26/19 |
| Shelby CJC | 94 | 11 | 408 | 66 | 6 | 2370 | 154 | 3109 | 2471 | -638 | 125.8% | 3.0% | 0.4% | 0.2% | 76.2% | 5.0% | 81.2% | C | Inspected 2/17/22; Re-inspected 4/26/22; was 3111 |
| Shelby SCCC | 78 | 773 | 0 | 280 | 59 | 0 | 0 | 1190 | 2665 | 1475 | 44.7% | 6.6% | 65.0% | 5.0% | 0.0% | 0.0% | 0.0% | C | Inspected 3/16/22; re-inspected 5/4/22 |
| Smith | 43 | 0 | 0 | 0 | 20 | 29 | 23 | 115 | 128 | 13 | 89.8% | 37.4% | 0.0% | 17.4% | 25.2% | 20.0% | 45.2% | C | Inspected 2/4/22 |
| Stewart | 31 | 0 | 0 | 0 | 19 | 8 | 2 | 60 | 132 | 72 | 45.5% | 51.7% | 0.0% | 31.7% | 13.3% | 3.3% | 16.7% | C | Inspected 1/4/22 |
| Sullivan | 109 | 25 | 0 | 0 | 59 | 313 | 56 | 562 | 379 | -183 | 148.3% | 19.4% | 4.4% | 10.5% | 55.7% | 10.0% | 65.7% | C | Inspected 8/30/22 |
| Sullivan Extension | 38 | 8 | 0 | 0 | 30 | 149 | 47 | 272 | 240 | -32 | 113.3% | 14.0% | 2.9% | 11.0% | 54.8% | 17.3% | 72.1% | C | Re-inspected 8/30/22; female beds changed 16 to 0 |
| Kingsport City | 0 | 0 | 0 | 0 | 0 | 2 | 6 | 8 | 20 | 12 | 40.0% | 0.0% | 0.0% | 0.0% | 25.0% | 75.0% | 100.0% | C | Inspected 4/26/22 |
| Sumner | 110 | 55 | 0 | 0 | 127 | 393 | 86 | 771 | 956 | 185 | 80.6% | 14.3% | 7.1% | 16.5% | 51.0% | 11.2% | 62.1% | C | Inspected 1/22/19 |
| Tipton | 18 | 13 | 0 | 0 | 46 | 28 | 143 | 248 | 211 | -37 | 117.5% | 7.3% | 5.2% | 18.5% | 11.3% | 57.7% | 69.0% | C | Inspected 1/24/2023 |
| Trousdale | 11 | 4 | 0 | 0 | 4 | 11 | 6 | 36 | 44 | 8 | 81.8% | 30.6% | 11.1% | 11.1% | 30.6% | 16.7% | 47.2% | C | Inspected 6/23/22; re-inspected 8/19/22 |
| Unicoi Jail (M) | 20 | 2 | 0 | 0 | 4 | 45 | 13 | 84 | 62 | -22 | 135.5% | 23.8% | 2.4% | 4.8% | 53.6% | 15.5% | 69.0% | C | Inspected 6/22/22; Re-inspected 8/12/22 |
| Unicoi Annex (F) | 8 | 0 | 0 | 0 | 0 | 10 | 8 | 26 | 38 | 12 | 68.4% | 30.8% | 0.0% | 0.0% | 38.5% | 30.8% | 69.2% | C | Inspected 6/22/22; Re-inspected 8/12/22 |
| Union | 6 | 0 | 1 | 4 | 7 | 10 | 39 | 67 | 76 | 9 | 88.2% | 9.0% | 0.0% | 10.4% | 14.9% | 58.2% | 73.1% | C | Inspected 8/16/22; Re-inspection 10/15/22 |
| Van Buren | 0 | 5 | 7 | 0 | 5 | 12 | 9 | 38 | 83 | 45 | 45.8% | 0.0% | 13.2% | 13.2% | 31.6% | 23.7% | 55.3% | N | Inspected 6/30/22 |
| Warren | 14 | 27 | 26 | 0 | 34 | 68 | 66 | 235 | 251 | 16 | 93.6% | 6.0% | 11.5% | 14.5% | 28.9% | 28.1% | 57.0% | C | Inspected 6/7/22; Re-inspected 7/18/22 |
| Washington Det. Center | 14 | 10 | 2 | 0 | 135 | 326 | 31 | 518 | 566 | 48 | 91.5% | 2.7% | 1.9% | 26.1% | 62.9% | 6.0% | 68.9% | C | Inspected 7/14/22 |
| Washington WH | 0 | 1 | 0 | 0 | 28 | 13 | 0 | 42 | 54 | 12 | 77.8% | 0.0% | 2.4% | 66.7% | 31.0% | 0.0% | 31.0% | C | Inspected 7/14/22 |
| Wayne | 42 | 27 | 6 | 2 | 15 | 20 | 6 | 118 | 128 | 10 | 92.2% | 35.6% | 22.9% | 12.7% | 16.9% | 5.1% | 22.0% | C | Inspected 4/28/22; re-inspected 5/27/22 |
| Weakley | 27 | 7 | 0 | 0 | 7 | 10 | 37 | 88 | 129 | 41 | 68.2% | 30.7% | 8.0% | 8.0% | 11.4% | 42.0% | 53.4% | C | Inspected 2/14/2023 |
| White | 25 | 13 | 7 | 0 | 25 | 28 | 11 | 109 | 165 | 56 | 66.1% | 22.9% | 11.9% | 22.9% | 25.7% | 10.1% | 35.8% | C | Inspected 4/7/22 |
| Williamson | 24 | 8 | 2 | 1 | 52 | 146 | 48 | 281 | 452 | 171 | 62.2% | 8.5% | 2.8% | 18.5% | 52.0% | 17.1% | 69.0% | C | Inspected 5/31/22; Re-inspected8/2/22 |
| Wilson | 95 | 33 | 16 | 5 | 76 | 178 | 82 | 485 | 458 | -27 | 105.9% | 19.6% | 6.8% | 15.7% | 36.7% | 16.9% | 53.6% | C | Inspected 2/5/22; re-inspected 4/1/22 |
| TOTAL | 4068 | 2280 | 1081 | 1057 | 2727 | 11229 | 4064 | 26506 | 31979 | 5470 | 82.9% | 15.3% | 8.6% | 10.3% | 42.4% | 15.3% | 57.7% | | |

*The certification column reflects current T.C.I. capacity certification status (C=certified; N=not certified)
**As reflected on the T.C.I. Inspection List for the most recent calendar quarter.
***Includes felons whose status is yet to be determined.
****1,675 beds are reserved for special purposes--e.g., isolation, medical, segregation, etc. and must be removed from the "VACANT BEDS" count.

| | |
|---|---|
| 5470 | VACANT BEDS |
| **** 1675 | SPECIAL PURPOSE BEDS |
| 3795 | AVAILABLE BEDS |

| | |
|---|---|
| 23 | Facilities operating over capacity (FACILITIES WITH VACANT BED COUNT LESS THAN 0) |
| 30620 | Total offenders housed at capacity level (VACANT BED COUNT 0 OR MORE) |
| 778 | Total offenders housed over capacity level (VACANT BED COUNT LESS THAN 0) |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator's designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction

**Statewide Summary as of December 31, 2024**

| Report Date | TDOC Backup | Local Felons | Other Convicted Felons | Federal & Others | Convicted Misdem. | Pre-trial Felons | Pre-trial Misdem. | Total Pre-trial Detainees | Total Jail | % TDOC Backup | % Local Felons | % Convicted Misdem. | % Pre-trial Felons | % Pre-trial Misdem. | % Total Pre-trial Detainees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/31/2020 | 4701 | 2332 | 713 | 1015 | 2625 | 8657 | 3216 | 11873 | 23259 | 20.2% | 10.0% | 11.3% | 37.2% | 13.8% | 51.0% |
| 8/31/2020 | 4547 | 2257 | 731 | 921 | 2723 | 9162 | 3584 | 12746 | 23925 | 19.0% | 9.4% | 11.4% | 38.3% | 15.0% | 53.3% |
| 9/30/2020 | 4442 | 2246 | 747 | 950 | 3058 | 9464 | 3747 | 13211 | 24654 | 18.0% | 9.1% | 12.4% | 38.4% | 15.2% | 53.6% |
| 10/31/2020 | 3966 | 2294 | 766 | 955 | 3185 | 9503 | 3930 | 13433 | 24599 | 16.1% | 9.3% | 12.9% | 38.6% | 16.0% | 54.6% |
| 11/30/2020 | 3621 | 2230 | 766 | 963 | 3185 | 9503 | 3880 | 13383 | 24140 | 15.0% | 9.2% | 13.2% | 39.4% | 16.1% | 55.4% |
| 12/31/2020 | 3572 | 2096 | 767 | 922 | 2537 | 9303 | 3359 | 12662 | 22556 | 15.8% | 9.3% | 11.2% | 41.2% | 14.9% | 56.1% |
| 1/31/2021 | 3563 | 2159 | 726 | 840 | 2443 | 9377 | 3177 | 12554 | 22285 | 16.0% | 9.7% | 11.0% | 42.1% | 14.3% | 56.3% |
| 2/28/2021 | 3523 | 2172 | 754 | 860 | 2417 | 9242 | 3326 | 12568 | 22294 | 15.8% | 9.7% | 10.8% | 41.5% | 14.9% | 56.4% |
| 3/31/2021 | 3307 | 2190 | 703 | 899 | 2497 | 8806 | 3195 | 12001 | 21597 | 15.3% | 10.1% | 11.6% | 40.8% | 14.8% | 55.6% |
| 4/30/2021 | 2419 | 2143 | 662 | 873 | 2703 | 9235 | 3207 | 12442 | 21332 | 11.3% | 10.0% | 13.1% | 43.3% | 15.0% | 58.3% |
| 5/31/2021 | 2454 | 2704 | 662 | 937 | 2966 | 9495 | 3825 | 12310 | 21332 | 11.3% | 10.0% | 13.1% | 43.3% | 15.0% | 58.3% |
| 6/30/2021 | 2371 | 2132 | 735 | 921 | 3300 | 9754 | 3794 | 13548 | 23007 | 10.3% | 9.3% | 14.3% | 42.4% | 16.5% | 58.9% |
| 7/31/2021 | 2495 | 2263 | 707 | 921 | 3496 | 9818 | 4080 | 13898 | 23780 | 10.5% | 9.5% | 14.7% | 41.3% | 17.2% | 58.4% |
| 8/31/2021 | 2678 | 2114 | 748 | 891 | 3359 | 9909 | 4169 | 14078 | 23868 | 11.2% | 8.9% | 14.1% | 41.5% | 17.5% | 59.0% |
| 9/30/2021 | 2659 | 2275 | 779 | 818 | 3161 | 9864 | 3680 | 13744 | 23436 | 11.3% | 9.7% | 13.5% | 42.1% | 16.6% | 58.6% |
| 10/31/2021 | 2569 | 2179 | 771 | 816 | 3056 | 10210 | 4070 | 14280 | 23671 | 10.9% | 9.2% | 12.9% | 43.1% | 17.2% | 60.3% |
| 11/30/2021 | 2627 | 2277 | 742 | 807 | 3093 | 9641 | 3966 | 13607 | 23453 | 11.2% | 9.7% | 13.2% | 42.4% | 16.9% | 59.3% |
| 12/31/2021 | 2546 | 2301 | 755 | 806 | 2761 | 9930 | 3899 | 13829 | 22998 | 11.1% | 10.0% | 12.0% | 43.2% | 17.0% | 60.1% |
| 1/31/2022 | 2822 | 2234 | 1186 | 826 | 2961 | 10175 | 4060 | 14235 | 24264 | 11.6% | 9.2% | 12.2% | 41.9% | 16.7% | 58.7% |
| 2/28/2022 | 2902 | 2312 | 842 | 822 | 3086 | 10346 | 4167 | 14513 | 24477 | 11.9% | 9.4% | 12.6% | 42.3% | 17.0% | 59.3% |
| 3/31/2022 | 3091 | 2312 | 866 | 846 | 3204 | 10158 | 4080 | 14238 | 24557 | 12.6% | 9.4% | 13.0% | 41.4% | 16.6% | 58.0% |
| 4/30/2022 | 3191 | 2320 | 856 | 1215 | 3571 | 10231 | 4195 | 14426 | 25579 | 12.5% | 9.1% | 14.0% | 40.0% | 16.4% | 56.4% |
| 5/31/2022 | 3239 | 2317 | 892 | 843 | 3304 | 10274 | 4440 | 14714 | 25309 | 12.8% | 9.2% | 13.1% | 40.6% | 17.5% | 58.1% |
| 6/30/2022 | 3280 | 2264 | 950 | 812 | 3417 | 10536 | 4119 | 14655 | 25378 | 12.9% | 8.9% | 13.5% | 41.5% | 16.2% | 57.7% |
| 7/1/2022 | 3231 | 2308 | 951 | 759 | 3321 | 10736 | 4340 | 15076 | 25646 | 12.6% | 9.0% | 12.9% | 41.9% | 16.9% | 58.8% |
| 8/31/2022 | 3184 | 2245 | 1024 | 820 | 3390 | 10888 | 4222 | 15110 | 25773 | 12.4% | 8.7% | 13.2% | 42.2% | 16.4% | 58.6% |
| 9/30/2022 | 3157 | 2438 | 974 | 797 | 3453 | 10453 | 4139 | 14592 | 25411 | 12.4% | 9.6% | 13.6% | 41.1% | 16.3% | 57.4% |
| 10/31/2022 | 3159 | 2285 | 966 | 813 | 3151 | 10985 | 4311 | 14976 | 25350 | 12.5% | 9.0% | 12.4% | 42.1% | 17.0% | 59.1% |
| 11/30/2022 | 3200 | 2267 | 974 | 841 | 3089 | 10353 | 4019 | 14372 | 24743 | 12.9% | 9.2% | 12.5% | 41.8% | 16.2% | 58.1% |
| 12/31/2022 | 3315 | 2178 | 894 | 856 | 2777 | 10449 | 3825 | 14274 | 24264 | 13.6% | 9.0% | 11.4% | 43.0% | 15.7% | 58.8% |
| 1/31/2023 | 3314 | 2189 | 959 | 1300 | 3089 | 10340 | 3852 | 14192 | 25043 | 13.2% | 8.7% | 12.3% | 41.3% | 15.4% | 56.7% |
| 2/28/2023 | 3555 | 2219 | 976 | 1283 | 3033 | 10143 | 4152 | 14295 | 25361 | 14.0% | 8.7% | 12.0% | 40.0% | 16.4% | 56.4% |
| 3/31/2023 | 3597 | 2268 | 967 | 1279 | 3305 | 10118 | 3806 | 13924 | 25340 | 14.2% | 9.0% | 13.0% | 39.9% | 15.0% | 54.9% |
| 4/30/2023 | 3588 | 2253 | 956 | 1338 | 3120 | 10301 | 4009 | 14310 | 25565 | 14.0% | 8.8% | 12.2% | 40.3% | 15.7% | 56.0% |
| 5/31/2023 | 3539 | 2289 | 893 | 1354 | 3168 | 10280 | 4188 | 14468 | 25712 | 13.8% | 8.9% | 12.3% | 40.0% | 16.3% | 56.3% |
| 6/30/2023 | 3532 | 2199 | 871 | 1228 | 3094 | 10581 | 4191 | 14772 | 25696 | 13.7% | 8.6% | 12.0% | 41.2% | 16.3% | 57.5% |
| 7/31/2023 | 3565 | 2175 | 929 | 1230 | 3154 | 10635 | 4496 | 15131 | 26184 | 13.6% | 8.3% | 12.0% | 40.6% | 17.2% | 57.8% |
| 8/31/2023 | 3875 | 2214 | 989 | 1225 | 3300 | 10768 | 4314 | 15082 | 26685 | 14.4% | 8.3% | 12.4% | 40.4% | 16.2% | 56.6% |
| 9/30/2023 | 3764 | 2263 | 986 | 1193 | 3356 | 10550 | 4312 | 14862 | 26424 | 14.2% | 8.6% | 12.7% | 39.9% | 16.3% | 56.2% |
| 10/31/2023 | 3781 | 2170 | 1034 | 1234 | 3244 | 10745 | 4390 | 15135 | 26598 | 14.2% | 8.2% | 12.2% | 40.4% | 16.5% | 56.9% |
| 11/30/2023 | 3896 | 2159 | 1042 | 1219 | 3082 | 10587 | 4165 | 14752 | 26150 | 14.9% | 8.3% | 11.8% | 40.5% | 15.9% | 56.4% |
| 12/31/2023 | 4035 | 2004 | 948 | 1173 | 2741 | 10582 | 4142 | 14724 | 25941 | 15.5% | 7.8% | 10.7% | 41.3% | 16.2% | 57.5% |
| 1/31/2024 | 4122 | 1974 | 957 | 1240 | 2924 | 10683 | 4041 | 14724 | 25941 | 15.9% | 7.6% | 11.3% | 41.2% | 15.6% | 56.8% |
| 2/29/2024 | 3893 | 2070 | 960 | 1362 | 2979 | 10606 | 4182 | 14788 | 26052 | 14.9% | 7.9% | 11.4% | 40.7% | 16.1% | 56.8% |
| 3/31/2024 | 4001 | 2030 | 978 | 1236 | 2995 | 10680 | 4457 | 15137 | 26377 | 15.2% | 7.7% | 11.4% | 40.5% | 16.9% | 57.4% |
| 4/30/2024 | 3912 | 2278 | 1014 | 1230 | 3239 | 10582 | 4221 | 14803 | 26476 | 14.8% | 8.6% | 12.2% | 40.0% | 15.9% | 55.9% |
| 5/31/2024 | 3993 | 2170 | 1211 | 1178 | 3354 | 10811 | 4191 | 15002 | 26908 | 14.8% | 8.1% | 12.5% | 40.2% | 15.6% | 55.8% |
| 6/30/2024 | 4051 | 2201 | 1169 | 1176 | 3387 | 11116 | 4348 | 15464 | 27448 | 14.8% | 8.0% | 12.3% | 40.5% | 15.8% | 56.3% |
| 7/31/2024 | 3987 | 2238 | 1197 | 1109 | 3368 | 11115 | 4417 | 15532 | 27431 | 14.5% | 8.2% | 12.3% | 40.5% | 16.1% | 56.6% |
| 8/31/2024 | 4188 | 2332 | 1142 | 1043 | 3491 | 11245 | 4561 | 15806 | 28002 | 15.0% | 8.3% | 12.5% | 40.2% | 16.3% | 56.4% |
| 9/30/2024 | 4333 | 2340 | 1154 | 1049 | 3191 | 11465 | 4623 | 16088 | 28155 | 15.4% | 8.3% | 11.3% | 40.7% | 16.4% | 57.1% |
| 10/31/2024 | 4266 | 2273 | 1171 | 1016 | 3109 | 11295 | 4315 | 15610 | 27445 | 15.5% | 8.3% | 11.3% | 41.2% | 15.7% | 56.9% |
| 11/30/2024 | 4260 | 2258 | 1064 | 1008 | 3102 | 10753 | 4129 | 14882 | 26574 | 16.0% | 8.5% | 11.7% | 40.5% | 15.5% | 56.0% |
| 12/31/2024 | 4068 | 2280 | 1081 | 1057 | 2727 | 11229 | 4064 | 15293 | 26506 | 15.3% | 8.6% | 10.3% | 42.4% | 15.3% | 57.7% |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator's designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction.

**CALENDAR YEAR AVERAGES**

| Report Date | TDOC Backup | Local Felons | Other Convicted Felons | Federal & Others | Convicted Misdem. | Pre-trial Felons | Pre-trial Misdem. | Total Pre-trial Detainees | Total Jail | % TDOC Backup | % Local Felons | % Convicted Misdem. | % Pre-trial Felons | % Pre-trial Misdem. | % Total Pre-trial Detainees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CY 96 AVG | 2014 | 3325 | 1039 | 393 | 4117 | 3486 | 1448 | 4934 | 15822 | 12.7% | 21.0% | 26.0% | 22.0% | 9.2% | 31.2% |
| CY 97 AVG | 1612 | 3537 | 996 | 633 | 4633 | 3727 | 1635 | 5362 | 16774 | 9.6% | 21.1% | 27.6% | 22.2% | 9.7% | 32.0% |
| CY 98 AVG | 1850 | 3605 | 1136 | 597 | 4762 | 4228 | 1778 | 6006 | 17956 | 10.3% | 20.1% | 26.5% | 23.5% | 9.9% | 33.4% |
| CY 99 AVG | 1961 | 3870 | 1113 | 691 | 4933 | 4371 | 1766 | 6136 | 18704 | 10.5% | 20.7% | 26.4% | 23.4% | 9.4% | 32.8% |
| CY 00 AVG | 1729 | 3784 | 741 | 749 | 4636 | 5119 | 1839 | 6958 | 18577 | 9.3% | 20.3% | 25.0% | 27.6% | 9.9% | 37.5% |
| CY 01 AVG | 1851 | 3925 | 520 | 723 | 4830 | 5348 | 1979 | 7327 | 19389 | 9.5% | 20.2% | 24.9% | 27.6% | 10.2% | 37.8% |
| CY 02 AVG | 2449 | 4194 | 547 | 840 | 4927 | 5341 | 2289 | 7630 | 20587 | 11.9% | 20.4% | 23.9% | 25.9% | 11.1% | 37.1% |
| CY 03 AVG | 2009 | 4104 | 456 | 796 | 4719 | 6072 | 2269 | 8341 | 20425 | 9.8% | 20.1% | 23.1% | 29.7% | 11.1% | 40.8% |
| CY 04 AVG | 2108 | 4330 | 450 | 754 | 4926 | 6569 | 2594 | 9163 | 21730 | 9.7% | 19.9% | 22.7% | 30.2% | 11.9% | 42.2% |
| CY 05 AVG | 2296 | 4534 | 507 | 817 | 5396 | 7047 | 2953 | 10000 | 23549 | 9.7% | 19.3% | 22.9% | 29.9% | 12.5% | 42.5% |
| CY 06 AVG | 1815 | 4325 | 577 | 815 | 5253 | 7565 | 3177 | 10742 | 23527 | 7.7% | 18.4% | 22.3% | 32.2% | 13.5% | 45.7% |
| CY 07 AVG | 2006 | 5098 | 833 | 876 | 5274 | 7719 | 3343 | 11062 | 25152 | 8.0% | 20.3% | 21.0% | 30.7% | 13.3% | 44.0% |
| CY 08 AVG | 2244 | 5438 | 648 | 1004 | 5104 | 7932 | 3382 | 11314 | 25752 | 8.7% | 21.1% | 19.8% | 30.8% | 13.1% | 43.9% |
| CY 09 AVG | 2402 | 5359 | 711 | 962 | 5254 | 6125 | 3575 | 11700 | 26388 | 9.1% | 20.3% | 19.9% | 30.8% | 13.5% | 44.4% |
| CY 10 AVG | 2506 | 4622 | 629 | 959 | 5128 | 8446 | 3447 | 11893 | 25937 | 9.7% | 17.8% | 19.8% | 32.6% | 13.3% | 45.9% |
| CY 11 AVG | 3706 | 4518 | 798 | 960 | 5184 | 8590 | 3928 | 12518 | 27666 | 13.4% | 16.3% | 18.7% | 31.0% | 14.2% | 45.2% |
| CY 12 AVG | 4824 | 4634 | 755 | 886 | 4985 | 8911 | 3780 | 12691 | 28774 | 16.8% | 16.1% | 17.3% | 31.0% | 13.1% | 44.1% |
| CY 13 AVG | 4942 | 4591 | 669 | 845 | 5107 | 8781 | 3707 | 12488 | 28013 | 17.7% | 16.4% | 18.2% | 31.3% | 13.2% | 44.6% |
| CY 14 AVG | 4462 | 4160 | 578 | 805 | 4738 | 8652 | 3788 | 12441 | 27184 | 16.4% | 15.3% | 17.4% | 31.8% | 13.9% | 45.8% |
| CY 15 AVG | 4946 | 3890 | 612 | 882 | 4501 | 8990 | 3820 | 12810 | 27942 | 17.7% | 13.9% | 16.1% | 32.2% | 13.7% | 45.9% |
| CY 16 AVG | 4648 | 3728 | 619 | 852 | 4613 | 9737 | 4380 | 14117 | 28576 | 16.3% | 13.0% | 16.1% | 34.1% | 15.3% | 49.4% |
| CY 17 AVG | 4605 | 3428 | 766 | 820 | 5040 | 9877 | 4787 | 14664 | 29322 | 15.7% | 11.7% | 17.2% | 33.7% | 16.3% | 50.0% |
| CY 18 AVG | 4759 | 3380 | 835 | 957 | 5042 | 10567 | 5285 | 15852 | 30825 | 15.4% | 11.0% | 16.4% | 34.3% | 17.1% | 51.4% |
| CY 19 AVG | 5298 | 3378 | 822 | 1529 | 4956 | 10694 | 5010 | 15704 | 31198 | 17.0% | 10.8% | 15.9% | 34.3% | 16.1% | 50.4% |
| CY 20 AVG | 4370 | 2528 | 732 | 936 | 3086 | 9190 | 3465 | 12594 | 24246 | 18.0% | 10.4% | 12.7% | 37.9% | 14.3% | 52.0% |
| CY 21 AVG | 2768 | 2243 | 729 | 866 | 2945 | 9632 | 3716 | 13263 | 22766 | 12.2% | 9.9% | 12.9% | 42.3% | 16.3% | 58.3% |
| CY 22 AVG | 3146 | 2290 | 948 | 854 | 3227 | 10439 | 4168 | 14637 | 25065 | 12.6% | 9.1% | 12.8% | 41.7% | 16.0% | 58.5% |
| CY 23 AVG | 3670 | 2200 | 963 | 1255 | 3141 | 10469 | 4159 | 14637 | 26065 | 14.1% | 8.5% | 12.1% | 40.5% | 16.1% | 56.6% |
| CY 24 AVG | 4090 | 2204 | 1092 | 1142 | 3156 | 10965 | 4296 | 15261 | 26943 | 15.2% | 8.2% | 11.7% | 40.7% | 15.9% | 56.6% |

**FISCAL YEAR AVERAGES**

| Report Date | TDOC Backup | Local Felons | Other Convicted Felons | Federal & Others | Convicted Misdem. | Pre-trial Felons | Pre-trial Misdem. | Total Pre-trial Detainees | Total Jail | % TDOC Backup | % Local Felons | % Convicted Misdem. | % Pre-trial Felons | % Pre-trial Misdem. | % Total Pre-trial Detainees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fy 09-10 | 2281 | 5002 | 710 | 953 | 5181 | 8294 | 3485 | 11779 | 25907 | 8.8% | 19.3% | 20.0% | 32.0% | 13.5% | 45.5% |
| FY 10-11 | 2966 | 4542 | 886 | 978 | 5136 | 8413 | 3831 | 12245 | 26753 | 11.1% | 17.0% | 19.2% | 31.4% | 14.3% | 45.8% |
| FY 11-12 | 4456 | 4559 | 746 | 906 | 5134 | 8895 | 3753 | 12648 | 28448 | 15.7% | 16.0% | 18.0% | 31.3% | 13.2% | 44.5% |
| FY 12-13 | 4913 | 4560 | 733 | 853 | 4930 | 8809 | 3749 | 12558 | 28547 | 17.2% | 16.0% | 17.3% | 30.9% | 13.1% | 44.0% |
| FY 13-14 | 4546 | 4267 | 611 | 830 | 4826 | 8653 | 3754 | 12408 | 27491 | 16.5% | 15.5% | 17.6% | 31.5% | 13.7% | 45.1% |
| FY 14-15 | 4685 | 4017 | 584 | 827 | 4527 | 8696 | 3767 | 12462 | 27101 | 17.3% | 14.8% | 16.7% | 32.1% | 13.9% | 46.0% |
| FY 15-16 | 5015 | 3813 | 616 | 913 | 4548 | 9503 | 4134 | 13637 | 28547 | 17.6% | 13.4% | 15.9% | 33.3% | 14.5% | 47.8% |
| FY 16-17 | 4427 | 3564 | 664 | 798 | 4892 | 9713 | 4497 | 14210 | 28504 | 15.5% | 12.5% | 17.2% | 34.0% | 15.7% | 49.8% |
| FY 17-18 | 4745 | 3368 | 827 | 847 | 4976 | 10320 | 5076 | 15412 | 30174 | 15.7% | 11.2% | 16.5% | 34.2% | 16.8% | 51.1% |
| FY 18-19 | 5009 | 3398 | 842 | 1034 | 5087 | 10574 | 5220 | 15795 | 31164 | 16.1% | 10.9% | 16.3% | 33.9% | 16.7% | 50.7% |
| FY 19-20 | 4969 | 3096 | 754 | 973 | 4046 | 9970 | 4378 | 14346 | 27919 | 17.8% | 11.1% | 14.5% | 35.7% | 14.6% | 50.2% |
| FY 20-21 | 3148 | 2290 | 948 | 854 | 3227 | 9592 | 3520 | 12720 | 23858 | 13.6% | 9.9% | 13.9% | 41.4% | 15.2% | 56.5% |
| FY 21-22 | 2842 | 2264 | 741 | 869 | 3206 | 10116 | 4094 | 14210 | 24198 | 11.7% | 9.3% | 13.2% | 41.7% | 16.9% | 58.6% |
| FY 22-23 | 3364 | 2262 | 950 | 1056 | 3166 | 10442 | 4088 | 14530 | 25328 | 13.3% | 8.9% | 12.5% | 41.2% | 16.1% | 57.4% |
| FY 23-24 | 3894 | 2127 | 1050 | 1229 | 3124 | 10857 | 4285 | 15022 | 26486 | 14.7% | 8.1% | 11.8% | 40.2% | 16.2% | 56.3% |
| FY 24-25 | 4184 | 2287 | 1135 | 1047 | 3165 | 11184 | 4352 | 15535 | 27352 | 15.3% | 8.4% | 11.6% | 40.9% | 15.9% | 56.8% |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator's designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction.

# STATEWIDE TOTALS

JAIL SUMMARY REPORT
FOR MONTH ENDING 12/31/2024

| | Cocke | Davidson | Dyer | Greene | Jefferson | Knox | Madison | Montgomery | Rutherford | Sevier | Shelby | Sullivan | Unicoi | Washington | Total County | Total State |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL TDOC INMATES | 0 | 26 | 54 | 25 | 16 | 286 | 145 | 47 | 223 | 45 | 172 | 147 | 28 | 14 | 1228 | 4068 |
| TOTAL LOCALLY SENTENCED FELONS | 19 | 243 | 5 | 4 | 19 | 46 | 42 | 7 | 89 | 23 | 784 | 33 | 2 | 11 | 1327 | 2280 |
| TOTAL OTHER CONVICTED FELONS | 4 | 122 | 0 | 0 | 0 | 14 | 0 | 0 | 0 | 0 | 408 | 0 | 0 | 2 | 550 | 1081 |
| TOTAL OTHERS | 10 | 63 | 9 | 4 | 6 | 63 | 5 | 5 | 0 | 0 | 346 | 0 | 0 | 0 | 511 | 1057 |
| TOTAL CONVICTED MISDEMEANANTS | 21 | 96 | 51 | 90 | 10 | 13 | 43 | 44 | 88 | 30 | 65 | 89 | 4 | 163 | 807 | 2727 |
| TOTAL PRE-TRIAL DETAINEES | 75 | 771 | 101 | 216 | 91 | 1060 | 442 | 310 | 658 | | 2524 | 573 | 76 | 370 | 7267 | 15293 |
| TOTAL PRE-TRIAL FELONS | 52 | 693 | 87 | 118 | 37 | 840 | 245 | 277 | 609 | 147 | 2370 | 464 | 55 | 339 | 6333 | 11229 |
| TOTAL PRE-TRIAL MISDEMEANANTS | 23 | 78 | 14 | 98 | 54 | 220 | 197 | 33 | 49 | 71 | 154 | 109 | 21 | 31 | 1152 | 4064 |
| TOTAL JAIL POPULATION | 129 | 1321 | 220 | 324 | 142 | 1482 | 656 | 413 | 1058 | 316 | 4299 | 842 | 110 | 560 | 11872 | 26506 |
| TOTAL JAIL CAPACITY | 120 | 1412 | 236 | 439 | 237 | 1371 | 448 | 880 | 1272 | 628 | 5136 | 639 | 100 | 620 | 13538 | 31979 |
| PERCENT OF CAPACITY | 107.5% | 93.6% | 93.2% | 73.8% | 59.9% | 108.1% | 146.4% | 46.9% | 83.2% | 50.3% | 83.7% | 131.8% | 110.0% | 90.3% | 87.7% | 82.9% |
| % WHICH ARE TDOC FELONS | 0.0% | 2.0% | 24.5% | 7.7% | 11.3% | 19.3% | 22.1% | 11.4% | 21.1% | 14.2% | 4.0% | 17.5% | 25.5% | 2.5% | 10.3% | 15.3% |
| % WHICH ARE LOCALLY SENTENCED FELONS | 14.7% | 18.4% | 2.3% | 1.2% | 13.4% | 3.1% | 6.4% | 1.7% | 8.4% | 7.3% | 18.2% | 3.9% | 1.8% | 2.0% | 11.2% | 8.6% |
| % WHICH ARE CONVICTED MISDEMEANANTS | 16.3% | 7.3% | 23.2% | 27.8% | 7.0% | 0.9% | 6.6% | 10.7% | 8.3% | 9.5% | 1.5% | 10.6% | 3.6% | 29.1% | 6.8% | 10.3% |
| % WHICH ARE PRE-TRIAL DETAINEES | 58.1% | 58.4% | 45.9% | 66.7% | 64.1% | 71.5% | 67.4% | 75.1% | 62.2% | 0.0% | 58.7% | 68.1% | 69.1% | 66.1% | 61.2% | 57.7% |

The data used for this report is recorded as submitted by the Tennessee county sheriff and/or jail administrator's designee for each jail system and summarized by Decision Support: Research & Planning of the Tennessee Department of Correction.

# JAIL REPORT USER'S GUIDE

## INCARCERATED POPULATON

**TDOC BACKUP:**  Felon inmates sentenced to TDOC custody and held in local jails while awaiting transfer to a TDOC institution.

**LOCAL FELON:**  Convicted felons serving time in a local jail because of a contract with TDOC, and/or convicted felons serving a split confinement sentence.

**OTHER CONVICTED FELONS:**  Convicted felons awaiting sentencing or not yet ready for transfer to TDOC because of other pending charges.  Includes technical violators awaiting probable cause/revocation/recision hearing or adjudication of pending charges.

**CONVICTED MISDEMEANANTS:**  Inmates serving time because of a misdemeanor conviction.

**PRE-TRIAL FELONY DETAINEES:**  Inmates charged with a felony but not yet convicted.

**PRE-TRIAL MISDEMEANANTS:**   Inmates charged with a misdemeanor but not yet convicted.

**OTHERS:**   Inmates held in local facilities for federal crimes, city ordinances, etc.

**TOTAL POPULATION:**  The above categories added together should equal this number.

**T.C.I.  CAPACITY:**  The Tennessee Correction Institute (T.C.I.) monitors/inspects the county and city jails and workhouses for bed space capacity certification.

**CERTIFICATION:**   County and City Jails/Workhouses certified, by the T.C.I., that the inmate capacity does not exceed the original certified capacity of that facility.

# Exhibit 10: Order Granting Motion for Class Certification,
## *Torres v. Collins, et al.*, 2:20-cv-00026-DCLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

MICHELLE TORRES, et al.        )
                                      )
        Plaintiffs,        )         2:20-CV-00026-DCLC
                                        )
        vs.                 )
                                        )
W. DOUGLAS COLLINS, et al.    )
                                        )
        Defendants.     )

**ORDER**

Plaintiffs Michelle Torres, Amanda Cameron, Robbie Johnson-Loveday, and Bethany Edmond have filed a Renewed Motion for Class Certification under Federal Rule of Civil Procedure 23 [Doc. 87]. Defendants W. Douglas Collins, the General Sessions Judge for Hamblen County; Teresa West, the Clerk of Court; Katie West Moore, Nancy Phillips, Kathy Robertson, judicial commissioners; and Esco R. Jarnagin, the Sheriff for Hamblen County, all sued in their official capacities, have responded [Doc. 88]. Plaintiffs replied [Doc. 89]. Plaintiffs also filed a supplemental brief [Doc. 103] to which Defendants responded [Doc. 104]. This motion is now ripe for resolution.

## I.    **Factual and Procedural Background**

Plaintiffs are individuals who were arrested for criminal offenses in Hamblen County, Tennessee and brought to local jail for booking.  There, Plaintiffs claim, Defendants set a bond without any regard for Plaintiffs' individual ability to pay, their ties to the community, and other constitutionally relevant factors.  This, Plaintiffs claim, results in a practice of requiring monetary conditions of release in the "vast majority of cases."  [Doc. 1, ¶ 66]. Plaintiffs also claim that Defendants do not timely schedule them a hearing with counsel to address pretrial detention

1

issues.[1]  [Doc. 1, ¶ 64, 66]. So, they remain incarcerated because they do not have the financial resources to make bond.

Plaintiffs argue that this process of setting bail and the resulting pretrial detention of indigent defendants "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, as well as the Sixth Amendment right to counsel." [Doc. 2, pg. 1]. On November 30, 2020, the Court granted Plaintiffs' Motion for Preliminary Injunction [Doc. 5], enjoining Defendant Esco Jarnagin, Sheriff of Hamblen,

> from detaining any criminal defendant arrested on an arrest warrant who, after having bail set in an *ex parte* fashion by the Defendants authorized by law to set bail for cases pending in Hamblen County general sessions court, is being detained without having had an individualized hearing within a reasonable period of time consistent with the Due Process Clause requirements as outlined in that Order.

[Doc. 90, pgs. 29-30].

Plaintiffs originally brought a motion to certify a class of similarly situated individuals [Doc. 2], which the Court denied without prejudice. The Court found that Plaintiffs' proposed class definition "does not meaningfully define the class and administratively provides no objective criteria" and directed Plaintiffs to refile their motion with an amended proposed class definition that addressed the Court's concerns [Doc. 86, pg. 4]. Plaintiffs refiled their renewed Motion for Class Certification with an updated proposed class definition. Plaintiffs "incorporate by reference the arguments and exhibits in their briefs in support of their previous motion." [Doc. 87, ¶ 10]. Defendants oppose this motion, arguing that Plaintiffs' new proposed class still fails to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) [Doc. 88, pg. 2].

---

[1]    Once arrested, the defendant awaits his initial appearance before either a judicial commissioner or the general sessions judge. This proceeding occurs every Monday, Wednesday, and Friday [Doc. 1, ¶ 68]. At that time, the defendant may request court-appointed counsel [Doc. 1, ¶ 70].  After the initial appearance, a preliminary hearing is schedule within 14 days.

2

## II. Analysis

### A. Proposed Class Definition

The Court must first address Plaintiff's new proposed class definition. "Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). Plaintiffs propose to include the following individuals in the class:

> All people who are or will be arrested and charged with criminal offenses in Hamblen County General Sessions Court; and who (1) have or will have conditions of release set by Defendants that include an amount of monetary bail and/or otherwise require payment of a sum of money prior to release; (2) are or will be unable to afford to pay the amount of money required for their release; and (3) because of nonpayment, are or will be detained in the Hamblen County Jail on a bail order issued by the Hamblen County General Sessions Court.

[Doc. 103, pgs. 2-3].[2] As with the preliminary injunction, a key consideration for class membership is the failure to receive an individualized bond hearing within a reasonable time after their arrest. If an arrestee received an individualized hearing within a reasonable time, then the individual should not be included in the class. Plaintiffs' proposed definition does not address that concern.

The Court has "broad discretion to modify class definitions." *Powers v. Hamilton County Pub. Def. Commn.*, 501 F.3d 592, 619 (6th Cir. 2007) (citing as examples *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly

---

[2]     Plaintiffs proposed this amended definition in their supplemental brief, removing the exception of those individuals who "have not been bound over to Hamblen County Criminal Court." *See* [Doc. 87, pg. 3]. While Plaintiffs argue that as the Court's preliminary injunction enjoins Sheriff Jarnagin from detaining "any criminal defendant arrested on an arrest warrant," the preliminary injunction specifically excepts criminal defendants "who are detained as a result of an indictment." [Doc. 90, pg. 29].

3

modify class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.")). The Court is obligated "to make appropriate adjustments to the class definition as the litigation progress[es]." *Powers*, 501 F.3d at 619. The Court finds modification of the class definition is necessary in light of the preliminary injunction order. The proposed class definition shall be defined as follows:

> All individuals arrested on an arrest warrant out of Hamblen County General Sessions Court (save for capital offenses) (1) who are, or will be, in the custody of the Hamblen County Sheriff, Esco Jarnagin; (2) whose bail amount was set in an *ex parte* fashion by the Defendants authorized by law to set bail for cases pending in Hamblen County general sessions court; (3) who have not waived and have not received an individualized hearing within a reasonable period of time; and (4) who remain in custody for any amount of time.

This definition provides objective criteria for determining the members of the class.

**B.    Rule 23(a)**

Plaintiffs assert that class certification is appropriate as "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).  Federal Rule of Civil Procedure 23 provides the following:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If the Court finds that those prerequisites have been met, the plaintiff must then prove that the class would fall into one of the categories listed in Fed.R.Civ.P. 23(b). *See In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

4

"The Supreme Court has required district courts to conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." *In re American Medical Systems, Inc.*, 75 F.3d at 1078-79 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The party seeking class certification bears the burden of providing "adequate statement[s] of the basic facts to indicate that each requirement of the rule is fulfilled." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *In re American Medical Systems, Inc.*, 75 F.3d at 1079. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013); *see also* Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

### i.    Numerosity

"The first subdivision of Rule 23(a)(1) requires that the class be 'so numerous that joinder of all members is impracticable.'" *In re Medical Systems, Inc.*, 75 F.3d at 1079 (quoting Fed.R.Civ.P. 23(a)(1)). Instead of imposing a strict numerical test, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC,* 446 U.S. 318, 330 (1980). While a "sheer number of potential litigants in a class…can be the only factor needed to satisfy Rule 23(a)(1)," *Bacon v. Honda of America Mfg., Inc.*, 370 F3d 565, 570 (6th Cir. 2004), courts have upheld certification of a class of as few as sixteen individuals. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (affirming that it would be reasonable to infer that a class of black employees who were denied an opportunity for promotion during a six-year period  would be "includable in the class

5

eligible for relief on the basis of Appellant's action and that their joinder would be impracticable");

*Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (affirming a class of "no more than 35 minority group members who were eligible to take the most recent examination for line sergeant or the 17 members of that group who actually took the examination").

Plaintiffs argue that based on the number of people detained on a daily basis in the Hamblen County Jail and the percentage of those people who remained on pretrial detention, the class is so numerous as to satisfy the first requirement [Doc. 3, pg. 8]. They rely on a Tennessee Department of Correction's report from December 2019 which shows that at that time, 384 people were detained in the Hamblen County Jail and that 52.6% of those people were incarcerated pretrial [Doc. 3, pg. 8] (citing Tenn. Dep't of Corr., *Tennessee Jail Summary Report* 1 (2019), https://www.tn.gov/content/dam/tn/correction/documents/JailDecember2019.pdf). Plaintiffs also argue that this class continues to grow with an "indeterminate future stream of class members who will suffer the same injury…" [Doc. 3, pg. 8]. Defendants claim Plaintiffs have misinterpreted that report. They argue the report only shows data for one singular day and that "Plaintiffs have presented no evidence that the inmates…were incarcerated at that time 'solely' because they 'could not afford to pay' their bail." [Doc. 88, pg. 6] (citing [Doc. 3, pgs. 7-10]).

The Court does not have to find a specific number of potential class members from the evidence provided, only that the number of potential class members is large enough to make joinder impractical. The Court "may consider reasonable inferences drawn from facts before [it] at that stage of the proceedings." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (quoting *Senter*, 532 F.2d at 523). Plaintiffs also provided a summary of the Tennessee Jail Summary Reports from January 2018 through December 2019 [Doc. 70, pg. 24]. This shows an average of 421 inmates in the jail at a given time, with an average of 48.33% of those detained

6

pretrial, which comes to approximately 202 inmates detained pretrial. Defendants provide data from the Jail Summary Reports for March 2020 through August 2020. *See* [Doc. 88, pgs. 5-6]. They state that the reports for these months show fewer individuals detained pretrial than the reports Plaintiffs rely on. The six-month average for those months indicates 111 individuals detained pretrial.

Defendants agree that "[m]oney bail is a condition of release for the majority of arrestees in Hamblen County." [Doc. 78-1, Joint Stipulations, ¶ 5]. They also agree that "[a]t the time bail is set on an arrest warrant, the bail-setter typically does not have information about the arrestee's employment status, financial condition, family ties and relationships, or members of the community who might vouch for the arrestee, unless the bail-setter has past personal knowledge or experience with the arrestee," i.e. that the bail setter cannot and does not typically make an individualized assessment as required under Tennessee law [Doc. 78-1, ¶ 11].

Plaintiff also presents affidavits from the named Plaintiffs as well as other individuals who were detained in the Hamblen County Jail indicating that they were not given an individualized bail hearing and were "detained solely because they cannot afford the money bail amount necessary for their release." [Doc. 70, pg. 10; Doc. 26-2, ¶¶ 5-7; Doc. 26-3, ¶¶ 7-11; Doc. 26-4, ¶¶ 5-7; Doc. 26-5, ¶¶ 5-8, Doc. 26-8, ¶¶ 5-10, Doc. 26-9, ¶¶ 4-10]. Plaintiffs also include an affidavit from Assistant Public Defender Ethel Rhodes, who avers that "Public Defender clients are routinely detained in Hamblen County because they are unable to afford the amount of money bail required as a condition of release. Those who cannot afford to pay usually wait in jail until their case is resolved." [Doc. 26-7, ¶ 5]. Further, "people are provided no opportunity to argue for bail modification during [their initial appearance]." [Doc. 26-7, ¶ 7].

7

The Court does not have to find that all of those individuals would fall into the proposed class, only that the number of individuals that do would be too large to join under Fed.R.Civ.P. 20. Based on the evidence before the Court, a significant percentage of inmates will fall within the class definition.[3] Because it would be impractical to join each arrestee individually under Fed.R.Civ.P. 20, the Court finds that Plaintiffs have met the numerosity requirement.

### ii. Commonality

"Rule 23(a)(2) requires plaintiffs to prove that there are questions of fact or law common to the class…." *Young*, 693 F.3d at 542. "To demonstrate commonality, the plaintiffs' claims must depend on a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Wal-Mart Store, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The class does not need to have every question of fact or law in common: "even a single common question will do." *Dukes*, 564 U.S. at 359 (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum.L.Rev. 149, 1176, n. 110 (2003)) (internal quotation marks omitted).

Plaintiffs provide various issues of law and fact that they assert prove commonality. *See* [Doc. 3, pgs. 11-12]. In sum, all the members of the proposed class are subject to Defendants' policy of setting bond without any individualized hearing. This suggests that a common answer, i.e. an individualized hearing, would be the same for all proposed class members. *See Dukes*, 564 U.S. at 350.

---

[3] Plaintiffs also argue that people are arrested every day, implying that additional people will be detained in the Hamblen County jail without any individualized hearing. *See Walker v. City of Calhoun, Georgia*, No. 4:15-CV-170-HLM, 2016 WL 361580, at *6 (N.D. Ga. Jan. 28, 2016) ("Further, there is a future stream of class members who would suffer the same injury absent injunctive relief.").

8

Defendants argue that "an individual can be both unable to afford to pay the amount of money required for their release *and* unwilling to pay that amount. Further, it is unclear what being 'unable to afford to pay' means, along with who will make this determination and when." [Doc. 88, pg. 9] (emphasis in original). As a result, Defendants posit that the class does not share a common issue. However, the Court has specifically addressed this concern in its preliminary injunction and its class definition, limiting the class to only those arrestees who have not received an individualized bond hearing. Here, the common question of law and fact surrounds Defendants' practice and policy of setting bond.

Plaintiffs also present an additional common question of law: "Whether setting of pretrial release conditions without affording an individual counsel violates the Sixth Amendment and the Fourteenth Amendment's Due Process Clause." [Doc. 3, pg. 12]. Defendants respond that "now that Public Defenders are often present when they are appointed new clients during initial appearances, they are able to make timely motions for bail reductions, which in large part addresses the arguments advanced by the Plaintiffs in this lawsuit." [Doc. 88, pg. 9]. However, regardless of whether that is true, Plaintiffs only need to present one common issue of fact or law, which they have done.

In *Caliste v. Cantrell*, the Court found that "[c]ommonality is satisfied because the claims of each class member rest on common fact questions surrounding Defendant's policies and practices of setting bail in state criminal cases. Further, the claims share a common question of law: whether these policies and practices violate the Fourteenth Amendment's Due Process and Equal Protection clauses." No. 17-6197, 2018 WL 1365809, *2 (E.D. La. Mar. 16, 2018). Similarly, in *Buffin v. City and County of San Francisco*, "[t]he Court [found] that plaintiffs have demonstrated sufficient commonality to satisfy Rule 23(a)(2) because the resolution of one

9

question, that is, whether the Sheriff's use of the Bail Schedule prior to arraignment violates the Equal Protection or Due Process clauses of the Fourteenth Amendment, will resolve "in one stroke" all class members' claims." No. 15-cv-04959-YGR, 2018 WL 1070892, *4 (N.D. Cal. Feb. 26, 2018). Determining whether Defendants' policy of setting bail without an individualized hearing is constitutional will resolve the class members' claims. *See also Daves v. Dallas County, Texas*, No. 3:18-CV-0154-N, 2018 WL 4537202, at *2 (N.D. Tex. Sept. 20, 2018) (finding a common issue of law in whether or not the alleged procedures that apply to all arrestees and result in unaffordable bail deprive the proposed class members of constitutionally required process); *Walker v. City of Calhoun, Georgia*, No. 4:15-CV-170-HLM, 2016 WL 361580, *6 (N.D. Ga. Jan. 28, 2016) ("The factual and legal questions surrounding Defendant's policies and practices, whether under the previous bail policy or under the new Standing Order, present questions that are common to the entire class.).

The Court finds Plaintiffs have satisfied the commonality requirement.

### iii.      Typicality

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young*, 693 F.3d at 542. "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Sprague v. General Motors*, 133 F.3d 388, 399 (6th Cir. 1998) (quoting *In re American Medical Systems, Inc.*, 75 F.3d at 1082). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Plaintiffs argue that "the named Plaintiffs are injured in the same way as the other class members: they each challenge *de facto* pretrial detention orders made without the substantive

findings and procedural safeguards that the U.S. Constitution requires." [Doc. 3, pg. 13]. They argue that the named Plaintiffs will advance legal theories that are beneficial to the class as a whole as to the constitutionality of Defendants' practices. Defendants argue that Plaintiffs do not differentiate between those who cannot pay and those who simply choose not to pay. However, again, this concern is resolved by the Court's modification of the class definition.

Plaintiffs' claims are typical of the class. The Court in *Daves* best summarized this assessment.

> The Plaintiffs are not challenging individual bail determinations. If they were, each claim would be unique, and satisfying the typicality requirement would be a tall order….The constitutional challenges brought by Plaintiffs against these procedures are the same challenges that any member of the class would bring. The Court thus finds that the proposed class meets the typicality requirement under Rule 23(a)(3).

*Daves*, 2018 WL 4537202, at *2. In *Booth v. Galveston County*, the Court also found that the class members suffered the same constitutional violations as are alleged here: "having bail set at a closed door hearing pursuant to a bail schedule with no representation by counsel and no individualized inquiry into their ability to pay, flight risk, or dangerousness." No. 3:18-CV-00104, 2019 WL 1129492, *5 (S.D. Tex. Mar. 12, 2019). Plaintiffs have satisfied the typicality requirement.

### iv. Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). The Court shall consider whether "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Systems, Inc.,* 75 F.3d at 1083.

11

Defendants make the same argument that Plaintiffs are not similar to the proposed class and therefore cannot adequately represent the class.[4] They also argue Plaintiffs are not entitled to relief under the Fourteenth and Sixth Amendment. But merit arguments are limited to determining whether the Rule 23 prerequisites for class certification have been met. The Court has found that they have. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013) (citations omitted)

Plaintiffs are adequate class representatives.

## C.    Rule 23(b)(2)

Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and the class falls within one of three types of class actions identified in Rule 23(b)(1)-(3). Plaintiff argue this class falls within Rule 23(b)(2), which provides "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (internal quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. "Rule 23(b)(2) certification is particularly appropriate where, as here, a plaintiff seeks

---

[4]    "The Plaintiffs cannot adequately represent those who are indigent or who are 'unable to afford to pay' their bail, but who do not challenge their detention and/or refuse to make bail, even with help from family, friends, or a third party organization like the Robert F. Kennedy Human Rights organization, which paid each of Plaintiffs' secured bails in full, in cash." [Doc. 88, pg. 12].

affirmative changes in government practices through injunctive or declaratory relief." *Walker*, 2016 WL 361580, at *9 (citing *Jackson v. Foley*, 156 F.R.D. 538, 544 (E.D.N.Y. July 7, 1994)); *see also Senter*, 532 F.2d at 525-26 (citing 39 F.R.D. 69, 102 (1966) ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.")).

In this case, Plaintiffs challenge Defendants practice and procedure of setting bail and seeks only declaratory and injunctive relief in finding Defendants' practices unconstitutional and enjoining Defendants from continuing such practices. The relief is the same for all proposed class members: Defendants would not be allowed to detain individuals on a money bond without an individualized hearing which considers, among other things, the arrestee's ability to pay. "Relief in the form of reformed procedures is relief for every class member." *Daves*, 2018 WL 4537202, at *2. The Court finds that Plaintiffs have satisfied the Rule 23(b)(2) standard. *See Caliste*, 2018 WL 1365809, at *2 ("Finally, the Plaintiffs request only declaratory relief for the entire class. Therefore, they have satisfied the Rule 23(b)(2) standard."); *Booth*, 2019 WL 1129492, at *7 ("The injunctive and declaratory relief sought by Booth in this case, if granted, would declare the current pretrial detention system in Galveston County unconstitutional and provide relief to every member of the class.").

D. **Class Counsel**

Under Fed.R.Civ.P. 23(g)(1), the Court must appoint class counsel. Defendants do not contend that Plaintiffs' counsel are unqualified to be appointed class counsel. "It is clear from the plaintiffs' filings that their counsel have expended more than a minimal amount of time and resources researching their clients' allegations." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2017 1542457 (S.D. Tex. Apr. 28, 2017) (quoting *Gross v. United States*, 106 Fed. Cl. 369

13

(2012) (applying a rule analogous to 23(g)(1)(A)). In consideration of the factors set out in Fed.R.Civ.P. 23(g)(1)(A), the Court finds Plaintiffs' counsel will "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B).

## III.     Conclusion

For the reasons stated above, Plaintiffs' Revised Motion for Class Certification [Doc. 87] is **GRANTED**. This case may be maintained as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Accordingly, it is ordered as follows:

1. The following class is **CERTIFIED**: All individuals arrested on an arrest warrant out of Hamblen County General Sessions Court (save for capital offenses) (1) who are, or will be, in the custody of the Hamblen County Sheriff, Esco Jarnagin; (2) whose bail amount was set in an *ex parte* fashion by the Defendants authorized by law to set bail for cases pending in Hamblen County general sessions court; (3) who have not waived and have not received an individualized bail hearing within a reasonable period of time; and (4) who remain in custody for any amount of time;

2. Named Plaintiffs Michelle Torres, Robbie Johnson-Loveday, Amanda Cameron, and Bethany Edmond are **DESIGNATED** as class representatives; and

3. Attorneys Ellora Thadaney Israni, Jonathan Backer, Mary McCord, Matthew G. White, Seth Daniel Tychsen Wayne, Tara Mikkilineni, and George T. Lewis, III are **DESIGNATED** as class counsel.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge

14