IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JUST CITY, INC., and class representatives DEANGELO TOWNS and MARSHAWN BARNES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:24-cv-02540-TLP-tmp |
| v. | ) ) | |
| SHERIFF FLOYD BONNER, JR., et al., | ) ) | |
| Defendants. | ) | |

## ORDER GRANTING CLASS CERTIFICATION

Plaintiffs challenge HB 1719, a statutory amendment to Tennessee's bail law. And they now move to certify a class under Federal Rule of Civil Procedure 23(b)(2). (ECF No. 76.) For the reasons below, the Court **GRANTS** Plaintiffs' Motion to Certify Class.

## BACKGROUND

In late July 2024, Just City, Inc. ("Just City") sued Shelby County Sheriff Floyd Bonner, Jr., Judge Lee Wilson,[1] and the Shelby County judicial commissioners in their official capacities to prevent them from enforcing HB 1719, a statutory amendment to Tennessee Code Annotated section 40-11-118. (ECF No. 1.) HB 1719 requires judicial officers setting bail to consider an arrestee's "employment status and history and financial condition; provided, that, the defendant's

---

[1] Just City originally sued Bill Anderson as the Presiding Shelby County General Session Criminal Court Judge, but, because the suit brings only official-capacity claims, it later substituted Anderson for Lee Wilson under Federal Rule of Civil Procedure 25(d).

ability to pay shall not be considered."[2]  Tenn. Code Ann. § 40-11-118(b)(2).  Just City alleged

that this law violates the Due Process and Equal Protection Clauses of the Fourteenth

Amendment by preventing judicial officers from considering a arrestee's ability to pay when

setting their bail amount.  (*Id.* at PageID 12–13.)

Just City also moved for a preliminary injunction and expedited declaratory relief.  (ECF

No. 2.)  Defendants opposed the Motion.  (ECF No. 37.)  The State of Tennessee intervened.

(ECF Nos. 40, 43.)  And then Defendants and the State separately moved to dismiss.  (ECF Nos.

---

[2] In full, section (b) states that,

> [i]n determining the amount of bail necessary to reasonably assure the appearance
> of the defendant while at the same time protecting the safety of the public, the
> magistrate *shall* consider the following:
>> (1) The defendant's length of residence in the community;
>> (2) *The defendant's employment status and history and financial
>> condition; provided, that, the defendant's ability to pay shall not be
>> considered*;
>> (3) The defendant's family ties and relationships;
>> (4) The defendant's reputation, character and mental condition;
>> (5) The defendant's prior criminal record, record of appearance at court
>> proceedings, record of flight to avoid prosecution or failure to appear at
>> court proceedings;
>> (6) The nature of the offense and the apparent probability of conviction
>> and the likely sentence;
>> (7) The defendant's prior juvenile court record, as authorized by § 37-1-
>> 133(b)(1), and prior criminal record and the likelihood that because of the
>> records the defendant will pose a risk of danger to the community;
>> (8) The identity of responsible members of the community who will vouch
>> for the defendant's reliability; however, no member of the community
>> may vouch for more than two (2) defendants at any time while charges are
>> still pending or a forfeiture is outstanding; and
>> (9) Any other factors indicating the defendant's ties to the community or
>> bearing on the risk of the defendant's willful failure to appear, including,
>> but not limited to, whether the defendant is lawfully present in this state.

Tenn. Code Ann. § 40-11-118(b) (emphasis added).

44, 52.)  The Court later denied these motions, reasoning that although Just City was unlikely to

succeed on the merits, it had alleged enough to survive dismissal.  (ECF No. 64.)

In early March 2025, Just City moved to amend its Complaint by adding two individual

plaintiffs—Deangelo Towns and Marshawn Barnes—and a void-for-vagueness claim.  (ECF No.

75.)  The Court granted the Motion.  (ECF No. 77.)  And Plaintiffs moved for class certification.[3]

(ECF No. 76.)  The Court considers that Motion here.

## I.      Background on Motion to Certify Class

Proposed Class Representatives Deangelo Towns and Marshawn Barnes ("Plaintiffs")[4]

are detainees under bail orders issued by Shelby County Judges and Judicial Commissioners

under Tennessee Code Annotated § 40-11-108, as amended by HB 1719.  (ECF No. 75-2 at

PageID 745.)  Because of this, Plaintiffs allege that they are detained "without consideration of

their ability to pay" for bail and are therefore "not able to pay for their release."  (*Id.*)  Plaintiffs

sue the same Defendants as before—Sheriff Bonner, Judge Lee Wilson, and the Shelby County

judicial commissioners in their official capacities.  (ECF No. 75-2.)  And they continue to seek

the same declaratory and injunctive relief.  (*Id.* at 756–57.)

Plaintiffs now challenge HB 1719 on three grounds.  First, they argue HB 1719 violates

the Due Process Clause of the Fourteenth Amendment by prohibiting a judicial officer from

considering an arrestee's ability to pay when setting bail, which they allege is a "fundamentally

unfair procedure" depriving "an arrestee's liberty pending trial."  (*Id.* at PageID 755.)  Second,

they contend HB 1719 is a discriminatory wealth-based detention that violates the Due Process

---

[3] Just City is still a Plaintiff but not a proposed class member.  (ECF No. 75-2 at PageID 745,
767.)  To keep things simple, the Court's reference to "Plaintiffs" in this Order does not include
Just City and refers only to Mr. Towns and Mr. Barnes.
[4] See ECF No. 76-2 for Mr. Towns' Declaration, bail screening form, and bond setting
information.  See the same for Mr. Barnes' Declaration and bond setting information.

and Equal Protection Clauses of the Fourteenth Amendment.  (*Id.* at PageID 755–56.)  Third,

Plaintiffs assert that the amended statute is void for vagueness because "[i]ndividual judicial

officers have no standards to apply in distinguishing or drawing lines between 'financial

condition,' which must be considered, and 'ability to pay,' which must not be considered."  (*Id.*

at PageID 756.)

Under Federal Rule of Civil Procedure 23(b)(2), Plaintiffs move to certify a class of

detainees challenging HB 1719's constitutionality for the same three reasons listed above.  (ECF

No. 76-1 at PageID 768; ECF No. 86 (reply).)  They define the class as:

> All people in the custody of the Shelby County Sheriff who are detained under
> bail orders issued by Shelby County judges pursuant to Tenn. Code Ann. § 40-11-
> 118(b), as amended by HB 1719, without consideration of their ability to pay.

(ECF No. 76-1 at PageID 768.)  Plaintiffs also urge the Court to appoint their current counsel as

class counsel.  (*Id.* at PageID 779–80.)  Defendants oppose these requests.  (ECF No. 79.)  And

the State takes no position on class certification.  (ECF No. 76 at PageID 761.)  After reviewing

the Parties' filings, the Court found that supplemental briefing would be necessary.  (ECF No.

104.)  So the Court ordered that "any party wishing to file a supplemental brief shall do so by

Wednesday, October 22, 2025."  (*Id.*)  Plaintiff responded.  (ECF No. 106.)  Defendants did not.

And on October 30, 2025, the Court held oral arguments on the pending class certification

motion.  (ECF No. 108.)  Plaintiffs and Defendants both later filed post-argument briefing.  (ECF

Nos. 109, 112.)  Below, the Court sets out the applicable law before turning to the Parties

arguments.

## ANALYSIS

Class actions are a form of representative litigation where named class members litigate

claims on behalf of absent class members.  *See* 1 *Newberg and Rubenstein on Class Actions* §§

4

1:1, 1:2 (6th ed. 2022), Westlaw (databased updated June 2025). Because a class action lawsuit

departs from the "usual rule that litigation is conducted individual named parties only," the

named plaintiffs bear the burden of proving that they "possess the same interest and suffer the

same injury" as the absent class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–

50 (2011) (citations omitted); *see Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 315–16 (6th Cir.

2025) (en banc).

District courts have broad discretion when deciding whether to certify a class. *Pickett v.

City of Cleveland, Ohio*, 140 F.4th 300, 307 (6th Cir. 2025). But that discretion is cabined by

Federal Rule of Procedure 23's "stringent requirements." *Speerly*, 143 F.4th at 315. These

requirements are twofold. The moving party must first satisfy Rule 23(a)'s four prerequisites—

"numerosity, commonality, typicality, and adequate representation." *Sandusky Wellness Ctr.,

LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). The proposed class

must then "fit within one of the three types of classes listed in Rule 23(b)." *Id.* There is no way

around this—"[a] failure on either front dooms the class." *Pilgrim v. Universal Health Card,

LLC*, 660 F.3d 943, 946 (6th Cir. 2011); *see also Speerly*, 143 F.4th at 316 (explaining that Rule

23 "is not merely a pleading standard").

That said, "district courts may not 'turn the class certification proceedings into a dress

rehearsal for the trial on the merits.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.

Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013) [hereinafter *In re Whirlpool*] (citation omitted).

They are instead to consider "only those matters relevant to deciding if the prerequisites of Rule

23 are satisfied." *Id.* at 851 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S.

455, 464–67 (2013). This analysis requires a district court to "'probe behind the pleadings' and

conduct a 'rigorous' examination to ensure that the class satisfies Rule 23." *Speerly*, 143 F.4th at

316.

## I.      Rule 23(a)

Plaintiffs argue their proposed Class satisfies the four Rule 23(a)'s numerosity,

commonality, typicality, and adequacy requirements.  (ECF No. 76-1 at PageID 769.)

Defendants disagree.  (ECF No. 79.)  Although the core dispute centers on commonality, the

Court addresses each Rule 23(a) prerequisite in turn.

### A.      Numerosity

Numerosity comes first.  Rule 23(a)(1) requires a class to be "so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Substantial" numbers ordinarily satisfy

this requirement.  *In re Whirlpool*, 722 F.3d at 852 (quoting *Daffin v. Ford Motor Co.*, 458 F.3d

549, 552 (6th Cir. 2006)).  Defendants concede that the proposed class checks this box.  (ECF

No. 79 at PageID 844.)  And although Plaintiffs do not assign an exact number to their proposed

class, they cite Tennessee Department of Corrections data showing that the Shelby County jail

population includes 2,524 pretrial detainees.  (ECF No. 76-1 at PageID 770.)  Plaintiffs also

point out that the class is "constantly in flux" because "each day arrestees enter the class when

they are booked into jail or leave the class because their cases resolve."  (*Id.*)  The Court finds

that the number of putative class members alone satisfies numerosity.  So does "[t]he transient

and fluctuating nature of the jail population," which "makes joinder impracticable."  *Hiatt v.

Cnty. of Adams, Ohio*, 155 F.R.D. 605, 608 (S.D. Ohio 1994).

### B.      Commonality

Commonality is not as straightforward.  Under Rule 23(a)(2), a plaintiff must prove that

"there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Despite being

written in a plural form, the Rule only requires a single common question. *Doster v. Kendall*, 54

F.4th 398, 430 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023) (citing *Dukes*, 564 U.S. at

359). To demonstrate commonality, the class's claims must rest "upon a common contention . . .

of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Dukes*, 564 U.S. at 350.

A common question is one that "must (1) yield a common answer with common evidence

and (2) meaningfully progress the lawsuit." *Speerly*, 143 F.4th at 316. So a question is not

common if "evidence [] varies from member to member." *Id.* at 318 (citation omitted).

"[G]eneralized questions" do not suffice. *Id.* But a "vital factual question may well turn a case"

if the class can trace the question to a legally salient element in *each* cause of action and show

that common proof will provide yes-or-no answers to that factual/legal question." *Id.* at 319

(quoting *Doster*, 54 F.4th at 430–31).

Consider *Speerly* as an example of what may make a question uncommon. There, 74

plaintiffs from 32 states brought 104 claims against General Motors for breach of express

warranty, breach of implied warranty, state consumer protection statute violations, and

fraudulent omission. *Id.* at 314. The district court later certified 26 statewide subclasses with 59

state law claims on behalf of about 800,000 class members under Rule 23(b)(3). *Id.* at 312. It

found a common question in whether General Motors' transmissions had certain defects. *Id.* at

318. But the Sixth Circuit found the district court's approach too general because the term

"defect" bore different legal meanings under the different causes of action. *Id.* at 319. It

remanded the case for the district court to ensure a common question "'affect[ed] at least one

element' of *all* 59 claims." *Id.* at 317 (emphasis added) (quoting *Doster*, 54 F.4th at 430). To do

this, the district court was to "conduct an element-by-element analysis that assesses how each

question is common by fitting it into each claim." *Id.* at 316–17 (quoting *In re Nissan N. Am.,*

*Inc. Litig.*, 122 F.4th 239, 246–47 (6th Cir. 2024)).  The Sixth Circuit reasoned that "[w]ithout

this analysis, the district court cannot prove that a common defect drives *all 59 claims forward*,

even if every plaintiff can prove that they had the same transmission." *Id.* at 319.

Against this backdrop, Plaintiffs argue that their claims share common questions.

Defendants disagree.  But their disagreement goes more to the merits of Plaintiffs' claims rather

than articulating a reason why their claims are uncommon.  After review, the Court finds that

Plaintiffs meet this standard.  The Court will explain how it reached this result by first

"walk[ing] through each cause of action, identify[ing] the relevant elements, and evaluat[ing]

which elements, if any, submit to common answers." *Id.* at 316–17 (citation omitted).

Plaintiffs sue Defendants under 42 U.S.C. § 1983, alleging that HB 1719 violates the

Fourteenth Amendment.[5]  Their claim is anchored in procedural due process.  This claim

requires Plaintiffs to prove two elements: "(i) deprivation by state action of a protected interest in

life, liberty, or property, and (ii) inadequate process." *Novak v. Federspiel*, 140 F.4th 815, 821

(6th Cir. 2025) (citation omitted).  But Plaintiffs allege more than just a broad Fourteenth

Amendment claim here.  They instead assert three ways in which HB 1719 violates this right.

First, "HB 1719 violates fundamental fairness under the Fourteenth Amendment because

it prevents arrestees from receiving a 'meaningful' opportunity to be heard before depriving

them of their pretrial liberty."  (ECF No. 106 at PageID 1081.)  Courts consider four factors

when determining what procedural safeguards due process requires: "(1) the private individual's

---

[5] (*See* ECF No. 75-2 at PageID 754–56; ECF No. 76-1 at PageID 768; ECF No. 106 at PageID 1080; ECF No. 109-2 at PageID 116–17.)

interests, (2) the government's interests, including the fiscal and administrative burdens at stake,

(3) the value of the suggested procedural requirements, and (4) the risk of erroneous deprivation

of the individual's rights that is inherent in current procedures." *United States v. Brandon*, 158

F.3d 947, 953 (6th Cir. 1998) (citing *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976)).

Plaintiffs' second claim is that under *Bearden v. Georgia*, 461 U.S. 660 (1983), "HB

1719 causes discriminatory wealth-based detention in violation of the Fourteenth Amendment."

(ECF No. 106 at PageID 1082.)  "Due process and equal protection principles converge" in

*Bearden* claims.  461 U.S. at 665.  To address the due process component, courts "analyze the

fairness of relations between the criminal defendant and the State" to ensure that the challenged

government action is not "fundamentally unfair or arbitrary."  *Id.* at 665–66.  This analysis

"requires a careful inquiry into such factors as [1] the nature of the individual interest affected,

[2] the extent to which it is affected, [3] the rationality of the connection between legislative

means and purpose, and [4] the existence of alternative means for effectuating that purpose."  *Id.*

at 666–67 (citation and quotation marks omitted); *see also Johnson v. Bredesen*, 624 F.3d 742,

748 (6th Cir. 2010) (same).

Third, Plaintiffs claim that "HB 1719 is unconstitutionally vague in violation of the

Fourteenth Amendment."  (ECF No. 106 at PageID 1082.)  They argue HB 1719 is vague

because by requiring judicial officers to consider an arrestee's "financial condition" but not

"ability to "pay," arrestees, and judicial officers lack adequate notice about what evidence can be

considered bail proceedings.  (ECF No. 75-2 at PageID 756.)  A law is unconstitutionally vague

if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution

on an *ad hoc* and subjective basis."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502

F.3d 545, 551 (6th Cir. 2007) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09

(1974)).  The doctrine's goal is to ensure that a law provides "fair notice to the citizenry" and to

protect against "arbitrary and discriminatory [legal] enforcement."  *Id.*

These claims share at least two common questions.  Start with a factual question: Do

Defendant judges "enforce HB 1719 by not considering an arrestee's ability to pay when setting

bail[?]"  (ECF No. 76-1 at PageID 773.)  Whether they do or do not enforce HB 1719 is central

to Plaintiffs' entire lawsuit.  For example, if judges still consider an arrestee's ability to pay, then

there may be no risk of erroneous deprivation under *Mathews*' fourth element; no wealth-based

detention under *Bearden*; and no arbitrary or discriminatory enforcement in the void-for

vagueness claim.  And the answer to that factual question—whether "yes or no"—leads to a

second question, a legal one: Does HB 1719 deprive class members of their liberty interests

without adequate procedural process by prohibiting judges from considering their ability to pay

when setting bail?  (ECF No. 109-2 at PageID 1118.)

The answer to whether HB 1719 deprives the class members of adequate process is

central to each claim.  It is all but dispositive to determining whether HB 1719 subjects the class

to deprivation under the *Mathews* balancing test or to determining whether HB 1719 leads to

unfair government action under *Bearden*.  *Cf. Robinson v. Purkey*, 326 F.R.D. 105, 163 (M.D.

Tenn. 2018) (balancing *Mathews*' factors against the "risk of an erroneous deprivation");

*Bearden*, 461 U.S. at 666 n.8 (explaining that due process concerns "whether consideration of a

defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to

be a denial of due process"); *McNeil v. Cmty. Prob. Servs., LLC*, No. 18-0033, 2019 WL 633012,

at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019) (weighing *Bearden* and

other authorities to conclude that bail-setting procedures were inadequate because, among other

things, they failed to provide findings "regarding the arrestee's ability to pay").  And if HB 1719

deprives class members of adequate due process, then it is more likely to invite arbitrary and

discriminatory enforcement under the void-for-vagueness claim.  *Cf. Johnson v. U.S.*, 576 U.S.

591, 595 (2015) (explaining that vague statutes "violate[] the first essential of due process"

(citation omitted)).  Further, as explained below, the common answers to these questions turn on

common proof, hinging on statutory framework and Fourteenth Amendment precedent.

The Court acknowledges that Plaintiffs' constitutional claims do not break down into neat

and discrete elements like those in *Speerly*.  But that is not fatal here.  *See, e.g.*, *Barry v. Lyon*,

834 F.3d 706, 710–14 722 (6th Cir. 2016) (affirming certification of a class challenging a law on

statutory and procedural due process grounds); *Doe v. Snyder*, 449 F. Supp. 3d 719, 725 (E.D.

Mich. 2020) (discussing certified class challenging a law on vagueness, strict liability, First

Amendment, and ex post facto grounds); *see also Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515,

521 (E.D. Mich. 2001) ("When the legality of the defendant's standardized conduct is at issue,

the commonality factor is normally met[.]").  The more important finding is that Plaintiffs'

claims go to the heart of commonality.  Unlike the 59 disparate claims brought by the *Speerly*

class, the three claims here apply equally to each class member.  And unlike the varying

definitions of "defect" in *Speerly*, the answer to each element of Plaintiffs' claims remains the

same for the entire class.

Yet Defendants argue that Plaintiffs bring no common claims, individually or otherwise.

Defendants' argument boils down to this: Plaintiffs' proposed class cannot show commonality

because Tennessee Code Annotated section 40-11-118(b) includes nine factors that judicial

officers consider together.  (*See* ECF No. 79 at PageID 845–86.)  In other words, Defendants

argue that the individualized nature of bail setting and the application of the nine factors to the

bail-claimant preclude a common question here.

But Defendants cite no authority supporting their position.  (ECF No. 79 at PageID 845–46.)  Instead, they point to Plaintiff Deangelo Towns' bail records as an example of why commonality must fail.  (ECF No. 79 at PageID 846.)  Mr. Towns' bail record shows that "he previously had been involved in criminal cases for five (5) felonies, twelve (12) misdemeanors, and had failed to appear for court hearings eleven (11) times."  (*Id.*; *see also* ECF No. 76-2 at PageID 802.)  So Defendants assert that, based on Mr. Towns' record, "the variety of factors judicial officers can consider when setting bail means that the single factor of "financial condition (rather than ability to pay) cannot be a unifying factor among members of the potential class."  (ECF No. 79 at PageID 846.)

The law creates a spectrum of sorts for commonality.  For example, on one end, "[a] question is not common if the answer requires 'evidence that varies from member to member.'"  *Speerly*, 143 F.4th at 318 (citation omitted).  But on the other hand, "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common."  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).  To find where this proposed class lands on that spectrum, the Court must identify potential variations in the proposed class and be able to "explain why these apparent differences do not defeat class certification."  *In re Nissan N. Am., Inc. Litig.*, 122 F.4th at 247 (quoting *Dukes*, 564 U.S. at 350).  The Court finds that the question here is not so much which factors led the judicial officer to set a specific bail for a Plaintiff.  Rather the question is whether the new statutory language preventing the bail-setting judicial officer from considering a "defendant's ability to pay" makes the statute unconstitutional.

12

The variations in the class members' circumstances here does not destroy the common

issue that binds them all.  That is because Plaintiffs challenge Defendants' bail-setting *process*,

not their bail-setting *result*.  (*See* ECF No. 76-1 at PageID 774.)  And they assert HB 1719's

allegedly unconstitutional process as a categorical injury which is common to all members of the

proposed class..  Turning back to Mr. Towns, he does not ask the Court to adjudicate his

individual bail amount.  Nor does he ask the Court to reapply his bail factors.  (ECF No. 86 at

PageID 909.)  He instead asserts—like the rest of the proposed class—that HB 1719 denies him

adequate process.  That the individual circumstances for the proposed class members may vary

does not change the outcome here if Towns is right that HB 1719 denies him due process.  *Cf.*

*Doster*, 54 F.4th at 435 ("Either way—whether th[e] [challenged] practice stems from an illegal

broad-brush approach or from a legal individualized analysis—the answer will be the same for

the whole class.").  At any rate, variations are common, if not expected, in class actions

challenging system-wide practices.[6]

---

[6] *See Malam v. Adducci*, 475 F. Supp. 3d 721, 735–36 (E.D. Mich. 2020), *amended*, No. 20-10829, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) (finding that class members' varied individual experiences in detention did not "defeat commonality"); *Robinson*, 326 F.R.D. at 167 (reasoning that "while the individual cases of the different class members may vary substantially, those variations are immaterial to the categorical right that the plaintiffs have asserted"); *see also Buffin v. City & Cnty. of San Francisco*, No. 15-4959, 2018 WL 1070892, at *4 (N.D. Cal. Feb. 26, 2018) ("The Court finds that plaintiffs have demonstrated sufficient commonality to satisfy Rule 23(a)(2) because the resolution of one question, that is, whether the Sheriff's use of the Bail Schedule prior to arraignment violates the Equal Protection or Due Process clauses of the Fourteenth Amendment, will resolve 'in one stroke' all class members' claims."); *Caliste v. Cantrell*, No. 17-6197, 2018 WL 1365809, at *2 (E.D. La. Mar. 16, 2018) ("Commonality is satisfied because the claims of each class member rest on common fact questions surrounding Defendant's policies and practices of setting bail in state criminal cases.  Further, the claims share a common question of law: whether these policies and practices violate the Fourteenth Amendment's Due Process and Equal Protection clauses."); *Daves v. Dallas Cnty., Texas*, No. 18-0154, 2018 WL 4537202, at *2 (N.D. Tex. Sept. 20, 2018) (finding that commonality in class action for arrestees because each class member "is exposed to the same procedures that allegedly result in wealth-based pretrial detention"); *Graham v. Parker*, No. 16-1954, 2017 WL 1737871, at *4 (M.D. Tenn. May 4, 2017) (finding commonality because plaintiffs were challenging

Defendants' sole argument here amounts to a merits challenge.  For example, in their

Post-Hearing Brief, Defendants contends that "[t]he primary reason for the break in commonality

between the claim (or claim subparts) is that the application [of] HB 1719 does not automatically

lead to a deprivation of due process rights as Plaintiffs allege."  (ECF No. 112 at PageID 1167.)

Defendants may be right.  But that answer will apply equally—and is therefore common—to the

entire class.  And the Sixth Circuit has explained, courts "may look at merits evidence only if

needed to decide whether a question will *have a common answer* central to each of the class

member's claims—not whether the common answer will *favor the class*."  *Doster*, 54 F.4th at

433 (citations omitted).  The Court need not determine that common answer today.

C.      **Typicality**

The Court will now turn to typicality.  The commonality and typicality analysis often

merge.  *See Pickett*, 140 F.4th at 308–09 (citation omitted).  That is because they both "serve as

guideposts for determining whether under the particular circumstances maintenance of a class

action is economical and whether the named plaintiff's claim and the class claims are so

interrelated that the interests of the class members will be fairly and adequately protected in their

absence."  *In re Whirlpool*, 722 F.3d at 853 (quoting *Dukes*, 564 U.S. at 349 n.5).  With that said,

typicality still requires a plaintiff to prove that their "claims or defenses . . .  are typical of the

claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  A plaintiff meets this requirement

when each class member's claims generally: (1) arise from the same course of events; and (2) are

---

"official policies and practices applicable to all inmates" rather than bringing claims for
particularized injuries); *Walker v. City of Calhoun, Georgia*, No. 4:15-cv-170-HLM, 2016 WL
361580, at *6 (N.D. Ga. Jan. 28, 2016) (explaining that in an indigent-arrestee class action the
"factual and legal questions surrounding Defendant's policies and practices, whether under the
previous bail policy or under the new Standing Order, present questions that are common to the
entire class.").

14

based on the same legal arguments necessary to prove a defendant's liability.  *In re Am. Med. Sys.*, 75 F.3d at 1082.

Plaintiffs argue they satisfy typicality for three main reasons.  First, Plaintiffs "bring the same constitutional challenges to enforcement of HB 1719 in Shelby County as any member of the putative class."  (ECF No. 76-1 at PageID 775.)  Second, Plaintiffs assert that they suffer the same injury—"detention under bail orders that were entered without consideration of their ability to pay"—as the proposed class members.  (*Id.*)  And third, Plaintiffs seek an injunctive and declaratory remedy that would benefit all class members.  (*Id.*)  Defendants merge their commonality and typicality arguments, asserting that typicality fails because judicial officers consider many factors unique to each arrestee's background.  (ECF No. 79 at PageID 844–46.)

The Court agrees with Plaintiffs.  These claims are typical: Plaintiffs' claims and the proposed class members' claims all arise from the same course of conduct—Defendants enforced HB 1719 on them when setting their bail—and are based on the same legal theory of liability of a violation of their Fourteenth Amendment rights.  *See In re Am. Med. Sys.*, 75 F.3d at 1082 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)  (finding typicality when the plaintiffs alleged "both a single practice or course of conduct on the part of the Defendant," giving " rise to the claims of each class member and a single theory of liability"); *see also Pickett*, 140 F.4th at 308 (finding the plaintiffs' claims "fairly encompass[ed] the claims" of all class members because the defendant's policy applied to the entire class).  So "[i]n this instance, with commonality established, typicality readily follows."  *Robinson v. Purkey*, 326 F.R.D. 105, 168 (M.D. Tenn. 2018).

15

### D.    Adequacy

That leaves adequacy.  Certification is appropriate under Rule 23(a)(4) only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy is "essential to due process, because a final judgment in a class action is binding on all class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted). What is more, the adequacy requirement "overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Id.*

Two criteria guide courts when determining whether representation is adequate.  First, "the representative must have common interests with unnamed members of the class." *Young*, 693 F.3d at 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).  This consideration uncovers any conflicts of interest that may exist. *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 542 (6th Cir. 2007) (citation omitted).  Second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083); *see id.* (stating that class counsel must be experienced and capable of litigating the case).

Plaintiffs argue they meet the first adequacy prong because that they have no known conflicts with the unnamed class members.  (ECF No. 76-1 at PageID 777.)  The Court finds no reason to disagree.  Nothing here indicates a conflict of interest for Plaintiffs.  Defendants offer no reason to conclude otherwise.  And as discussed above, Plaintiffs and the proposed class have a unified interest in the claims and relief brought here.

Plaintiffs also meet the second adequacy prong.  To this point, Plaintiffs explain that "the class representatives not only share the same interests and injuries as the class, but have also

16

agreed to act in a representative capacity after meeting with members of the Plaintiffs' litigation

team and discussing the responsibility of prosecuting a class action." (*Id.*) As the briefing and

argument throughout this litigation has shown so far, there is no reason to find that Plaintiffs will

do anything but vigorously prosecute the class members' interest. Plaintiffs are represented by

attorneys with American Civil Liberties Union Foundation and Simpson Thacher & Bartlett

LLP. (ECF No. 76-2 at PageID 784–91.) And their supporting attorney declarations reveal that

counsel has extensive experience litigating civil rights matters in federal courts. (*Id.*) What is

more, Plaintiffs' counsel has already "committed substantial resources to this matter."[7] (ECF

No. 76-1 at PageID 777.) Plaintiffs are therefore adequate representatives under Rule 23(a)(4).[8]

## II.    Rule 23(b)(2)

After clearing Rule 23(a), the proposed class must also fit into one of the three

"types of class actions" recognized by Rule 23(b). *Sandusky Wellness Ctr., LLC*, 863 F.3d at

468. Plaintiffs here only move under Rule 23(b)(2). (ECF No. 76-1 at PageID 777–79.) A court

may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to

act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule

---

[7] For example, Attorneys Ashika Verriest, Jared Quigley, and Lucas Cameron-Vaughn appeared for oral arguments.

[8] Plaintiffs also ask the Court to appoint its counsel as class counsel under Rule 23(g). The "close relationship" between Rule 23(a)(4) and Rule 23(g) leads to "precedents relating to the adequacy of class counsel [being] easily adopted into the Rule 23(g) analysis." 1 *Newberg and Rubenstein on Class Actions* § 3:80. And under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The Rule requires a court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs argue that their lawyers meet these requirements. (ECF No. 76-1 at PageID 779–80.) And Defendants do not oppose the appointment request. The Court therefore agrees with Plaintiffs.

23(b)(2) "is only designed to permit classes with homogenous interests," applying "when a

single injunction or declaratory judgment would provide relief to each member of the class."

*Pickett*, 140 F.4th at 309 (citations and quotation marks omitted). This is the type of class that

generally arises in the civil-rights context. Indeed, "[c]ivil rights cases against parties charged

with unlawful, class-based discrimination are prime examples [of a Rule 23(b)(2) class action]."

*Amchem*, 521 U.S. at 614; *see* 2 *Newberg and Rubenstein on Class Actions* § 4:40 (collecting

cases); Fed. R. Civ. P. 23, advisory committee notes (similar). Plaintiffs contend that their

proposed class fits this standard. (ECF No. 76-1 at PageID 777–79.) And Defendants again

argue to the contrary by relying on their previous arguments. (ECF No. 79 at PageID 847–48.)

The proposed class here fits neatly into the type recognized by Rule 23(b)(2). *See*

*generally* 2 *Newberg and Rubenstein on Class Actions* § 4:28 ("This is a simple inquiry in most

cases."). Start with the Rule's first demand that "the party opposing the class has acted . . . on

grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Perhaps, as Defendants

argue, certain detainees in the proposed class are not injured by HB 1719 because their

individual bail records require a high and potentially unaffordable bail amount. (ECF No. 79 at

PageID 847.) But that does not defeat the entire class. As the Sixth Circuit has explained, "[i]t

is sufficient if class members complain of a pattern or practice that is generally applicable to the

class as a whole. Even if some class members have not been injured by the challenged practice,

a class may nevertheless be appropriate." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428

(6th Cir. 2012) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)); *see id.* ("All of

the class members need not be aggrieved by . . . [the] defendant's conduct in order for some of

them to seek relief under Rule 23(b)(2)." (citation omitted)).

The "key" to a Rule 23(b)(2) class lies in its second demand that "final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* (citation

omitted); Fed. R. Civ. P. 23(b)(2).  Which is why "claims for *individualized* relief . . . do not

satisfy the Rule." *Dukes*, 564 U.S. at 360.  Plaintiffs do not seek individualized relief and do not

challenge any individual bail determinations.  (ECF No. 86 at PageID 909.)  They request a

declaration that HB 1719 violates the Fourteenth Amendment and an injunction barring the

Shelby County Sheriff from enforcing bail orders issued under HB 1719.  (ECF No. 75-2 at

PageID 756–57.)  That class-wide injunction would apply equally "as to all of the class members

or as to none of them." *Dukes*, 564 U.S. at 360.  Because this remedy is "indivisible" in nature,

*Pickett*, 140 F.4th at 309–10, the class meets Rule 23(b)(2).

## CONCLUSION

There is a marked difference between bringing claims individually and as class

representatives.  And the procedural steps Plaintiffs have taken to get here illustrate that point.

For the reasons above, the Court **GRANTS** Plaintiffs' Motion to Certify Class under Rule

23(b)(2).  The Class is defined as:

> All people in the custody of the Shelby County Sheriff who are detained under
> bail orders issued by Shelby County judges pursuant to Tenn. Code Ann. § 40-11-
> 118(b), as amended by HB 1719, without consideration of their ability to pay.

The Class's claims are (1) whether HB 1719 violates fundamental fairness under the Fourteenth

Amendment; (2) whether HB 1719 violates the Fourteenth Amendment by causing

discriminatory wealth-based detention; and (3) whether HB 1719 violates the Fourteenth

Amendment because it is unconstitutionally vague.  And under Rule 23(g), the Court

**APPOINTS** Plaintiffs' counsel as Class Counsel.

**SO ORDERED**, this 9th day of December, 2025.

   s/Thomas L. Parker

THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE