# Exhibit 3:

# June 9, 2022 Memorandum of Understanding

**MEMORANDUM OF UNDERSTANDING REGARDING CRIMINAL PRETRIAL
PROCESS IN SHELBY COUNTY, TENNESSEE**

## I.      Introduction and Background

1.      *Parties.* The Parties to this Memorandum of Understanding ("MOU" or "Agreement") are the American Civil Liberties Union ("ACLU"), American Civil Liberties Union of Tennessee ("ACLU-TN"), Just City Memphis ("Just City"), the Wharton Law Firm, Stand for Children Tennessee, and the Official Black Lives Matter Memphis Chapter (collectively "advocacy groups"); and Shelby County, Tennessee through the County Mayor and the County Attorney, the General Sessions Criminal Court Divisions of Shelby County, the Shelby County Public Defender's Office ("PD"), the District Attorney General's Office for the Thirtieth Judicial District of Tennessee ("DA"), the Shelby County Community Services Division, and the Shelby County Sheriff's Office ("SCSO") (collectively "local stakeholders").  This MOU is entered to address the administration of criminal pretrial processes in Shelby County from arrest through release or detention pending trial.

2.      *Scope.* This MOU addresses allegations by the advocacy groups that post-arrest processes in Shelby County were constitutionally infirm, failed to adhere to state law, and did not adequately serve the citizens of Shelby County. While the Parties agree to enact changes to Shelby County's post-arrest practices to provide for the equal protection, procedural and substantive due process rights of arrestees, this Agreement is not intended to be used to prove deficiencies in Shelby County's post-arrest practices in any proceeding other than an enforcement action pertaining to this Agreement. Neither the Agreement nor any term hereof constitutes or shall be considered an admission of any liability or wrongdoing on the part of any Local Stakeholder. This MOU is entered into as it is in the best interest of the taxpayers to avoid costly litigation and ensure that every arrestee who enters the criminal justice system in Shelby County, Tennessee receives adequate constitutional protection.

3.      *Background.* On December 1, 2021, the legal representatives of the advocacy groups notified local Shelby County stakeholders via letter that, after an 18-month investigation, they had concluded that the County's practices around bail setting and pretrial detention violated state and federal law.[1] The advocacy groups requested a facilitated discussion in an effort to avoid litigation to address their legal concerns.

4.      The local stakeholders, through the County Attorney and District Attorney General, accepted the advocacy groups' request for a discussion. The Parties engaged the Justice Management Institute ("JMI") to facilitate a series of discussions to determine whether the advocacy groups' concerns could be resolved without filing litigation.

---

[1] A copy of the letter is available here: https://www.aclu-tn.org/wp-content/uploads/2021/12/FINAL-Demand-Letter-signed-12_1_21.pdf.

5. On February 8, 2022, the advocacy groups provided their proposals to remedy the legal deficiencies they had identified within Shelby County's pretrial justice system, as well as to ensure that adopted reforms would work effectively and fairly. Those proposals included a draft county resolution, an administrative judicial order, and a range of suggestions for divesting from the costs of pretrial incarceration and investing in supportive services for persons released pretrial to ensure their success.

6. On February 11, 2022, the County Attorney arranged for counsel from the ACLU, ACLU-TN, and the Wharton Firm to directly observe post-arrest bond-setting by shadowing staff members from the Pretrial Services Agency, asking questions, and touring the jail facilities at 201 Poplar and Jail East.

7. On March 3, 2022, the County Attorney provided feedback to the advocacy groups on their proposal documents. On March 14, 2022, the advocacy groups responded in writing to that feedback. On March 22, 2022, attorneys from the ACLU and Just City spoke with attorneys from the County Attorney to discuss how to move forward. In light of that discussion, the advocacy groups sent updated proposal documents on March 25, 2022.

8. On April 19th, 26th, and 27th, 2022, the Parties met to discuss the advocacy groups' proposals. At the conclusion of the meeting on April 27, 2022, the Parties had reached agreement in principle both regarding substantive changes to the systems through which Shelby County officials evaluate arrested persons for pretrial release or detention, as well as a timeline and process by which the Parties agree to operationalize this agreement through longstanding, official policy changes, implementation, and monitoring.

9. *Agreement.* As a result of local stakeholders' cooperation and willingness to implement substantive change without the need for contested litigation, the Parties enter this MOU and commit to crafting, enacting, and implementing longstanding policy changes to address the advocacy groups' allegations regarding the due process, equal protection, and state law deficiencies in the prior system of bail setting and pretrial detention in Shelby County. So long as (1) official policy changes that effectuate the Parties' agreement and address the alleged legal deficiencies under the existing system are fully adopted on the timeline discussed below, (2) those policy changes are implemented and adhered to, and (3) those policy changes are not later amended or withdrawn, the advocacy groups agree not to pursue litigation related to the subject of their December 1, 2021 letter against any of the addressees of that letter, and agree to be so bound for a period of thirty-six (36) months from the date this MOU is executed.

10. This MOU reflects the Parties' agreement and intent to enact and implement the changes discussed below. The Parties understand that the final approval of the Shelby County Board of Commissioners and the Administrative Judge of the General Sessions Criminal Court will be required to convert this MOU into official local policy.

11. The advocacy groups, along with their staff, agents, and consulting partners, remain committed to working with local stakeholders to ensure that the agreements outlined in this

MOU are adopted efficiently, effectively, and fairly, as well as partnering in the implementation and operation of agreed-upon policies.

12. The local stakeholders remain committed to ensuring that every arrestee who enters the criminal justice system in Shelby County, Tennessee receives adequate constitutional protections.

## II. Agreed-Upon Remedial Measures

13. *Revised Intake Measures.* Immediately after booking and processing into a jail facility, all persons will be interviewed by a representative of the Pretrial Services office, with the interview/screening to be updated as follows:

a. Pretrial Services will conduct a written assessment (e.g., the Vera Institute Bail Calculator) to evaluate the arrestee's financial condition, which includes a calculation of the arrestee's income, expenses, debts, and other relevant factors, and will provide that information to the judicial commissioner. This financial information will be used by the commissioner to evaluate the arrestee's ability to pay bail or for any other conditions of pretrial release that carry a financial cost. The Parties will agree to the specific terms of this assessment during the Implementation Period, but agree that the purpose of the assessment will be to evaluate the individual's own personal resources and obligations.

b. Pretrial Services will also provide arrestees with an indigency affidavit at intake for the court to use in determining whether the arrestees are eligible for indigent defense counsel. This form will be promptly shared with the on-call judicial commissioner. For persons set on for further hearings as described below, this form will be promptly shared with the Public Defender's office to ensure counsel is appointed as quickly as possible for eligible individuals. For persons eligible for the public defender's services who are released, the indigency affidavit will be placed in their legal jacket and utilized at their next court appearance for the purposes of appointing counsel.

c. The on-duty judicial commissioner will evaluate individuals for immediate pretrial release via the following procedure:(1) first the commissioner will determine whether under Tenn. Code Ann. § 40-11-115, and consistent with due process principles, recognizance release will reasonably assure the future appearance of the person and the safety of the community; (2) second, if not released on recognizance, the commissioner will assess whether under Tenn. Code Ann. § 40-11-116, and consistent with due process principles, release subject to other attainable conditions will reasonably assure future court appearance and the safety of the public; (3) third, in lieu of recognizance release or release on other conditions, the judicial commissioner may set an affordable bond as a condition of release if in accordance with the factors outlined in Tenn. Code Ann. §§ 40-11-115–118, the judicial commissioner believes that affordable bond is necessary to reasonably assure the appearance of the arrestee and the safety of the public; (4) finally, if the judicial

commissioner believes that no combination of available conditions will serve to reasonably assure the individual's future court appearance and the safety of the public, considering all of the factors found in Tenn. Code Ann. § 40-11-118, the judicial commissioner may hold the individual over for a subsequent hearing in the bond hearing courtroom by requesting that the Court Clerk set the matter for the next available hearing date. Any such orders to put an individual on for a further hearing will be clearly designated in writing (and may be accomplished either via setting an unaffordable bond or no bond). For those persons being set on for a subsequent bond hearing, the judicial commissioner shall immediately review the indigency affidavit for the purposes of appointing public defense or conflict counsel, and appoint counsel for those eligible.

14.     *Bond Hearing Courtroom.* Shelby County will establish a courtroom and hearing procedure by which persons arrested who are not released upon an initial screening by a judicial commissioner are evaluated to determine whether continued pretrial detention is necessary. The court will also serve as a forum for bond reviews, including in cases where an individual was ordered released on their own recognizance, released with special conditions, or released on what was intended to be an attainable bond but for whatever reason does not in fact speedily obtain their release.

15.     The detention/bond hearings will be open to the public and recorded.

16.     The Parties agree to provide a mechanism for witnesses to participate in the bond hearings via videoconference if witnesses desire to attend the hearings and require or prefer remote participation.

17.     The bond hearing court will operate 9a to 5p Monday-Friday, with the goal of ensuring no arrestee waits in custody longer than 48 hours after the Shelby County Jail accepts custody, and in no circumstances more than 72 hours after arrest, to proceed to a hearing. On holiday weekends, Shelby County officials will supplement the regular docket to ensure that the limit on post-arrest detention prior to a hearing is 72 hours.

18.     The bond hearing court will be staffed by the Public Defender's Office and the District Attorney Generals' Office, along with the necessary judicial officers, appointed and private defense counsel, clerks, Pretrial Services staff, and Sheriff's deputies.

19.     The State will bear the burden of justifying continued pretrial detention at bond hearings.

20.     The Parties agree that additional details about the procedures and forms that will govern detention hearings will be finalized during the "Official Policy Drafting" and "Implementation" stages contemplated below.

21.     The Parties agree that bond hearings must be crafted and conducted in a manner that protects all arrestees' constitutional and statutory rights, along with the enumerated rights of alleged victims of crime.

22.     *No delay of initial appearance.* The establishment of the Bond Hearing Courtroom should not serve to delay an arrestee receiving their advisement of charges, appointment of counsel, or other matters addressed at their initial appearance in General Sessions Court. So long as those persons requiring a bond hearing are heard generally within 48, and no more than 72 hours, after being taken into custody, it is immaterial whether they proceed to initial appearance or bond hearing first. However, in order to streamline calendaring, transports, and other logistics, the judicial officer presiding over the Bond Hearing Courtroom shall be empowered to handle the subject matter traditionally addressed at an initial appearance (i.e. advisement of charges).

23.     *Court Reminders.* Shelby County will implement a system of universal electronic (including but not limited to text message) reminders that notify persons released of the time, date, and location of any upcoming court dates.

## III.     Additional Goals the Parties Agree to Pursue

24.     Local stakeholders agree to explore, in discussion with advocacy groups and their partners, the following. A firm commitment to these goals is not required by this Agreement:

   a.   *Transportation Assistance.* Through the Department of Community Services, the Parties agree to explore the possibility of providing transportation assistance to persons released pretrial (i.e. longstanding transit passes, designated transit passes on court dates, or an agreement with the transit authority that court summons are good for a free ride on public transportation).

   b.   *Social Worker to Assist.* The Parties agree to explore whether to hire a designated social worker to assist persons released pretrial, to be housed in either the Department of Community Services and/or the Pretrial Services Agency.

   c.   *Housing.* The Parties agree to discuss the subject of housing and the needs of the population released pretrial, whether adequate resources/referrals exist in the surrounding community to support the level of need, and to determine whether additional resources should be sought in the long-term. This evaluation may occur on an ongoing basis.

   d.   *Streamlining Releases.* For persons brought to court for a bond hearing who are not ordered detained on an unattainable condition, i.e. who are cleared for release, the Parties agree to evaluate ways to streamline the manner in which such persons are released from jail custody rather than require all persons to be transported back to a jail facility and processed.

## IV.     Agreed-Upon Process to Effectuate Policy Changes

25.     *Official Policies.* The Parties agree to jointly draft official policy documents to operationalize this Agreement. The policies will encompass the above-mentioned remedial measures and must be drafted in a manner that resolves the advocacy groups' constitutional

5

and legal concerns as outlined in their December 1, 2021 letter. The Parties anticipate drafting: (1) a County Resolution and accompanying budget, to be passed by the Shelby County Board of Commissioners, and (2) an administrative judicial order, to be enacted by the judges of the General Sessions Criminal Court divisions (either through the presiding Administrative Judge or unanimously).

26. *Timeline and Process for Official Policy Drafting.* The Parties agree that they will finalize drafts of the County Resolution and Judicial Order by June 1, 2022, with a grace period of ten (10) total days. To collaboratively draft these documents, the Parties agree that the advocacy groups will present drafts for discussion and feedback from the local stakeholders and County Attorney. The Parties will meet via videoconference weekly to discuss any areas of disagreement or confusion with respect to the policy document drafts, with facilitation from JMI. If the need for additional stakeholder input or approval arises during this drafting process, the County Attorney will act diligently to seek sign-off or input from any necessary stakeholders not already party to the discussion.

27. *Fiscal Note.* Local stakeholders, coordinated by the County Attorney, will work to identify the fiscal resources and staff/actors needed to implement the policies agreed to under this MOU by June 1, 2022, with a grace period of ten (10) days.

28. *Enactment.* From the date on which the official policies are agreed-upon by the Parties, local stakeholders will have one (1) month to enact the policies as drafted. Enactment will constitute, at least: (1) passage of a resolution and budget by the Shelby County Board of Commissioners, and (2) passage of a judicial order by the judges of the General Sessions Criminal Court divisions and/or the Administrative Judge of the General Sessions Criminal Court.

29. *No Modification During Enactment.* The official policy proposals will not be modified during the enactment period without express, written approval by the advocacy groups for any changes. The advocacy groups will not approve changes that alter the substance of the Parties' agreement or which, in their view, undermine the legality and constitutionality of the policies.

30. *Commitment to Policy Changes.* The local stakeholders agree that they are committed to the success and longevity of the policy changes drafted and enacted pursuant to this Agreement.

31. *Implementation Timeline.* From the date on which both official policies have been passed, not to be later than one (1) month after the Parties approve the draft policies, the Parties will have a period of six (6) months to ensure that all elements of this Agreement and the policies as passed are implemented, with a grace period of one (1) month. As discussed below, implementation shall be a collaborative process between the Parties. At the conclusion of the six-month implementation period, all elements of this MOU and the official policies should be in operation and adhered to, unless the grace period is invoked.

32.    *Extensions of Implementation Timeline.* Any extension beyond the one-month grace period of the Implementation Timeline discussed above must be expressly agreed to by the advocacy groups. If local stakeholders anticipate requiring additional time for an element of implementation of the terms of this Agreement and the agreed-upon official policies, they agree to notify advocacy groups in writing immediately upon discovering the need for an extension. Extension periods may be requested in increments of no greater than two (2) weeks. The advocacy groups will not unreasonably withhold approval of requests for extensions, but reserve the right to inform members of the public and the media of the fact that an extension was requested and on what grounds. The advocacy group's media advocacy is covered further in Paragraph 39 below and includes statements regarding extensions.

## V.    Implementation and Monitoring

33.    *Implementation.* The Parties agree to work together, along with their staff, agents, partners, colleagues, or consultants, throughout the implementation period. The Parties anticipate that implementation will include, but not be limited to, the following:

   a. *Hiring.* Hiring of adequate staff in the offices of the PD, DA, court, and Pretrial Services Agency.

   b. *Courtroom logistics.* Opening the courtroom for the bond hearing court and ensuring it is publicly-accessible and has recording and videoconferencing capability.

   c. *Training.* The Parties agree that training will be provided to the Judicial Commissioners, Pretrial Services staff, courtroom staff, PD staff, and DA staff to explain the new procedures adopted by this Agreement and the official policies. The advocacy groups will be invited to provide and/or co-facilitate these trainings, and will do so at no cost to any of the local stakeholders being trained. The advocacy groups will attempt to satisfy the requirements to make trainings CLE-eligible and fit within the annual training requirements of the judicial commissioners. With permission from the County Attorney, the advocacy groups may invite knowledgeable persons from partner organizations (i.e. the Vera Institute) to attend and/or co-facilitate trainings. The Parties agree that staff from the Justice Management Institute ("JMI") may also be invited to co-facilitate and attend trainings provided under this Agreement. The advocacy groups' curriculum for these trainings must be approved by the County Attorney or her designee.

   d. *Forms and notices.* The Parties agree to jointly draft all notices, forms, and order templates to be used as part of the system envisioned by this Agreement. This includes, but is not limited to: (1) notice forms to be issued to arrested individuals regarding their pretrial release determinations and possible bond hearing, (2) notice forms to be issued to alleged victims regarding possible bond hearings, (3) the updated questionnaire used at intake by Pretrial Services staff, (4) the form generated by Pretrial Services staff to provide to the judicial commissioner

conducting the initial release screening, (5) any order template for the judicial commissioner conducting the initial release screening, and (6) any order template for the judicial officer presiding over bail hearings and bail reviews.

e. *Court reminders*. Within the implementation period, a system of automated court reminder notices must be adopted so that all persons released pretrial will have the ability to receive notice of the time and place of their next court date(s).

34. *Monitoring*. The advocacy groups, through their staff and other legal agents, will serve as monitors to this MOU and the official policies promulgated pursuant to this MOU. The advocacy groups will be given the means to monitor the implementation and administration of the policies contemplated in this MOU by: (1) receiving any data collection and reporting done by the County with respect to the practices contemplated by this Agreement, (2) receiving a quarterly dataset to enable the advocacy groups to observe trends in the number of cases, the release decisions being made, and outcomes; (3) being provided regular access to court orders and hearing audio, and (4) the ability to observe public court proceedings. During the Implementation period, the Parties will agree to the specifics around the quarterly dataset, what variables it collects, and ensuring it is sufficient to enable the advocacy groups to observe trends, decisions, and outcomes under the system contemplated by this Agreement.

35. If the grace period or any extensions to the Implementation Timeline are requested, local stakeholders agree to explain in writing why additional time is being requested.

## VI. General Provisions

36. *Preclusion*. This MOU is not intended to have any preclusive effect except between the Parties, and only with respect to the subject matter raised in the advocacy groups' December 1, 2021 letter. Should the issue of the preclusive effect of this Agreement be raised in any proceeding other than a civil action between the Parties, the Parties agree to certify that this Agreement was intended to have no such preclusive effect.

37. *Agreement to Discuss Alleged Noncompliance*. If the advocacy groups believe that the local stakeholders have failed to substantially comply with any term under this Agreement, the advocacy groups shall give thirty (30) days' written notice of the perceived alleged failure and an opportunity for the local stakeholders (either directly or through counsel at the local stakeholders' discretion) to engage in a dialog with the advocacy groups regarding whether the local stakeholders have in fact failed to substantially comply, and/or to take steps within that thirty-day window to attain substantial compliance, prior to the advocacy groups seeking judicial enforcement of this Agreement. If the change requires approval from SCG and/or the County legislative body, the notice period shall be ninety (90) days.

38. *Failure to Enact*. If, for whatever reason, the Parties are unable to adopt the official policy changes contemplated in this MOU, such failure will trigger the notice period described in Paragraph 35. If the Parties are unable to resolve their dispute, and/or for

whatever reason policies commensurate with this Agreement are not adopted at the conclusion of the notice and discussion period, the advocacy groups reserve the right to seek judicial enforcement of this agreement and/or pursue independent litigation on the subject matter raised in their December 1, 2021 letter. Under such circumstances, the MOU will have no preclusive effect.

39.     *Courtesy Notice Prior to Public Comment.* The advocacy groups are commonly engaged in public advocacy, including statements on social media and to the press, with respect to matters of the administration of criminal justice. The Parties understand that the local stakeholders cannot restrict the content of the advocacy groups' speech, nor that of their staff or membership. By entering this Agreement, the advocacy groups do not limit their, their staff, or their members' rights to speak publicly about the administration of pretrial justice in Shelby County. However, as part of this Agreement, prior to publicly commenting on matters that pertain to the subject matter of this Agreement, the advocacy groups agree to give a courtesy notice to the County Attorney and, if applicable, the DA. Barring a situation of extreme urgency, the advocacy group making the public comment will attempt to provide the County 24 hours' advance notice of the statement and an opportunity to respond.

40.     *Policy and Procedure Review.* To the extent Shelby County or any of its officials have existing policies or procedures not otherwise contemplated in this MOU that require revision to ensure compliance with the substantive terms of this MOU, Shelby County officials and the District Attorney General agree to review and/or revise said policy to ensure compliance and consistency with this MOU. Unless otherwise agreed, this policy and procedure review shall occur within the Implementation Timeline.

41.     *Modification.* Should the Parties choose to modify this MOU, they may do so by mutual agreement. Any such modifications or amendments to this MOU shall be memorialized in writing and executed by representatives for all Parties.

42.     *Additional Legislative Approvals.* To the extent that implementation of provisions of this MOU require additional appropriation of funds and/or budgetary amendments not otherwise contemplated in this Agreement, the local stakeholders agree to present such funding requests to the Shelby County Board of Commissioners within thirty (30) days of becoming aware of the need for such requests.

This MOU captures discussions had on April 26th and 27th, 2022, among county stakeholders and advocacy groups (as identified in Section I.1 above), during a mediated conversation led by the Justice Management Institute. At the conclusion of the meeting on April 27, 2022, the Parties reached a consensus regarding the principles set forth above. Through representation from the County Attorney's Office, the Parties continued to meet via videoconference on May 6th, 13th, 20th, 25th, and June 3rd and 10th, 2022 to reach agreement about the matters detailed in this MOU. Therefore, so as to not cause undue delay in implementing these principles via: 1) a Standing Order and 2) a County Commission Resolution, this MOU is entered contingent upon final approval of

9

the Standing Order and the County Commission Resolution. Further, once adopted by those with authority to do so, the Standing Order and County Commission Resolution shall control.

Approved as to form and legality this 9th day of June, 2022

Marlinee Iverson
County Attorney

Bridget Stigger
Assistant County Attorney

Michael Joiner
Assistant County Attorney

Andrea Woods
ACLU

Alexander Wharton
The Wharton Law Firm

Josh Spickler
Just City Memphis

Stella Yarbrough
ACLU-TN

Cardell Orrin
Stand for Children Tennessee

Shahidah Jones
Official Black Lives Matter Memphis
Chapter

10