# Exhibit 11:

# Expert Report of

# Spurgeon Kennedy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **Just City, Inc.**, and class representatives **Deangelo Towns** and **Marshawn Barnes,** on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>Floyd Bonner Jr.,<br>    **Shelby County Sheriff**;<br><br>Lee Wilson,<br>    **Presiding Shelby County General Sessions Criminal Court Judge**; and<br><br>John Marshall, Robert Barber, Rhonda Harris, Kevin Reed, Christopher Ingram, Shayla Purifoy, Ross Sampson, Serena Gray, Terita Hewlett, Mischelle Best, Kenya Smith, Zayid Saleem, Kathy Kirk Johnson, Leslie Mozingo,<br>    **Shelby County Judicial Commissioners,**<br><br>in their official capacities,<br><br>         Defendants. | Case No. 2:24-cv-2540-TLP-tmp |

## DECLARATION OF SPURGEON KENNEDY

I, Spurgeon Kennedy, hereby declare as follows:

1. I was retained as an expert by Plaintiffs in this matter.

2. A true and correct copy of my expert report in this case is attached as Exhibit A and incorporated by reference. I continue to hold the opinions expressed in my report and believe them to be true and accurate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on the _6_ day of ___January_, 2026.

_____
Spurgeon Kennedy

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **Just City, Inc.**, and class representatives **Deangelo Towns** and **Marshawn Barnes,** on behalf of themselves and all others similarly situated, <br><br>         Plaintiffs, <br><br> v. <br><br> Floyd Bonner Jr., <br>     **Shelby County Sheriff;** <br><br> Lee Wilson, <br>     **Presiding Shelby County General Sessions Criminal Court Judge;** and <br><br> John Marshall, Robert Barber, Rhonda Harris, Kevin Reed, Christopher Ingram, Shayla Purifoy, Ross Sampson, Serena Gray, Terita Hewlett, Mischelle Best, Kenya Smith, Zayid Saleem, Kathy Kirk Johnson, Leslie Mozingo, <br>     **Shelby County Judicial Commissioners,** <br><br> in their official capacities, <br><br>         Defendants. | Case No. 2:24-cv-2540-TLP-tmp |

- 1 -

## EXPERT REPORT OF SPURGEON KENNEDY

1. I am the former Vice President of the Crime and Justice Institute and former President of the National Association of Pretrial Services Agencies (NAPSA). I have personal knowledge of, and could testify to, the facts set forth in this report.

2. I have been retained by counsel to Plaintiffs to provide expert testimony concerning my knowledge of standard bail-setting practices nationwide, including how and whether courts consider a defendant's ability to pay. It also presents my opinion on whether an ability to pay requirement places an undue resource burden on courts.

3. I am not being compensated for the preparation of this report.

4. I reserve the right to amend this report as more information comes to my attention.

## I. Background

5. I have spent 44 years in the pretrial services field. During this time, I have watched thousands of bail hearings across the country and have spoken to a variety of people involved in the process regarding the bail setting process, including judges, public defenders, prosecutors, sheriffs, and pretrial services agencies. I have provided consultant services to state and local justice systems interested in improving their bail systems and pretrial services agencies. I have authored or co-authored several publications related to bail decision-making and best practices for the pretrial field. I attach a full list of my relevant experience in Exhibit A.

## II. Overview

6. Based on my experience in the pretrial field, Tennessee is the only state that expressly prohibits courts from considering a defendant's ability to pay when setting bail. It is standard practice for judges to consider an individual's ability to pay or financial resources when setting bail in all other states that rely on money bail. Judges and other system involved people such as pretrial agency staff, defense counsel, and prosecutors use both terms interchangeably. Defense counsel often present arguments that the prosecutor's recommended bail amount is unaffordable for their client, and judges generally consider such

arguments when making a bail decision. Judges often accept evidence and arguments concerning ability to pay and may reduce bail findings to affordable amounts as is sufficient under the circumstances. Tennessee is the only state which prohibits judges from even considering information about a defendant's ability to pay when setting bail.

7. Based on my experience in the pretrial field, it is my opinion that other jurisdictions obtain income and financial resource information for judges to use when setting bail with little or no fiscal or administrative burden to the courts or other agencies. Most jurisdictions rely on court staff or pretrial services agencies to collect information about a defendant's employment status and income. Some jurisdictions implement a financial affidavit or ability to pay form (I use both terms interchangeably). For example, in Harris County, Texas, I oversaw the implementation of an ability to pay affidavit, which did not lead to increased fiscal or administrative burden. I am not aware of any jurisdiction in which the consideration of ability to pay has led to an increase in administrative or fiscal burden.

## III. Tennessee Is The Only State That Disallows Consideration of Ability to Pay.

8. I am aware of no state other than Tennessee that relies on money bail but prohibits judges from considering the amount of bail a person can afford when making a bail decision. In practice, judges generally consider that information when reaching a bail decision.

9. According to the NAPSA standards and other documentation that illustrate best practices when setting money bail, judges must set the least restrictive condition necessary to ensure the purposes of bail: court appearance and public safety.[1] Best practices dictate that the least restrictive condition necessary is a non-

---

[1] National Association of Pretrial Services Agencies. (2024). *Pretrial Standards*. Washington, D.C.:NAPSA. Center for Effective Public Policy et al. (2010). *A Framework for Evidence-Based Decision Making in Local Criminal Justice Systems: Third Edition*. Washington, D.C.: National Institute of Corrections. Pilnik, L., Hankey, B., Simoni, E., Kennedy, S., Moore, L.J., Sawyer, J. (2017). *Essential Elements of an Effective Pretrial System and Agency*. Washington, D.C.: National Institute of Corrections. NIC Accession Number: 032831. Schnacke, T.R. (2018). *Changing Bail Laws: Moving From Charge to "Risk:" Guidance for Jurisdictions Seeking to Change Pretrial Release and Detention Laws*. Center for Legal and Evidence Based Practices. http://www.clebp.org/images/Changing_Bail_Laws_9-23-2018_TRS_.pdf. p. 2. American Bar Association. (1992) *Standards for Criminal Justice: Providing Defense Services*, 3d ed. Washington, D.C.: American Bar Association. National District Attorneys Association. (2023). *National Prosecution Standards, Fourth Edition*. Arlington, VA: National District Attorneys Association.

financial condition, such as supervised release. However, if a judge sets money bail intended to facilitate releasing the defendant, the bail amount must be affordable.

10. I have conducted one-on-one meetings with judges across the country to discuss how they make bail decisions. I have also led trainings for judges on bail setting practices. Based on these conversations and judges' feedback during training sessions, it is standard practice for judges to consider whether a person can afford bail when making bail decisions.

11. I have watched bail hearings in courtrooms across the country. Based on this experience, most judges consider the amount that a person can afford when setting bail. Defense counsel often raise arguments that their client is unable to afford the prosecutor's recommended bail amount and, therefore, that the bail amount exceeds the amount necessary to ensure return to court and public safety. Judges may reduce the bail amount from the prosecutor's recommendation upon finding that a lower bail amount is sufficient to meet the purposes of bail.

12. I have interviewed system-involved people across the country, including public defenders, prosecutors, sheriffs, court staff, pretrial services agencies, community members, and system-impacted people. Based on these conversations and my other experiences, when judges set bail at an amount that exceeds what a person can afford, that bail acts as a de facto detention order.

13. Based on my experiences, consideration of the amount of bail a person can afford enables judges to assess the least restrictive condition necessary to ensure court appearance and public safety. If a judge does not know—and, indeed, is prohibited from eliciting—information about the amount of bail that a person can afford, that judge would not have the information they need to adequately assess the least restrictive condition necessary to meet the purposes of bail.

14. Without that information, there is a risk that judges will set higher bail amounts than necessary to meet the purposes of bail, resulting in erroneous detention of people who are too poor to afford the amount of bail set.

## IV.    Consideration of Ability to Pay Does Not Lead to Increased Burden.

15. Courts generally rely on court staff or pretrial services agency staff to conduct interviews with defendants to collect information about employment status and

-4-

income, as well as information about criminal history. These conversations generally last about 10 to 15 minutes. Based on my experience, these conversations do not pose a fiscal or administrative burden to courts.

16. Some jurisdictions implement a specific ability to pay form or financial affidavit to document the information about employment status and income for presenting to the judge setting bail. In some jurisdictions, these forms document the amount of bail that the person can afford.

17. Based on my personal experience overseeing the implementation of an ability to pay affidavit for courts to use when setting bail, it is my opinion that consideration of ability to pay is not administratively or fiscally burdensome.

18. For approximately 14 months from 2021-2022, I served as the interim co-Acting Director at the Harris County (Houston), Texas pretrial services agency as part of my work with the Justice Management Institute. In this role, I co-managed the day-to-day operations of the agency.

19. During that time, I oversaw the implementation of an ability to pay affidavit in Harris County. Pursuant to its settlement in *O'Donnell v. Harris County* (4:16-cv-01414), Harris County added a requirement that its pretrial services agency fill out an ability to pay affidavit during interviews with defendants. The Harris County pretrial services agency was then able to provide the ability to pay affidavit to the judges setting bail.

20. Our internal review of this process found that it added little extra time or expense to pretrial processes. The pretrial services agency was already interviewing defendants. The additional time they needed to fill out an ability to pay affidavit only added 5 or 10 minutes to the interviews. Pretrial services agency staff were easily able to incorporate completing the affidavit as part of their duties. During my conversations with the judges, the staff conducting the interviews, and their supervisors, I did not hear any complaints or concerns regarding the administrative burden of adding the affidavit. Harris County did not have to hire any extra staff due to the addition of the financial affidavit, and there were no other increased costs to Harris County as a result of the addition of the financial affidavit.

21. From 2021-2023, I facilitated discussions between Shelby County (Memphis), Tennessee, ACLU National, ACLU of Tennessee, and Shelby County community organizations to reform Shelby County's pretrial system. As a result of these

discussions, the parties agreed to a Standing Bail Order and signed a Memorandum of Understanding ("MOU") agreeing to implement constitutional bail-setting processes, which included using an ability to pay calculator to determine a defendant's ability to pay bail. I facilitated further discussions about the logistics of implementing these processes and trained judges on how to follow these processes when setting bail.

22. As part of the Standing Bail Order and MOU, Shelby County implemented an ability to pay calculator to assess a defendant's income and expenses. Shelby County's pretrial services staff were responsible for administering the calculator by gathering information from defendants during interviews and passing along the information to judges setting bail.

23. During the process of facilitating discussions between Shelby County, the ACLU, and certain Shelby County community organizations, no one raised concerns to me that administering the ability to pay calculator would be administratively or fiscally burdensome. I have heard no concerns or complaints from judges, pretrial services staff, or court staff that administering the calculator would lead to increased costs or administrative burden.

24. Most pretrial services agencies that conduct investigative interviews of defendants obtain current employment and financial resource information to include in a report that goes to the courts at bail setting. For example:
    - The Galveston, Texas pretrial services agency automated the process of determining ability to pay and the financial affidavit also is used for appointment of counsel determination. A paper version of this form is attached as Exhibit B. According to the agency director, this process does not add any substantial financial or administrative cost to the agency.[2]
    - The settlement in *Ross v. Blount* (2:19-cv-11076 U.S. District Court for the Eastern District of Michigan), which affects bail setting in Wayne County (Detroit) Michigan, permitted defense attorneys to determine a client's ability to pay and to present that information to the court at bail setting. A form used by the Wayne County public defender is attached as Exhibit C. This effort is assisted in Oakland County (Pontiac), Michigan through the pretrial services agency's obtaining of defendant's employment status and financial abilities prior to the initial bail setting hearing.

---

[2] April 21, 2025 email correspondence with Aaron Johnson, Director, Galveston County Personal Bond, Magistrate Court and Collections.

25. I am not aware of any jurisdictions where the consideration of a detainee's ability to pay led to increased administrative or fiscal burden.

26. The experiences of these counties, including my experiences in Harris County and Shelby County, show that methods exist to gauge ability to pay that do not create an unreasonable burden on justice systems.  These costs also would be far less substantial than the costs placed on individuals who face bail amounts beyond their means.  For example, research shows that individuals held in jail before trial, even for short periods of detention, have worse outcomes such as higher risk of unemployment,[3] higher rates of sentencing disparity,[4] and a greater likelihood of reoffending.[5]  There is also the cost to Shelby County of unnecessary detention.

Date: May 30, 2025

*Spurgeon Kennedy*

Spurgeon Kennedy

---

[3] Schönteich, M. (2010) *The Socioeconomic Impact of Pretrial Detention*. New York, NY: Open Society Foundation.

[4] Leipold, A.D. (2005). "How the pretrial process contributes to unfair convictions." *The American Criminal Law Review*, 42 Amer. Crim. L. Rev. 1123, 1123-1165 (2005); Gerstein, C. *Plea Bargaining and the Right to Counsel at Bail Hearings*, 111 Mich. L. Rev. 1513 (2013). Available at: http://repository.law.umich.edu/mlr/vol111/iss8/4.); Stephenson, M. (2016). Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes. Available at https://www.econ.pitt.edu/sites/default/files/Stevenson.jmp2016.pdf.

[5] Lowenkamp, C., VanNostrand, M., and Holsinger, A. (2013). *The Hidden Cost of Pretrial Detention*. New York, NY: Laura and John Arnold Foundation.

**Exhibit A**

1. I have spent 44 years in the pretrial services field, including:
   - Crime and Justice Institute, 2022-2025 (Vice President).
   - Justice Management Institute, 2017-2022 (Senior Program Director).
   - Pretrial Services Agency for the District of Columbia, 2001-2015 (Deputy Director of Operations and Director of the Office of Strategic Development) and 1981-1988 (Training Officer).
   - The United States Department of Justice, National Institute of Justice, 1998-2001 (Senior Programs Manager).
   - Pretrial Services Resource Center, 1988-1998 (Senior Associate).

   In addition, I served as a member of the National Association of Pretrial Services Agencies' Board of Directors, the National Institute of Corrections' Pretrial Executives Network from 2021-2023 and the American Bar Association's Diversion and Problem-Solving Courts Standards Task Force from 2007-2012.

2. I have provided consultant services to state and local justice systems interested in improving their bail systems and pretrial services agencies. These have included:
   - 2023, *Shelby County Bail Improvement*: Facilitated discussions between Shelby County (Memphis), Tennessee and the national and state offices of the American Civil Liberties Union to create a pretrial detention system that included due-process protections for justice involved individuals. These discussions resulted in a standing bail order and memorandum of understanding that outlined the new bail procedure.
   - 2021, *Evaluation of the Washington County, MN Pretrial System*: Assessed Washington County's bail decision-making and pretrial supervision procedures, using the National Institute of Correction's "Essential Elements Framework" as ratings criteria.
   - 2019, *Assessing Pretrial Risk: The Science of Pretrial Risk Assessment*: Presented on the developing science of pretrial risk prediction to the Missouri State Committee on Pretrial Reform.
   - 2019, *Evaluation of the City of New Orleans Pretrial Services*: Assessed the New Orleans Pretrial Services Agency under the John D. and Catherine T. MacArthur Foundation's Safety and Justice Challenge. Evaluation used criteria established by the NIC and the National Association of Pretrial Services Agencies' *Standards for Pretrial Release, Third Edition*.
   - 2019, *Evaluation of the Maricopa County Pretrial Services Division*: Assessed the Maricopa County (Phoenix), AZ Pretrial Services Division as Program Director with the Justice Management Institute. The evaluation used criteria established by the NIC and NAPSA.

-9-

- 2017, *Cook County Pretrial Services Staffing and Operations Analysis*: Hired under contract with Justice System Partners to analyze the Cook County pretrial agency's staffing needs and policies following changes to the county's bail setting protocol.
- 2017, *Review of Medina County, OH Pretrial Justice System*: Assisted local justice stakeholders on improving bail setting and supervision or pretrial defendants.
- 2017, *Statewide Training on Pretrial Evidence Based Practices*: Presented findings regarding pretrial risk assessment and supervision for the Arizona Administrative Office of the Arizona State Courts.
- 2016 and 2014, *Pretrial Racial Justice Institute*: Served as speaker and facilitator for a non-profit group dedicated to addressing racial disparity in pretrial decision-making.
- 2020-2012, *American Bar Association Racial Disparity Project*: Served as a consultant with the American Bar Association to assist the New Orleans Parish LA develop and expand pretrial diversion options for low to medium risk defendants and arrestees.
- 2012, 2008-2011, *American Bar Association Task Force on Diversion and Specialty Court Standards*: Served as liaison member of the ABA Task Force developing draft standards on diversion programming and problem-solving courts.
- 2011, *National Institute of Corrections Outcome and Performance Measures for Pretrial Release Agencies*: Facilitated a publication by NIC's Pretrial Executives Network on suggested outcome and performance measures for pretrial services agencies. The publication concentrated on measuring program effectiveness in the evidence-based practices areas of risk assessment, matching supervision and services to identified need, and integrating treatment and social services into pretrial case management.
- 2010, *Bureau of Justice Assistance*: Assessed pretrial release and pretrial diversion practices in five counties as part of an evaluation of the State of Kentucky's Department of Pretrial Services.
- 2010, *Bureau of Justice Assistance*: Co-developed a modular training session on pretrial diversion. Training modules included a review of current diversion practices, a history of pretrial diversion, significant legal issues in the field, developing a pretrial diversion program, outcome and performance measures, and best and promising diversion practices.
- 2009, *Bureau of Justice Assistance*: Analyzed court case processing and pretrial release and detention policies and practices correlated to unnecessary detention in Durham County, North Carolina.

- 1998, *National Council on Crime and Delinquency*: Developed and analyzed corrections population databases to determine appropriate classification level for persons in the Puerto Rico and District of Columbia corrections systems.
- 1997, *National Institute of Justice*: Reviewed pretrial information gathering, risk assessment, and pretrial supervision procedures adopted by the University of Alabama at Birmingham TASC program under the National Institute of Justice's "Breaking the Cycle" Demonstration Project.
- 1994, *Edna McConnell Clark Foundation*: Assisted the Delaware Department of Corrections in analyzing how the state's pretrial services policies affected jail population.
- 1992-1996, 1998, *National Institute of Corrections*:  Served as part of a consulting team assessing jail crowding and alternatives to incarceration in Shiawassee County, Michigan (1998); Omaha, Nebraska (1996); Davidson County, Tennessee (1995); Fayette County, Georgia and San Miguel County, Colorado (1994); Sullivan County, New Hampshire and Hampton, Virginia (1993); and Natchotoches County, Louisiana (1992).
- 1991-1993, *System Wide Drug Testing*:  Helped develop and run regional workshops on coordinating drug testing throughout the criminal justice system. Monitored the activities of two model drug testing sites and provided technical assistance to jurisdictions interested in coordinated drug testing.

3. I have submitted expert testimony in several cases involving bail practices and testified before county and state legislative bodies. Testimony include:
   - 2020, *Russell et al v. Harris County, Texas et al, 4:2019cv00226* Submitted virtual deposition in support of defendants.
   - 2019, *Schultz et. al. v. Alabama, Case No. 5:17-cv-00270-MHH*: Submitted expert testimony and deposition in support of plaintiffs.
   - 2019, *Xochitl v. Barr, Case No. 5:16-00620-JGB-KK*. Submitted written expert testimony in support of plaintiffs.
   - 2019, Presented on the field-accepted critical elements of pretrial services agencies before the Wisconsin State Committee on Pretrial Reform.
   - 2017, *O'Donnell, et al. v. Harris County, Tex. et al., No. 16-cv-01414 (S.D. Texas)*: Submitted testimony in support of plaintiffs. Sat for follow-up deposition in 2018.
   - 2017, *Philadelphia, PA City Council*: Testified on possible racial disparity in the use of pretrial risk assessments.

- 11 -

- 2016, *Philadelphia, PA City Council's Special Committee on Criminal Justice*: Testified on bail reforms efforts nationwide and in the state of Pennsylvania.
- 2015, *Maryland Governor's Commission to Reform Maryland's Pretrial System*: Provided testimony on Washington, D.C.'s pretrial system and early research on racial disparity in pretrial risk assessment instruments.
- 2014, *New Jersey General Assembly Appropriations Committee*: Testified in support of a comprehensive bail reform measure.
- 2010, *National Association of Criminal Defense Lawyers*: Provided testimony to the NACDL during their review of drug courts and other problem-solving initiatives.

4. I have authored or co-authored several publications related to bail decision-making and best practices for the pretrial field. These include NAPSA Standards for Pretrial Release, publications on the relationship between pretrial release options and pretrial outcomes (public safety and court appearance), and descriptions of best and promising practices in the pretrial field.
   - *Pretrial Standards: Revised 2024.* (Co-editor). National Association of Pretrial Services Agencies.
   - *Promoting Pretrial Success: A New Model for Pretrial Supervision.* NIC (2022).
   - *Court Nonappearance and New Case Filings: Redefining Pretrial Misconduct.* NIC (2022).
   - *Measuring What Matters: Outcome and Performance Measures for the Pretrial Release Field. 2nd Edition.* NIC (2021).
   - *Incorporating Services and Support into Pretrial Supervision: Is There a Best Model?* (Co-editor). NIC (2022).
   - *National Association of Pretrial Services Agencies Standards for Pretrial Release: Revised 2020.* (Co-editor). National Association of Pretrial Services Agencies.
   - *A Framework for Pretrial Justice: Essential Elements of an Effective Pretrial System and Agency.* (Co-author). NIC (2017).
   - *Measuring for Results: Outcome and Performance Measures for the Pretrial Diversion Field.* NIC (2014).
   - *Measuring What Matters: Outcome and Performance Measures for the Pretrial Release Field.* NIC (2011).
   - *Charge Specialty and Re-victimization by Defendants Charged with Domestic Violence Offenses* Topics in Community Corrections, NIC (2008).
   - *Pretrial Diversion in the 21st Century: A National Survey of Pretrial Diversion Programs.* Bureau of Justice Assistance (2010).

Case 2:24-cv-02540-TLP-tmp    Document 119-14    Filed 01/22/26    Page 17 of 29
PageID 1515

- *Promising Practices in Pretrial Diversion* (Co-Author). BJA (2010).
- *Pretrial Release and Supervision Program Training Supplement.* Pretrial Services Resource Center (1997).
- *Commercial Surety Bail: Assessing Its Role in the Pretrial Release and Detention Decision.* PSRC (1996).
- *Integrating Drug Testing into a Pretrial Services System: Monograph* (co-Author). BJA (1999).

- 13 -

## Exhibit B

**Galveston Texas Ability to Pay Determination Form:**

**NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA.**

THE STATE OF TEXAS                           CAUSE NO. _____
vs.

_____                      SPN. NO. _____

### Affidavit of Financial Condition

Name: _____                Phone No. _____

Address:_____              D.O.B._____

City, State: _____

Zip Code:_____

The significance of this form has been explained to me. I understand that I am not required to complete this form. I understand that the information I provide on this form will become part of a public record, and it will be used by judges who determine **my bail amount** and/or **my eligibility for a court appointed attorney** if I request one.

I declare under penalty of perjury that the information in this affidavit is true and correct.

I am __married or ___ not married and I/we support _____ dependents who are:

| Name | Relationship | Age |
|------|--------------|-----|
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |
|      |              |     |

I have no other assets or income except for the following:

- 15 -

Present cash available:

| Type | Myself | My Spouse | Financial Institution |
|---|---|---|---|
| Cash | | | ███████████████ |
| Checking | | | |
| Savings | | | |
| Safety Deposit Box | | | |
| Other | | | |
| TOTAL: | | | ███████████████ |

Amounts of money I am owed:

| Debt type & who owes it? | To Myself | To My Spouse | When expected? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I have the following opportunities to borrow money:

| Type | Available amount | Lender/Financial Institution |
|---|---|---|
| Credit cards | | |
| Credit line | | |
| Personal loan | | |
| Other | | |
| TOTAL: | | ███████████████ |

I own the following assets:

| Type | Value | Monthly Pmt. | Loan balance | Location |
|---|---|---|---|---|
| Home | | | | |
| Other Real Estate | | | | |
| Motor vehicle 1 | | | | |
| Motor vehicle 2 | | | | |
| Furniture | | | | |
| Notes, Mortgages, Trust & Deeds | | | | |
| Stocks/Bonds | | | | |
| Animals of Value | | | | |
| Jewelry | | | | |

| Other: | | | | |
|---|---|---|---|---|
| Monthly Income (Gross) | Myself | | My Spouse | Total |
| Employment | | | | |
| Real Property | | | | |
| Interest & Dividends | | | | |
| Gifts | | | | |
| Alimony | | | | |
| Child Support | | | | |
| Retirement | | | | |
| Disability | | | | |
| Unemployment | | | | |
| Public Assistance | | | | |
| Other Sources | | | | |
| TOTAL: | | | | |

Estimation of itemized monthly expenses:

| Expense | Monthly Amount |
|---|---|
| Rent/Housing | |
| Car Payment & Insurance | |
| Utilities | |
| Food, clothing, toiletries | |
| Child care | |
| Health Insurance | |
| Medical expenses | |
| Credit card | |
| Court-ordered payments | |
| Child support | |
| Phones, internet & cable | |
| Cigarettes, alcohol, & drugs | |
| Other: | |
| TOTAL | |

| Owed to | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

Taxes and legal costs I owe:

Expected changes in income or expenses:

_____

_____

_____

## My employment history for the prior two years:

Current or last job:

Employer name:_____    Gross monthly pay:_____

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____

Prior job(s):

Employer name:_____    Gross monthly pay:_____

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____

Employer name:_____    Gross monthly pay:_____

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____

## My spouse's employment history for the prior two years:

Current or last job:

Employer name:_____    Gross monthly pay:_____

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____

Prior job(s):

Employer name:_____    Gross monthly pay:_____

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____

Employer name:_____    Gross monthly pay:_____

18

Address:_____    Start mo./yr.:_____

Phone number:_____    End mo./yr.:_____


If unemployed, list the last job you had and efforts to gain employment:

_____

_____


Additional information you want to provide to explain why you may not be able to pay for bail or an attorney:

_____

_____

_____


What is the highest amount you could reasonably pay within 24 hours of your arrest, from any source, including the contributions of family and friends?

$_____


I am ___or ____ am not free on bond in another case.      Amount of bond: $_____

Name of person who paid for bond:_____

Bondsman's/Company Name:_____

I am ___or ____ am not represented by attorney _____ in another criminal case. My attorney is currently _____ RETAINED or _____ APPOINTED.

Name & Phone Number of Nearest Relative: _____

The information listed above is accurate and I will immediately notify the court of any changes in my financial situation. **I understand that all information in this affidavit is subject to verification and that falsifying this information is a criminal offense.**

Date: _____ Defendant Signature:_____

SUBSCRIBED and SWORN to before me pursuant to 602.002 of the Texas Government Code,

on this the _____ day of _____, 20_____.

19

Signature: _____

Print: _____

Peace Officer / Personal Bond Officer / Magistrate / Notary

**Certification Required to Request Appointed Counsel:**

On this _____ day of _____, 20____, I have been advised by the_____ Court of my right to representation by counsel in the trial of the charge pending against me. I am without means to employ counsel of my own choosing and I hereby request the court to appoint counsel for me. By signing my name below, I swear, that all of the above information about my financial condition is current, accurate, and true. By signing below, I understand that a court official can verify any of the information for accuracy as required to determine my eligibility.

Date: _____ Defendant Signature:_____

SUBSCRIBED and SWORN to before me pursuant to 602.002 of the Texas Government Code,

on this the _____ day of _____, 20____.

Signature: _____

Peace Officer / Personal Bond Officer / Magistrate / Notary

After reviewing this sworn pauper's oath application I find that this defendant:

_____is indigent under the guidelines of Galveston County and IS entitled to appointment of an attorney.

_____does not meet the guidelines of Galveston County and IS NOT entitled to appointment of an attorney.

_____application needs to be reviewed further by the court that this case is to be filed in.

_____is partially indigent under the guidelines of Galveston County and is ORDERED to pay $100 for a misdemeanor or $200 for a felony prior to the appointment of an attorney.

_____        _____
DATE                            MAGISTRATE

20

**Exhibit C**

21

**Wayne County Public Defender Ability to Pay Determination Form**

22

## FINANCIAL INFORMATION INTAKE FORM (April 2022)

Name: _____

Are you receiving government assistance such as disability, food stamps, housing vouchers, social security, Bridge card? (Check one) Yes _____     No _____

| MONTHLY INCOME | AMOUNT | | MONTHLY EXPENSES | AMOUNT |
|---|---|---|---|---|
| Monthly Income | $ | | Rent / Mortgage / Utilities | $ |
| Income of Other Household Members Available and Accessible to You (such as spouse) | $ | | Loan Payments / Credit Card Payments | $ |
|  | $ | | Child Care / Child Support / Alimony | $ |
|  |  | | Health Care/ Medical / Dental | $ |
|  |  | | Fines, fees, restitution, bail in other cases | $ |
|  |  | | Other (such as gas, insurance, food) | $ |
| Total Estimated Monthly Income | $ | | Total Estimated Monthly Expense | $ |

Please explain any other current conditions (examples: marital status, kids/dependents, length of residency, mental health, disability, loss of income): _____

_____

_____

_____

_____

_____

| 2022 Poverty Level | | | |
|---|---|---|---|
| Household size | 100% | 140% | 200% |
| 1 | $13,590 | $19,026 | $27,180 |
| 2 | $18,310 | $25,634 | $36,620 |
| 3 | $23,030 | $32,242 | $46,060 |
| 4 | $27,750 | $38,850 | $55,500 |

For a **personal bond**, without other disqualifying factors, anything below 200% of the poverty level is a presumptive qualification.

For an **appointed attorney**, income level below 140% of the poverty level is a presumed qualification.

For Poverty Level: each additional person add: $4,720 for 100% | $6,608 for 140% | $9,440 for 200%

23

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served on all counsel of record by email on May 30, 2025.

*/s/ Ashika Verriest*
Ashika Verriest* (DC Bar No. 90001468)
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 17th Floor
New York, NY 10004
(347) 302-2797
averriest@aclu.org

*Attorney for Plaintiffs*

**25**