# Exhibit 16:

# Declaration of Josh Spickler in Support of Plaintiffs' Motion for Summary Judgment

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

**Just City, Inc.,** and class representatives
**Deangelo Towns** and
**Marshawn Barnes,**
on behalf of themselves and all others similarly
situated,

Plaintiffs,

v.

**Floyd Bonner Jr.,**
    **Shelby County Sheriff;**

**Lee Wilson,**
    **Presiding Shelby County General**
    **Sessions Criminal Court Judge;** and

John Marshall, Robert Barber, Rhonda Harris,
Kevin Reed, Christopher Ingram, Shayla Purifoy,
Ross Sampson, Serena Gray, Terita Hewlett,
Mischelle Best, Kenya Smith, Zayid Saleem, Kathy
Kirk Johnson, Leslie Mozingo,
    **Shelby County Judicial**
**Commissioners,**

in their official capacities,

Defendants.

Case No. 2:24-cv-2540-TLP-tmp

## DECLARATION OF JOSH SPICKLER IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, Josh Spickler, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am preparing this Declaration in support of Plaintiffs' Motion for Summary Judgment. I have personal knowledge of the facts set forth in this Declaration and could testify competently to those facts and exhibits if called as a witness.

2.      I live in Memphis, Tennessee and am a licensed attorney in the State of Tennessee.

3.      I am the founder and executive director of Just City, Inc., a mission-driven nonprofit organization dedicated to fighting discrimination based on race, ethnicity, and income in Shelby County criminal proceedings. Just City is headquartered in Memphis, Tennessee, and has advocated to reform Shelby County's pretrial detention practices for years.

4.      Just City launched a charitable bail fund in 2017. In my role as executive director, I oversee the operation of Just City's charitable bail fund.

5.      The purpose of the bail fund is to post bail for as many people as possible who are referred by the Shelby County Public Defender's Office and who have been determined to be indigent by a Shelby County judicial officer. By doing so, the bail fund helps reduce the harm caused by wealth-based detention. Just City pays the full cash bail amount to the clerk, and after the arrestee attends required court appearances and their case concludes, Just City receives a full refund of the bail amount. Just City then recycles this refund to pay bail for other qualifying arrestees.

6.      The bail fund has been posting bail for those who cannot afford it for more than eight years. In that time, Just City has paid more than $4,500,000 in cash bail for more than 2,000 people.

7.      On June 9, 2022, Just City entered into a Memorandum of Understanding ("the Agreement") with Shelby County Officials. I am signatory to the Agreement on behalf of Just City and am familiar with its terms. Per the Agreement, Pretrial Services began administering an affordable bail calculator, Judicial Commissioners began using a bail-setting form, and Judicial Commissioners began explicitly determining arrestees' ability to pay secured bail amounts. These policy changes remained in effect until the passage of HB 1719.

8.    Following the enactment of HB 1719 and administrative enforcement decisions by the Presiding Judge, Shelby County is no longer complying with the requirements of the Agreement. Just City's reasonable expectations that Shelby County officials, including the Presiding Judge, other General Sessions Criminal Court Judges, the Judicial Commissioners, and the Sheriff, would implement and continue to follow the pretrial bail reforms established in the Agreement have been substantially frustrated and harmed.

9.    Based on my experience overseeing the bail fund, judicial officers set higher bail amounts and fewer release orders for individuals whose circumstances indicate that they would have received lower bail amounts or release before HB 1719.

10.    For example, post HB 1719, Just City more frequently posts bail for people arrested for conduct relating to obtaining food. On August 3, 2025, Just City posted $100 bail for a client charged with trespass for standing in the Wendy's drive-through asking for food. On September 2, 2025, Just City posted $2,500 bail for a client charged with stealing a cheeseburger and two chocolate milks worth $4.85 from Family Dollar. On September 29, 2025, Just City posted $2,000 bail for a client charged with theft of snacks worth $6.33. Bail was set at $20,000 at the initial screening before it was reduced to $2,000 at the bail hearing. Based on my experience overseeing the bail fund, similarly situated clients would likely have been released before HB 1719.

11.    Post HB 1719, Just City also more frequently posts bail for people arrested for theft of merchandise, often consisting of necessary items worth less than the bail amount set. On September 12, 2025, Just City posted $4,000 bond for a client charged with theft of vitamins and glasses worth around $100. Bail was originally set at $50,000 at the initial screening before it was reduced to $4,000 at the bail hearing. On several other occasions, Just City posted bails

3

ranging from $750 to $3,500 for clients charged with thefts of items such as toiletries, clothes, and paper towels.

12. When bail amounts increase, posting bail for each client costs more.

13. When bail amounts increase, more indigent people cannot afford to post bail and therefore need Just City to post bail in order to obtain release. Without Just City's services, they remain in jail.

14. When fewer arrestees are released on their own recognizance or with non-monetary conditions, more clients need Just City's services of posting bail to obtain release.

15. Higher bail amounts and lower release rates post HB 1719 directly increase the costs of posting bail for similarly situated clients compared to before HB 1719. Just City must post bail at higher amounts and for more people to serve the same pool of individuals it was able to serve before HB 1719.

16. HB 1719 went into effect in May 2024. During the previous 12 months, from May 1, 2023 to April 30, 2024, Just City paid $281,273 in bail for 162 clients. During the following 12 months after HB 1719, from May 1, 2024 to April 30, 2025, Just City posted $441,650 in bail for 216 clients. These rates are only increasing: From May 1, 2025 to January 5, 2026, Just City posted $388,720 in bail for 229 clients.

17. Increased costs harm Just City's longstanding mission of posting bail for as many indigent arrestees as possible as a means of fighting wealth-based discrimination. HB 1719 therefore makes it harder for Just City to engage in one of its core activities - operating a bail fund.

18. Increased client demand also harms Just City's mission and makes its core activities more difficult.

4

19.    As a 501(c)(3) mission-driven nonprofit organization, Just City does not have unlimited funds to post bail. It relies exclusively on charitable donations and grant funding to support its operations.[1]

20.    To counteract the harm resulting from HB 1719, Just City conducted more fundraising efforts. Observing the trends of increased bail amounts and lower release rates after HB 1719, Just City requested and obtained more grant funding to post bail for clients on December 6, 2024. Absent these additional funds, Just City would have been able to serve fewer clients post HB 1719.

21.    Just City has also adjusted its policies to counteract the harms resulting from HB 1719. In February 2025, Just City decided to set a temporary limit of $15,000 on the amount of cash bail it posts per week. In December 2025, Just City lowered this limit to $10,000. When Just City reaches that limit, it cannot post any more cash bails that week. This policy ensures that Just City maintains funds necessary to operate in light of increased costs after HB 1719.

22.    Just City has also adjusted its policies by setting limits on whether it posts bail. Because Just City does not have unlimited funds to post bail, it has always maintained policies governing which clients to serve. It prioritizes clients with community support because Just City's experiences show that those clients are likely to return to court. It also prioritizes clients with medical needs. As a general policy, Just City does not post bail for clients with multiple domestic violence charges involving the same complaining witness and sets a cap on bail amounts it will post for any type of offense.

---

[1] After September 2024, the General Sessions' Court Clerk's office has been unable to quickly return previously posted cash bail amounts to Just City at the conclusion of its clients' underlying cases. These delays resulted in a gap in Just City's ability to provide services from October 2024 to February 2025 and continue to impact Just City's access to funding.

23.     From the bail fund's launch in 2017 to February 2025, the cap on bail amounts was $5,000. In February 2025, Just City lowered the cap to $4,000 so that it can serve more clients with low bail amounts. In December 2025, Just City temporarily lowered the cap to $3,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 8, 2026.

_____

Josh Spickler

6